UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Commodity Futures Trading Commission, | 05 CIV 8091 LAK |
| Plaintiff, | ECF CASE |
| v. | COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR PENALTIES UNDER THE COMMODITY EXCHANGE ACT, AS AMENDED, 7 U.S.C. §§ 1 *et seq.* |
| Abbas A. Shah and Linuxor Asset Management LLC, | |
| Defendants. | |

## I. SUMMARY

1. From at least Fall 2001 through July 2004 (the "relevant time period"), Defendant Abbas A. Shah ("Shah") was the principal, owner and registered Associated Person ("AP") of Defendant Linuxor Asset Management LLC ("LAM"), a registered commodity pool operator ("CPO"), that operated Linuxor Global Macro Fund LP, a commodity pool (the "pool").

2. LAM failed to timely disclose to pool participants the trading losses for the pool for the period ending 2002. LAM also failed to send pool participants the requisite quarterly reports and failed to send out annual reports in a timely fashion.

3. Shah sent pool participants at least two fraudulent emails, in August 2003 and January 2004, in which he knowingly misrepresented the net asset value ("NAV") of the pool and his success in recovering losses.

4. Through the conduct described above, Shah and LAM violated Sections 4b(a)(2)(i)-(iii) and 4o(1) of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 6b(a)(2)(i)-(iii) and 6o(1) (2002). By operation of Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and CFTC Regulation 1.2, 17 C.F.R. § 1.2 (2004), LAM is vicariously liable for

Shah's violations of the Act, and by operation of Section 13(b) of the Act, 7 U.S.C. 13c(b), Shah is liable as the controlling person for LAM's violations of the Act.

5. By the conduct described above, Shah and LAM violated § 4o(1) of the Act.

6. By failing to send pool participants the requisite quarterly reports and failing to send out annual reports in a timely fashion, LAM also violated CFTC Regulations 4.7(b)(2)-(3), 17 C.F.R. § 4.7(b)(2)-(3).

7. LAM received pool funds in other than the pool's name and commingled pool funds with the property of others.

8. By the conduct described above, LAM violated CFTC Regulations 4.20(b)-(c), 17 C.F.R. §§ 4.20(b)-(c). As a controlling person of LAM, Shah is liable for LAM's violations of Section 4o(1) of the Act and Regulations 4.7(b)(2)-(3) and Regulation 4.20(b)-(c) pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

9. Unless enjoined by this Court, Defendants are likely to continue to engage in acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

10. Accordingly, pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1, Plaintiff Commodity Futures Trading Commission ("CFTC") brings this action to enjoin the unlawful acts and practices of Defendants Shah and LAM, and to compel their compliance with the provisions of the Act and Regulations thereunder. In addition, the CFTC seeks civil penalties and such other equitable relief as the Court may deem necessary and appropriate.

## II. JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the CFTC that any person has

engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action against such person to enjoin such practice or to enforce compliance with the Act.

12. Venue lies properly with this Court, pursuant to Section 6c(c) of the Act, 7 U.S.C. § 13a-1(c), in that the Defendants are found in, inhabit, or transact business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur in this District.

### III. THE PARTIES

**A.  Plaintiff**

13. The **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.*

**B.  Defendants**

14. **Abbas A. Shah** is a resident of New York, New York, and is the owner, principal and a registered Associated Person ("AP") of LAM. Shah managed the pool and acted as its trading advisor.

15. **Linuxor Asset Management LLC** is a Delaware limited liability company with its principal place of business at 20 Exchange Place, 45th FL, New York, NY, 10005. LAM has been registered as a commodity pool operator ("CPO") since December 2001 and is the general partner of the pool.

## IV. STATUTORY BACKGROUND

16.     Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii), provides that it is unlawful for any person in connection with any commodity futures contract sale or purchase, for or on behalf of any other person, to (i) cheat or defraud or attempt to cheat or defraud such other person; (ii) willfully make or cause to be made to such other person any false report or statement thereof, or willfully enter or cause to be entered for such person any false record thereof; or (iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person.

17.     A CPO is any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or indirectly or through capital contributions, the sale of stock or other form of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility. 7 U.S.C. § 1a(5).

18.     Section 4o(1) of the Act, 7 U.S.C. § 6o(1), makes it illegal for any CPO, or Associated Person of a CPO, by use of the mails or any means or instrumentality of interstate commerce directly or indirectly a) to employ any device, scheme or artifice to defraud any client or participant or prospective client or participant, or b) to engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

19.     CFTC Regulation 4.7, 17 C.F.R. § 4.7, exempts CPOs from certain requirements of Part 4 of the Regulations with respect to offerings to qualified eligible persons, provided that

4

written notice is given to the National Futures Association ("NFA"). Regulation 4.7(b)(2), 17 C.F.R. § 4.7(b)(2), requires such exempt CPOs to issue quarterly statements to pool participants that indicate the pool's NAV, the change in NAV from the last reporting period, and the NAV per outstanding unit. CFTC Regulation 4.7(b)(3), 17 C.F.R. § 4.7(b)(3), requires such exempt CPOs to send pool participants an annual financial report within 90 days of the end of each fiscal year.

