UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| Commodity Futures Trading Commission, | 05 CIV 8091 LAK |
| Plaintiff, | ECF CASE |
| v. | **ANSWER** |
| Abbas A. Shah and Linuxor Asset Management, LLC | Judge Kaplan |
| Defendants. | |

---

Defendants, ABBAS A. SHAH and LINUXOR ASSET MANAGEMENT, LLC (collectively "Defendants"), by their attorneys, Hartman & Craven LLP, as and for their Answer to the Complaint of Plaintiff, COMMODITY FUTURES TRADING COMMISSION:

1.   Admit the allegations contained in paragraph 1, except deny that the relevant time period began in at least Fall 2001.

2.   Deny the allegations contained in paragraph 2, except admit that quarterly reports in the form prescribed by 17 C.F.R. § 4.7(b)(2) were inadvertently not sent and the annual reports were sent out late after good-faith extension requests were made to the National Futures Association. However, Defendants regularly disclosed relevant pool financial information to pool participants or their appointed investment adviser.

3.   Deny the allegations contained in paragraph 3, except admit that Mr. Shah sent emails to some of the pool participants or their appointed investment adviser in August 2003 and January 2004.

4.   Deny the allegations contained in paragraph 4.

5.   Deny the allegations contained in paragraph 5.

6. Deny the allegations contained in paragraph 6.

7. Deny the allegations contained in paragraph 7, except admit that pool funds were initially mistakenly directed to LCM, and aver that this mistake of fact was promptly corrected and all funds transferred to the proper account.

8. Deny the allegations contained in paragraph 8.

9. Deny the allegations contained in paragraph 9.

10. Paragraph 10 appears to be a statement of Plaintiff's goals in this proceeding, which does not lend itself to admission or denial. To the extent paragraph 10 contains allegations of fact, the allegations are denied.

11. Admit the subject matter jurisdiction of this Court, and respectfully refer the Court to the provision of the United States Code referred to for its content thereof.

12. Admit that Defendants are found in, inhabit or transact business in this District, deny the other factual allegations of paragraph 12, and respectfully refer the Court to the provision of the United States Code referred to for its content thereof.

13. Admit the allegations in paragraph 13.

14. Deny the allegations contained in paragraph 14, except admit that Mr. Shah is a resident of New York, New York, and is the principal and a registered Associated Person of LAM.

15. Admit the allegations contained in paragraph 15.

16. Responding to the allegations contained in paragraph 16, respectfully refer the Court to the provision of the United States Code referred to for its content thereof.

17. Responding to the allegations contained in paragraph 17, respectfully refer the Court to the provision of the United States Code referred to for its content thereof.

18. Responding to the allegations contained in paragraph 18, respectfully refer the Court to the provision of the United States Code referred to for its content thereof.

19. Responding to the allegations contained in paragraph 19, respectfully refer the Court to the provisions of the Code of Federal Regulations referred to for its content thereof.

20. Responding to the allegations contained in paragraph 20, respectfully refer the Court to the provision of the Code of Federal Regulations referred to for its content thereof.

21. Responding to the allegations contained in paragraph 21, respectfully refer the Court to the provision of the Code of Federal Regulations referred to for its content thereof.

22. Responding to the allegations contained in paragraph 22, respectfully refer the Court to the provisions of the United States Code and the Code of Federal Regulations referred to for its content thereof.

23. Responding to the allegations contained in paragraph 23, respectfully refer the Court to the provision of the United States Code referred to for its content thereof.

24. Admit the allegations contained in paragraph 24.

25. Deny the allegations contained in paragraph 25, except admit that there were four original pool participants, one individual who invested $300,000 and three affiliated pool participants that shared a common representative who invested $11.5 million, making the total invested for all pool participants $11.8 million from May through October 2003.

26. Deny the allegations contained in paragraph 26.

27. Admit the allegations contained in paragraph 27.

28. Deny the allegations contained in paragraph 28, except admit that quarterly reports in the form prescribed by 17 C.F.R. § 4.7(b)(2) were inadvertently not sent and the annual reports were sent out late after good-faith extension requests were made to the

National Futures Association. However, Defendants regularly disclosed relevant pool financial information to pool participants or their appointed investment adviser.

29. Admit the allegations contained in paragraph 29.

30. Deny the allegations contained in paragraph 30, except admit that by the end of 2002 approximately 43 percent of the pool funds, or $5,058,709, was lost in trading, that quarterly reports in the form prescribed by 17 C.F.R. § 4.7(b)(2) were inadvertently not sent, and that the annual reports were sent out late after good-faith extension requests were made to the National Futures Association. However, Defendants regularly disclosed relevant pool financial information to pool participants or their appointed investment adviser.

31. Admit the allegations contained in paragraph 31, except that the report showed the pool's losses for 2002 amounted to $5,058,709.

32. Deny the allegations contained in paragraph 32, except admit that Mr. Shah sent an email to the representative of the McCarthey pool participants on August 25, 2003.

33. Admit the allegations contained in paragraph 33.

34. Deny the allegations contained in paragraph 34.

35. Deny the allegations contained in paragraph 35, except admit that Mr. Shah sent an email to the appointed investment adviser of the McCarthey pool participants in January 2004.

36. Admit the allegations contained in paragraph 36.

37. Admit the allegations contained in paragraph 37.

38. Repeat and reallege their answers to the allegations contained in the paragraphs referred to therein with the same force and effect as if herein set forth at length.

39. Deny the allegations contained in paragraph 39.

40. Deny the allegations contained in paragraph 40.

41. Deny the allegations contained in paragraph 41.

42. Deny the allegations contained in paragraph 42.

43. Paragraph 43 appears to be an explanation of Plaintiff's complaint, which does not lend itself to admission or denial. To the extent paragraph 43 contains allegations of fact, the allegations are denied.