20.   CFTC Regulation 4.20(b), 17 C.F.R. § 4.20(b), requires CPOs to receive pool funds in the name of the pool.

21.   CFTC Regulation 4.20(c), 17 C.F.R. § 4.20(c), prohibits CPOs from commingling pool property with the property of others.

22.   Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and CFTC Regulation 1.2, 17 C.F.R. § 1.2, provide that the act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent or other person.

23.   Section 13(b) of the Act, 7 U.S.C. § 13c(b), provides that any person who, directly or indirectly, controls any person who has violated any provision of the Act may be held liable for such violation in any action brought by the Commission to the same extent as the controlled person. The Commission has the burden of proving the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation.

## V. FACTS

24. In the fall of 2001, Shah formed LAM to act as the CPO of the commodity pool. LAM was registered as a CPO in December 2001. In March 2002, Shah sent written notice to the NFA that LAM would be operating under the exemptions of CFTC Regulation 4.7, 17 C.F.R. § 4.7.

25. On behalf of LAM, Shah initially solicited four pool participants, one individual pool participant who invested $300,000 and three affiliated pool participants that shared a common representative (the "McCarthey pool participants") who invested $11.5 million, making the total invested for all pool participants $11.8 million.

26. On behalf of LAM, Shah instructed the pool participants to send their funds to a bank account in the name of Linuxor Capital Management ("LCM"), an entity owned by Shah.

27. The pool began trading commodity futures in March 2002.

28. Shah, on behalf of LAM, promised to send the pool participants quarterly reports about the pool's trading results, as required by Commission regulation, but LAM failed to do so.

29. In August or September 2002, Shah advised the McCarthey pool participants' representative that the pool had recently suffered losses of approximately 30 percent, i.e., approximately $3.5 million. The pool participants soon met with Shah, at which time Shah reiterated the level of losses and promised to try to recoup those losses. The pool participants determined to remain invested in the pool and to review the year-end results before deciding whether to withdraw their funds from the pool.

30. By the end of 2002, approximately 43 percent of the pool funds, or approximately $5.1 million, had been lost in trading. However, LAM and Shah failed to disclose these trading results to the pool participants, despite numerous requests from them for year-end results, until

August 2003. LAM also failed to provide required quarterly reports. By failing to provide a timely 2002 annual report and any quarterly reports, LAM and Shah knew that LAM was failing to disclose the pool's mounting losses.

31. The 2002 annual report, which LAM did not provide until August of 2003, showed that the pool had lost approximately $5.1 million by the end of 2002.

32. After the pool participants received their annual reports in August 2003, they contacted Shah and inquired about the losses. Shah verbally assured them that he would be able to recover their principal if given a few more months. On August 25, 2003, Shah sent an e-mail to the representative for the McCarthey pool participants in which he falsely represented that "we have thus far recovered more than half of the capital loss and if we continue at this pace we hope that we will have not only recovered all of the capital loss but there is a good likelihood that we will be positive as far as returns since inception are concerned." In fact, the pool had suffered further losses since the beginning of 2002 of approximately $2.5 million. Shah knew that the pool had not recouped more than half of the losses suffered in 2002, and that, in fact, the pool had suffered further losses since the beginning of 2003. By knowingly making these false statements, Shah defrauded and deceived the pool participants.

33. In October 2003, a fifth pool participant invested $2 million in the pool.

34. On behalf of LAM, Shah instructed this fifth pool participant to send his funds to a bank account in the name of LAM.

35. In January 2004, Shah sent the McCarthey pool participants' representative an e-mail falsely representing that the value of the combined interests of the three pool participants on whose behalf he had invested was slightly in excess of $8 million as of December 31, 2003. In fact Shah knew when he sent this e-mail that the value of those interests was only approximately

$3 million. By knowingly making these false statements Shah defrauded and deceived the pool participants.

36. In April 2004, the fifth pool participant, who had invested $2 million, received back $2.1 million dollars from the pool.

37. In July 2004, Shah closed all trading positions in the pool's name and returned approximately $4.2 million to the remaining pool participants.

## VI. VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT I

### Fraud In Connection with Sale or Purchase Futures Contracts

38. Paragraphs 1 through 37 are re-alleged and incorporated herein.

39. During the relevant period, Shah cheated or defrauded or attempted to cheat or defraud other persons and willfully made or caused to be made to such other persons false reports or statements, or willfully entered or caused to be entered for such other persons false records in connection with commodity futures contract sales or purchases, for or on behalf of such other persons, all in violation of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii). Shah's misrepresentations were material and made with scienter.

40. During the relevant period, LAM cheated or defrauded or attempted to cheat or defraud other persons in connection with commodity futures contract sales or purchases, for or on behalf of such other persons, in violation of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii). LAM's failures to provide quarterly reports and to provide timely annual reports were material and made with scienter.

41. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and CFTC Regulation 1.2, 17 C.F.R. § 1.2, LAM is liable for any violations of the Act or Regulations by

Shah, in that all such violations were within the scope of Shah's office or employment with LAM.

42.     During the relevant period, Shah, as the sole owner and principal of LAM, directly or indirectly controlled LAM, its employees and others and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count I. Thus, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Shah is liable for the violations described in this Count I to the same extent as LAM.

43.     Each material misrepresentation or omission made during the relevant period, including but not limited to those alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii).

## COUNT II

### Fraud and Deceit

44.     Paragraphs 1 through 43 are re-alleged and incorporated herein.

45.     During the relevant period, LAM, a CPO, and Shah, an AP of LAM, used the mails or other means or instrumentality of interstate commerce directly or indirectly a) to employ a device, scheme or artifice to defraud pool participants, or b) engaged in transactions, practices or courses of business which operated as a fraud or deceit upon pool participants, all in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1). Shah and LAM acted with scienter when employing a device, scheme or artifice to defraud.

46.     Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and CFTC Regulation 1.2, 17 C.F.R. § 1.2, LAM is liable for any violations of the Act or Regulations by Shah, in that all such violations were within the scope of Shah's office or employment with LAM.

47.     During the relevant period, Shah, as the sole owner and principal of LAM, directly or indirectly controlled LAM, its employees and others and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count II. Thus, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Shah is liable for the violations described in this Count II to the same extent as LAM.

48.     Each act constituting a violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1), is alleged as a separate and distinct violation.

## COUNT III

### Failure to Send Quarterly Statements and Timely Annual Reports

49.     Paragraphs 1 through 48 are re-alleged and incorporated herein.

50.     During the relevant period, LAM was registered as a CPO and subject to reporting exemptions in Section 4.7 of the Commission Regulations, 17 C.F.R. § 4.7, CPO.

51.     During the relevant period, LAM failed to send out quarterly reports to pool participants that indicated the pool's NAV, the change in NAV from the last reporting period, and the NAV per outstanding unit, all in violation of CFTC Regulation 4.7(b)(2), 17 C.F.R. § 4.7(b)(2).

52.     During the relevant period, LAM failed to send out the annual reports for 2002 and 2003 within 90 days of the end of each fiscal year, all in violation of CFTC Regulation 4.7(b)(3), 17 C.F.R. § 4.7(b)(3).

53.     During the relevant period, Shah, as the sole owner and principal of LAM, directly or indirectly controlled LAM, its employees and others and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this

Count III. Thus, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Shah is liable for the violations described in this Count III to the same extent as LAM.

## COUNT IV

### Receiving Pool Funds in Other Than the Pool's Name and Commingling Pool Property

54.     Paragraphs 1 through 53 are re-alleged and incorporated herein.

55.     During the relevant period, LAM, the CPO, received pool participants' funds in its own name and the name of LCM, all in violation of CFTC Regulation 4.20(b), 17 C.F.R. § 4.20(b).

56.     During the relevant period, LAM, the CPO, commingled pool funds in the bank accounts of LAM and LCM, all in violation of CFTC Regulation 4.20(c), 17 C.F.R. § 4.20(c).

57.     During the relevant period, Shah, as the sole owner and principal of LAM, directly or indirectly controlled LAM, its employees and others and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count IV. Thus, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Shah is liable for the violations described in this Count IV to the same extent as LAM.

## VII. **RELIEF REQUESTED**

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), and pursuant to the Court's own equitable powers:

A.      Find that Defendants Shah and LAM violated Sections 4b(a)(2)(i)-(iii) and 4o(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii) and 6o(1), and CFTC Regulations 4.7(b)(2)-(3), 4.20(b)-(c), 17 C.F.R. §§ 4.7(b)(2)-(3), 4.20(b)-(c);

B.  Enter an order of permanent injunction against Defendants and any of their affiliates, servants, employees, successors, assigns, attorneys, and persons in active concert with them who receive actual notice of such order by personal service or otherwise, from directly or indirectly violating Sections 4b(a)(2)(i)-(iii) and 4o(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii) and 6o(1), and CFTC Regulations 4.7(b)(2)-(3), and 4.20(b)-(c), 17 C.F.R. §§ 4.7(b)(2)-(3), and 4.20(b)-(c);

C.  Enter an order of permanent injunction directing Defendants to pay a civil monetary penalty, to be assessed by the Court, in an amount not to exceed the higher of $120,000 for each violation of the Act, or triple the monetary gain to each Defendant as described herein; and

D.  Enter an order providing for further remedial and ancillary relief including, but not limited to, disgorgement, restitution and any other equitable relief which this Court may deem necessary and appropriate.

Dated: 9/20/05

Respectfully submitted,

Stephen J. Obie
Regional Counsel

By: _____
David Acevedo (DA0388)
Chief Trial Attorney
U.S. COMMODITY FUTURES
  TRADING COMMISSION
140 Broadway, 19th Floor
New York, New York 10005
(646) 746-9700
(646) 746-9940 (facsimile)