44. Repeat and reallege their answers to the allegations contained in the paragraphs referred to therein with the same force and effect as if herein set forth at length.

45. Deny the allegations contained in paragraph 45.

46. Deny the allegations contained in paragraph 46.

47. Deny the allegations contained in paragraph 47.

48. Paragraph 48 appears to be an explanation of Plaintiff's complaint, which does not lend itself to admission or denial. To the extent paragraph 48 contains allegations of fact, the allegations are denied.

49. Repeat and reallege their answers to the allegations contained in the paragraphs referred to therein with the same force and effect as if herein set forth at length.

50. Admit the allegations contained in paragraph 50, except deny that the relevant time period began in at least Fall 2001.

51. Deny the allegations contained in paragraph 51, except admit that quarterly reports in the form prescribed by 17 C.F.R. § 4.7(b)(2) were inadvertently not sent. However, Defendants regularly disclosed relevant pool financial information to pool participants or their appointed investment adviser.

52. Deny the allegations contained in paragraph 52, except admit that the annual reports were sent late after good-faith extension requests were made to the National Futures Association.

53. Deny the allegations contained in paragraph 53.

54. Repeat and reallege their answers to the allegations contained in the paragraphs referred to therein with the same force and effect as if herein set forth at length.

55. Deny the allegations contained in paragraph 55, except admit that funds were wired to LCM until May 2004.

56. Deny the allegations contained in paragraph 56.

57. Deny the allegations contained in paragraph 57.

### First Affirmative Defense

The Complaint fails to state a claim upon which relief may be granted and fails to state facts that support the claims set forth therein.

### Second Affirmative Defense

Plaintiff's action should be dismissed as it has failed to plead the elements of fraud or deceit with sufficient particularity.

### Third Affirmative Defense

At all times relevant, Defendants acted in good faith, exercised reasonable diligence, and did not knowingly or recklessly commit any fraudulent act or scheme or otherwise shirk their responsibilities under the Commodity Exchange Act or the regulations promulgated thereunder. At no time did Defendants seek to conceal losses. Plaintiff has failed to provide sufficient evidence to give rise to a strong inference that Defendants acted recklessly or with the willful intent to defraud pool participants.

### Fourth Affirmative Defense

All or some of the allegedly false and misleading statements of material fact made by Defendants were statements of opinion which had a reasonable basis in fact, were immaterial, or were factually accurate. The alleged representations in the emails referred to by Plaintiff have been taken entirely out of the context of the dialogue of which they were part.

### Fifth Affirmative Defense

The annual audited financial statements were issued late following good-faith requests for extensions to the National Futures Association. However, there were no damages to investors. Defendants engaged in constant oral and email communications with pool participants or their appointed investment adviser in which they regularly disclosed relevant pool financial information.

### Sixth Affirmative Defense

The pool participants never relied to their detriment on any matters, statements or omissions attributable to Defendants. Defendants' frequent communications with pool participants or their appointed investment adviser made their alleged failure to send timely formal reports irrelevant in terms of causing any losses to pool participants.

### Seventh Affirmative Defense

The complaint is barred in whole or in part because any and all losses sustained by pool participants were due to market forces.

### Eighth Affirmative Defense

No investors suffered any legally cognizable damages as a result of any of Defendants' allegedly fraudulent acts or omissions. There is no connection alleged or provable between the purported fraudulent statements and any losses by investors.

### Ninth Affirmative Defense

The complaint is barred in whole or in part by the doctrines of laches, waiver, ratification and estoppel.

### Tenth Affirmative Defense

The alleged technical violations, including commingling of funds and the alleged lateness of the annual statements, have been promptly and wholly rectified with no resulting losses to any members of the pool.

### Eleventh Affirmative Defense

Without admitting that any violations occurred, Defendants contend that any violations by them of the Commodity Exchange Act or the regulations promulgated thereunder, if any such violations occurred, did not rise to the level of demonstrating a likelihood of repetition required to support injunctive relief.

### Twelfth Affirmative Defense

Without admitting that any violations occurred, Defendants contend that any violative statements and activities alleged in the Complaint, if any such acts occurred, were sporadic, aberrational and not part of Defendants' regular course of doing business.

### Thirteenth Affirmative Defense

The relevant time period for this cause of action does not begin until March 2002. LAM was not even registered as a CPO until December 2001, there were no pool participants until February 2002, and the pool did not begin trading until March 2002.

### Fourteenth Affirmative Defense

The alleged commingling of funds in other than the pool's name was the result of an inadvertent error made by the Defendants' prior attorney in the subscription documents

causing funds to be wired to LAM rather than to the pool's account. This oversight was rectified immediately when it was brought to Defendants' attention by the National Futures Association Audit Team. All transactions since May 2004 were conducted through a separate account in the pool's name. Any funds previously deposited into the LAM account were immediately transferred to the pool account and any interest which accrued was properly transferred to the pool account as well.

## DEMAND FOR A JURY TRIAL

Defendants respectfully request a trial by jury in this matter as to all matters so triable as a matter of right.

WHEREFORE, Defendants, ABBAS A. SHAH and LINUXOR ASSET MANAGEMENT, LLC, demand judgment dismissing the complaint of Plaintiff, together with such other and further relief as to the Court may deem just and proper, including attorneys' fees and the costs and disbursements of this action.

Dated: New York, New York
       December 8, 2005

HARTMAN & CRAVEN LLP
Attorneys for Defendants

By: *Edward White*
    Edward A. White (EW 0368)

A Member of the Firm
488 Madison Avenue
New York, New York 10022
Tel. No. 212/753-7500