UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

U.S. COMMODITY FUTURES                          05-CV-8091 (LAK)
TRADING COMMISSION,

                              Plaintiff,         ECF CASE

        v.

ABBAS A. SHAH and LINUXOR ASSET
MANAGEMENT LLC,

                              Defendants.

--------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


Charles B. Manuel, Jr. (CM 3020)
Shira Y. Rosenfeld (SR 5392)
SHIBOLETH, YISRAELI, ROBERTS & ZISMAN, LLP
One Penn Plaza, Suite 2527
New York, New York 10119
Tel: 212-244-4111
Fax: 212-563-7108


*Attorneys for Defendants Abbas Shah,*
*Linuxor Asset Management, LLC, and*
*Linuxor Capital Management, LLC*


October 19, 2007

## TABLE OF CONTENTS

PRELIMINARY STATEMENT............................................................... 1

BACKGROUND............................................................................ 2

ARGUMENT............................................................................... 2

INTRODUCTION: THE STANDARD FOR SUMMARY JUDGMENT.......... 2

I.      THE AUTHORITY CITED BY THE CFTC SUPPORTS A RULING
        THAT SUMMARY JUDGMENT IS INAPPROPRIATE.................... 3

II.     THE CFTC HAS FAILED TO SUSTAIN SUMMARY JUDGMENT
        ON ITS FOUR CAUSES OF ACTION.......................................... 13

        A.      Count I: Section 4b(a) of the Act.................................... 13

        B.      Count II: Section 4o(1)(A) of the Act.................................... 15

        C.      Count III.................................................................. 15

        D.      Count IV.................................................................. 16

III.    THE CFTC IS NOT ENTITLED TO RELIEF BY
        SUMMARY JUDGMENT....................................................... 16

        A.      The CFTC is Not Entitled to a Permanent Injunction............... 16

        B.      The CFTC is Not Entitled to a Civil Monetary Penalty............... .17

        C.      The CFTC is Not Entitled to Restitution................................18

CONCLUSION..................................................................................20

## TABLE OF AUTHORITIES

*Commodity Futures Trading Comm'n v. AVCO Financial Corp.*,
    28 F. Supp. 2d 104 (S.D.N.Y. 1998)

*Commodity Futures Trading Comm'n. v. Baragosh*,
    278 F. 3d 319 (4th Cir. 2002)

*Commodity Futures Trading Comm'n v. British American Commodity Options*,
    560 F. 2d 135 (C.A.N.Y. 1977)

*Commodity Futures Trading Com'n v. Cheung*,
    1994 WL 583169 (S.D.N.Y. 1994)

*Commodity Futures Trading Comm'n ex rel. Kelley v. Skorupskas*,
    605 F. Supp. 923 (D.C.Mich. 1985)

*Commodity Futures Trading Commission v. Hunt*,
    591 F.2d 1211 (C.A.Ill., 1979)

*Commodity Futures Trading Comm'n v. International Financial Services (New York), Inc.*,
    323 F.Supp.2d 482 (S.D.N.Y. 2004)

*Commodity Futures Trading Commission v. Muller*,
    570 F. 2d 1296 (C.A. Fla. 1978)

*Commodity Futures Trading Comm'n v. Savage*,
    611 F.2d 270 (C.A.Cal. 1979)

*Commodity Futures Trading Comm'n v. Sidoti*,
    178 F.3d 1132 (11th Cir. 1999)

*Commodity Futures Trading Comm'n v. Valko*,
    Slip Copy, 2006 WL 2582970 (S.D.Fla. 2006)

*Commodity Futures Trading Comm'n v. Vartuli*,
    228 F. 3d 94 (2d Cir. 2000)

*In re Co Petro Marketing Group, Inc.*,
    680 F.2d 566 (9th Cir. 1982)

*Lehman Bros. Commercial Corp. v. Minmetals Intern. Non-Ferrous Metals Trading Co.*,
    179 F. Supp. 2d 118 (S.D.N.Y. 2000).

*Miller v. CFTC,*
    197 F.3d 1227 (9th Cir. 1999)

*New York State Energy Research & Dev. Auth. v. Nuclear Fuel Servs., Inc.,*
    666 F. 2d 787 (2d Cir. 1981)

*Reddy v. CFTC,*
    191 F.3d 109 (2d Cir. 1999)

*Schering Corp. v. Home Ins. Co.,*
    712 F. 2d 4 (2d Cir. 1983)

*Scotto v. Almenas,*
    143 F. 3d 105 (2d Cir. 1998)

*S.E.C v. Advance Growth Capital Corp.,*
    470 F. 2d 40 (7th Cir. 1972)

*S.E.C v. Bausch & Lomb, Inc.,*
    565 F.2d 8 (2d Cir.1977)

*S.E.C. v. Blatt,*
    583 F.2d 1325 (5th Cir.1978)

*S.E.C.  v. Drexel Burnham Lambert,*
    956 F. Supp. 503, 507 (S.D.N.Y. 1997)

*S.E.C. v. First City Financial Corp., Ltd.,*
    890 F.2d 1215 (D.C. Cir. 1989)

*S.E.C. v. Management Dynamics, Inc.,*
    515 F.2d 801 (2d Cir. 1975)

*S.E.C. v. Manor Nursing Centers, Inc.,*
    458 F.2d 1082 (2d Cir.1972)

*Weinstock v. Columbia Univ.,*
    224 F. 3d 33 (2d Cir. 2000)

*Winter v. United States,*
    196 F. 3d 339 (2d Cir. 1999)

## **Statutes**

17 C.F.R. § 32.9 J.

7 U.S.C. § 4b(A)

7 U.S.C. § 4d(1)

7 U.S.C. § 4o(1)

7 U.S.C. § 4b(A)

7 U.S.C. § 6(a)(1)

7 U.S.C. § 6(b)(a)(iv)

7 U.S.C. § 6c(b)

7 U.S.C. § 6(d)

7 U.S.C. § 6(h)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

| | ) | |
| U.S. COMMODITY FUTURES | ) | 05-CV-8091 (LAK) |
| TRADING COMMISSION, | ) | |
| Plaintiff, | ) | ECF CASE |
| | ) | |
| v. | ) | |
| | ) | |
| ABBAS A. SHAH and LINUXOR ASSET | ) | |
| MANAGEMENT LLC, | ) | |
| Defendants. | ) | |
| | ) | |

———————————————————————

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

If there ever was a case unsuitable for summary disposition – or, indeed for any ultimate finding of fraud – it is this case. The CFTC here seeks to hold a fund and its manager liable for market losses. Every single dollar of the clients' money is accounted for. Defendants did not steal a dime. Defendants are not even accused of taking money for themselves, or of taking money from one client's account and misapplying it to another client's account, or of an inability to explain what happened to money. There are no allegations that the trading conducted by defendants was unauthorized or reckless. The worst that can be said following a reading of the Shah affidavit and exhibits, and the true crux of the CFTC's fraud case, is that in a single instance there was alleged mistaken reporting in one e-mail sent to the clients while defendant Shah was away on vacation, cured promptly on his return a week later. Plaintiff's allegations do not remotely

1

establish a claim of fraud. The wrong party has made the wrong motion at the wrong time. This case must go to trial.

## BACKGROUND

The background of this matter is set forth in detail in the accompanying Affidavit of Abbas Shah, the exhibits thereto, and the Rule 56.1 Counterstatement, to which we respectfully refer the Court.

## ARGUMENT

### THE COURT SHOULD DENY THE CFTC'S
### MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION:
### THE STANDARD FOR SUMMARY JUDGMENT

When considering a motion for summary judgment, "the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." Winter v. United States, 196 F.3d 339, 346 (2d Cir. 1999); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). The moving party bears the initial burden of establishing that there are no genuine issues of material fact. The burden then shifts to the non-movant who must set forth facts showing that there is a genuine issue for trial. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

"If 'the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact,' then summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F. 2d 4, 9-10 (2d Cir. 1983) (citing *New York State Energy Research & Dev. Auth. v. Nuclear Fuel Servs., Inc.*, 666 F.2d 787, 790 (2d Cir. 1981))." *Lehman Bros. Commercial Corp. v. Minmetals Intern. Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118 (S.D.N.Y. 2000). Also, "[i]f resolution of the dispute

would pit appellant's word against the CFTC's affiants, the decision is one for a trier of fact." *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979)

**POINT I**

**THE AUTHORITY CITED BY THE CFTC SUPPORTS A RULING THAT SUMMARY JUDGMENT IS INAPPROPRIATE.**

Virtually every case cited by the CTFC involved flagrant violations, genuine fraud and, frequently, misapplication of clients' money or outright stealing of that money. Further, full summary judgment was not granted in any of the twelve cases cited by the CFTC in which the CFTC was a plaintiff, with the exception of one case which involved the indisputable outright theft of client funds. In another, the court only granted partial summary judgment on an issue that was clearly an outright violation of the Commodity Exchange Act and denied partial summary judgment on other issues. In one case cited by the CFTC, summary judgment was denied. Other cases only involved preliminary injunction hearings, or cases in which determination of the merits was left for trial.

A.   ***Commodity Futures Trading Comm'n ex rel. Kelley v. Skorupskas, 605 F. Supp. 923 (D. Mich. 1985)***

Based upon the CFTC's complaint and affidavits, and by consent of the parties, the Court entered a preliminary injunctive order against Skorupskas. The State of Michigan then filed a motion to hold Skorupskas in civil contempt for alleged violations of the preliminary injunctive order. The Court held a trial concerning the alleged violations of the Commodity Exchange Act and a separate contempt proceedings. Then, the district court directed submission of a judgment in accordance with the findings of fact and conclusions of law from the trial and the contempt proceedings, which were as follows:

3

First, Skorupskas defrauded customers by soliciting investors' funds for commodity trading and not trading those funds. Only a small percentage of the investors' contributions were traded. Skorupskas only opened trading accounts in her and her husband and the original fifteen investors' names. She never opened commodity pool accounts although she solicited several hundred thousand dollars for such pools. Instead, she disbursed the investor funds to other investors, to herself, and to her family. This conduct is clearly prohibited by the Act.

Second, Skorupskas violated sections 4b(A) and 4o(1) by issuing blatantly false and fraudulent monthly statements to customers that indicated large trading profits when, in fact, Skorupskas had only suffered losses.

Third, Skorupskas included and solicited deceitful performance tables in the disclosure documents she filed with the CFTC. Skorupskas falsely stated that the table summarized the actual trading performance of fifteen accounts when she did not do or advise any of these actions. Investors relied upon the performance tables in originally deciding to invest and to continue investing with Skorupskas and her corporations.

Fourth, Skorupskas violated section 4d(1) of the Act, 7 U.S.C. § 6d, by acting as a futures commission merchant without proper registration.

### Comments

*There was no summary judgment in this case; it involved a preliminary injunction hearing, a full trial on the merits, and then a contempt hearing. Further, this case involved flagrant fraud on the part of the defendant who intentionally falsified disclosure documents to appear as though the funds she was trading on behalf of her clients were profiting when they were actually incurring losses.*

4

**B.**    ***Commodity Futures Trading Comm'n v. AVCO Financial Corp.,***
     ***28 F. Supp. 2d 104 (S.D.N.Y. 1998)***

Defendants manufactured, advertised and sold a computer software program that analyzed market conditions throughout the day and generated specific advices to customers to buy, sell or exit positions in exchange-traded futures contracts on foreign currency. *After a bench trial*, the court found two of the three defendants liable because the petitioners defrauded customers regarding the reliability of its program, claiming that it generated large profits, overwhelmingly picked winning trades, and involved little or no risk of loss.

### Comments

*This case involved a bench trial and not a motion for summary judgment. Under the facts of this case, defendants flagrantly defrauded clients through a computer software program they guaranteed to be profitable and risk-free.*

**C.**    ***Commodity Futures Trading Comm'n. v. Baragosh,***
     ***278 F. 3d 319 (4th Cir. 2002)***

The CFTC commenced an action against Baragosh and Noble Wealth. Baragosh was the key employee of Noble Wealth, a California corporation that held itself out to be a licensed brokerage house, but was never designated as a contract market for the trading of foreign currency futures contracts and never registered with the Commission in any capacity. Noble Wealth HK set up a "trading floor" where rows of computer monitors were set up to display current prices of various foreign currencies. However, Noble Wealth did not actually purchase any foreign currency contracts that corresponded to

customer orders.  Further, Baragosh trained and recruited consultants to execute trades in exchange for a personal commission for each fake trade.

Upon careful review of the record in a light most favorable to Baragosh, the Court found issues of material fact as to whether Baragosh was a controlling person of Noble Wealth because none of the evidence proffered by the CFTC gave any indication that he was an officer or director of Noble Wealth, or owned stock or had any voting rights in the company.  Nor was there evidence that Baragosh was authorized to hire, fire or discipline any Noble Wealth employees.

Based on the foregoing, the district court entered a default judgment against the companies and subsequently granted summary judgment to the CFTC against Baragosh. On Appeal, the Court of Appeals (1) affirmed the district court's imposition of a civil penalty on Baragosh for his individual acts while employed by Noble Wealth, (2) affirmed the injunctions against Baragosh, but (3) vacated summary judgment on the issue of whether Baragosh was a controlling person of Noble Wealth, and (4) vacated and remanded the district court's holding that Baragosh bucketed orders in violation of 7 U.S.C. § 6b (a)(iv) and its order directing Baragosh to pay restitution to Noble Wealth customers.

### Comments

*In this case, defendants blatantly defrauded clients by claiming they were trading their clients' money when they were in fact stealing their money.  The Court granted partial summary judgment on an undisputed fact that Baragosh, as an employee of Noble Wealth, clearly violated the Commodities Exchange Act, but denied partial summary*

*judgment because it was materially disputed whether Baragosh was a controlling employee of Noble Wealth.*

**D.**    ***Commodity Futures Trading Comm'n v. British American Commodity Options,*
         *560 F.2d 135 (2d Cir. 1977)***

British American Commodity Options began operating as a dealer in options on futures contracts on commodities traded on London commodity markets approximately five months after the CFTC's registration requirements became effective.  The CFTC advised defendant to register as a commodity trading advisor required to register with the Commission.  British American disagreed and persisted in offering commodity trading advice.

Based on the foregoing, the CFTC moved for a preliminary injunction against defendant British American Commodity Options.  The district court denied the CFTC's motion for a preliminary injunction, and the Commission appealed.  The court of appeals reversed the district court's decision and ultimately granted the CFTC an injunction enjoining defendant from dealing as a commodity trading advisor.

<u>**Comments**</u>

*Here, because defendants were purposefully violating the CFTC's registration requirements, the Court granted the CFTC's motion for an injunction; there was no summary judgment.*

**E.**    ***Commodity Futures Trading Com'n v. Cheung,*
         *Not Reported in F. Supp., 1994 WL 583169 (S.D.N.Y. 1994)***

The CFTC brought a case against Cheung, who solicited clients lacking knowledge of the trading industry to trade in the commodity futures markets and then

embezzled and converted their funds by depositing them into his own personal bank accounts or otherwise used them for his own purposes.  Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), defendant moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state claim upon which relief may be granted. Defendant's motion was denied.

### Comments

*The Court in this case, which involved defendant's blatant stealing of clients' money, was called upon to determine a motion to dismiss for lack of subject matter jurisdiction, not a motion for summary judgment.*

**F.    *In re Co Petro Marketing Group, Inc.*,
680 F.2d 566 (9th Cir. 1982)**

Co Petro Marketing Group, Inc., a California corporation, was engaged in the purchase and sale of various petroleum products, including acting as a gasoline broker in the spot market and offering a "cash forward contract" for the purchase of gasoline.  The "cash forward contract" was actually a disguised commodity futures contract which was being executed outside of a proper contract market in violation of 7 U.S.C. §§ 6 and 6h. The CFTC had standing to intervene in the Chapter 11 proceeding.

### Comments

*In that case, the CFTC was seeking to intervene in a Chapter 11 proceeding against Co Petro Marketing Group, Inc., a corporation liable for evading the CFTC's registration requirements; this was not a motion for summary judgment.*

**G.**    ***Commodity Futures Trading Commission v. Hunt,***
         **591 F.2d 1211 (6ᵗʰ Cir. 1979)**

In that case, CFTC claimed defendants violated Section 4a(1) of the Commodity Exchange Act, 7 U.S.C. s 6a(1), by exceeding collectively the three million bushel limit that had been set for soybean futures contracts.

The district court conducted hearings on the CFTC's motion for a preliminary injunction, and then issued a memorandum opinion accompanied by findings of fact and law, and entered an order denying the CFTC's motion for an order enjoining future violations of the limits and rejecting the Commission's request for disgorgement of the Hunts' illegal profits. The lower court also rejected the counterclaim and third-party claims brought by the Hunts. The Court of Appeals reversed the lower court's refusal to grant the CFTC a preliminary injunction against the Hunts, but upheld the lower court's rejection of the Hunts' third-party claims. Additionally, the Court of Appeals held that disgorgement of illegally obtained profits is a proper remedy for violations of Commodity Exchange Act provisions, but remanded the issue of the disgorgement award to the district court for a full hearing on the facts, since there were complex evidentiary problems involved in isolating the profits illegally achieved by the defendants.

<u>**Comments**</u>

*There was no summary judgment in that case, where the CFTC accused defendants of exceeding the limit for soybean futures contracts; a preliminary injunction was imposed against the defendants, but the Court directed that a full hearing be held to resolve the complex issues of fact existed with respect to the amount of a disgorgement award.*

9

**H.** *Commodity Futures Trading Comm'n v. International Financial Services (New York), Inc.*, 323 F. Supp. 2d 482 (S.D.N.Y. 2004)

The CFTC brought an action against defendant International Financial Services (New York), Inc., alleging that the company engaged in improper transactions in foreign currency futures contracts. The parties cross-moved for summary judgment and the Court granted summary judgment in favor of the CFTC based on the determination that the following facts were not in dispute:

IFS Inc. held itself out to be a currency trading brokerage firm, but it never registered with the CFTC. The IFC advertised for and recruited persons, whom it characterized as independent contractors, to act as foreign currency brokers, traders, and consultants. The independent contractors received minimal and misguided training and IFS Inc.'s trading practices made it virtually impossible for the independent contractors to make money for their clients. Further, IFS Inc. collected thousands of dollars in client funds, transferred these funds to an overseas account, and issued their clients statements purportedly showing trading losses.

### Comments

*This is the only case cited by the CFTC in which the CFTC was a party and full summary judgment was granted in favor of the CFTC. This case is distinguishable from the case at bar because defendants utilized fraudulent trading practices in which it was impossible for defendants' clients to profit and by collecting funds from their clients by claiming the money would be traded on behalf of the clients and sending the clients falsified statements reflecting losses when in fact they were stealing the clients' money. In the case at bar, there are no allegations of blatant fraud, nor are there any allegations that Shah misapplied or stole clients' money.*

10

I.    ***Commodity Futures Trading Commission v. Muller,***
      ***570 F. 2d 1296 (C.A. Fla. 1978)***

The district court granted the CFTC's motion for a preliminary injunction based on its demonstration that Muller fraudulently converted and misappropriated for his own use funds entrusted to his care by customers of the commodity option firm by which he was employed, in violation of the Commodity Futures Trading Commission Act of 1974, 7 U.S.C.A. § 6c(b), and antifraud Regulation 32.9, 17 C.F.R. § 32.9 (1977). The Court of Appeals affirmed the injunction enjoining Muller and anyone connected with him from concealing or disposing of Muller's assets in any manner, pending resolution of their case.

### Comments

*In that case, the Court was called upon to decide a motion for a preliminary injunction pending the determination of a full trial about defendant's fraudulent conversion and misappropriation of clients' funds for his personal use; this case specifically called for a full trial on the facts and not summary judgment.*

J.    ***Commodity Futures Trading Comm'n v. Savage,***
      ***611 F. 2d 270 (C.A. Cal. 1979)***

*A genuine issue of fact existed* as to knowledge of Savage, a member of the MidAmerica Commodity Exchange, a contract market registered with the CFTC, therefore *precluding summary judgment* in favor of the Commission on allegations (i) that Savage prearranged trades which defrauded customers, entered into offsetting trades with customers' accounts, and engaged in accommodation sales, or fictitious transactions, (ii) that Savage used his relationship with trading company customers to give advice with knowledge that it was incorporated directly into trades on customers' behalf, and (iii) that

Savage then bought and sold opposite those customer orders, constituted a transaction, practice or course of business which operated as a fraud or deceit on those customers.

### Comments

*Here, the Court denied the CFTC's motion for summary judgment because genuine issues of fact existed with respect to the CFTC's allegations that defendant Savage prearranged trades and was misapplying clients' money from some accounts to in other accounts.*

K.  ***Commodity Futures Trading Comm'n v. Valko,***
    **Slip Copy, 2006 WL 2582970 (S.D.Fla. 2006)**

The Court granted Plaintiff's motion for *judgment by default* and ordered a permanent injunction against Defendant IIHC, which took money from hundreds of customers claiming to trade on their behalf and provided the customers with "Transaction Summary" statements to detail trades that took place on behalf of their customers, but none of the "trades" detailed in the "Transaction Summary" ever took place.

### Comments

*In this case, the CFTC moved for a default judgment, not summary judgment based on allegations that defendant was providing false transaction summaries of trades that never took place and, in fact, defendant was stealing his customers' money.*

L.  ***Commodity Futures Trading Comm'n v. Vartuli,***
    **228 F. 3d 94 (2d Cir. 2000)**

The court granted Commodity Futures Trading Commission (CFTC) a permanent injunction in its civil enforcement action based upon the manufacture, sale and advertising of computer software which seller and its sole shareholder fraudulently

12

claimed provided profitable trading opportunities for its purchasers and users in market for currency futures.

**Comments**

*That case involved a motion for preliminary injunction based on defendants' alleged blatant fraud in connection with computer software that offered false profitable trading opportunities.*

**POINT II**

**THE CFTC HAS FAILED TO SUSTAIN SUMMARYJUDGMENT ON ITS FOUR CAUSES OF ACTION**

The CFTC comes nowhere close to establishing the elements of fraud at all in this case, let alone for disposition by summary judgment. This case does not involve any knowing scheme by Shah or a willful deception. Defendants traded their clients' funds in full compliance with the trading regulations set forth in the Commodity Exchange Act. Their clients experienced a loss due to the market; they did not steal or misuse their clients' funds. Defendants did not profit from the market loss experienced by their clients; they in fact received practically no compensation over three years. Summary judgment cannot be sustained.

A.    **Count I: Section 4b(a) of the Act**

In order to constitute fraud, the unlawful acts set forth in Commodity Exchange Act, § 4b(A-D) as amended, 7 U.S.C.A. § 6b(A-D), specifically, cheating or defrauding, willfully making a false report, willfully deceiving and bucketing an order or offseting an order or willfully and knowingly taking the opposite side of a transaction for another person, *must* have been done with knowledge of their nature and character or with

careless disregard of their nature and character.  *See Commodity Futures Trading Comm'n v. Savage*, 611 F. 2d 270, 283 (C.A. Cal. 1979).

In addition, as stated above, "If 'the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact,' then summary judgment must be denied." *Lehman Bros. Commercial Corp. v. Minmetals Intern. Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118 (S.D.N.Y. 2000).  Also, "[i]f resolution of the dispute would pit appellant's word against the CFTC's affiants, the decision is one for a trier of fact.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979)

Defendants did not make any intentionally misleading statements or omissions to their clients.  Defendants made full disclosure to their clients; corresponding with them several times a week as to the status of their trades.  Defendants honored the law.  Plaintiff's allegations to the contrary are an unreasonable interpretation of the facts that preclude summary judgment.  The one e-mail referred to by the CFTC in support of this Count contained a simple mistake and not an attempt to mislead anyone.  And Shah brought the mistake to the clients' attention immediately upon uncovering it.

The cases cited by CFTC in support of this Count are distinguishable.

In *Commodity Futures Trading Comm'n v. AVCO Financial Corp.*, 28 F. Supp. 2d 104 (S.D.N.Y. 1998), the Court held a *bench trial*, not a summary judgment proceeding, to establish that AVCO Financial Corporation was purposefully defrauding its customers through the use of computer software that falsely claimed to generate huge profits.

14

Faced with similar facts to the *AVCO* case, the court in *Commodity Futures Trading Comm'n v. Vartuli*, 228 F. 3d 94 (2d Cir. 2000) granted a motion for preliminary injunction, not summary judgment.

In *Commodity Futures Trading Comm'n v. Valko*, Slip Copy, 2006 WL 2582970 (S.D.Fla. 2006), the Court granted the CFTC's motion for *judgment by default*, not a summary judgment motion, and ordered a permanent injunction against defendants accused of taking money from hundreds of clients, purported to trade on behalf of the clients, sent out false disclosure statements detailing trades that never took place, and stole their clients' money.

Based on the foregoing, it is clear that material issues of fact exist with respect to Count I of the CFTC's complaint, Section 4b(A) of the Commodities Exchange Act

**B.**     **Count II: Section 4o(1)(A) of the Act**

In *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (C.A.Cal. 1979), the case cited by the CFTC in support of this count, a genuine issue of fact existed as to defendant's knowledge, and scienter is precisely what precluded a finding of summary judgment in favor of the CFTC, which alleged that Savage prearranged trades and was misapplying clients' money from some accounts to in other accounts. Likewise here, defendants have alleged facts that would lead a reasonable jury to conclude that material issues exist with respect to whether defendants had the requisite scienter to violate this provision of the Act, and whether they engaged in a fraudulent scheme at all.

**C.**     **Count III**

The CFTC has cited no case in which a court has granted summary judgment for technical reporting requirement violations; indeed, it cites no cases at all to support its

contention. Moreover, its suggestion that any such violation caused a loss or was relied upon by investors or induced investors to do or not to do anything is purely speculative and is flatly denied by defendants, who in fact made full, almost daily disclosure to the only two clients of the fund. This is a matter for trial – and more properly an administrative trial. That, indeed, appears to be the forum in which the CFTC has addressed such matters until now.

**D.    Count IV**

The pool funds were initially mistakenly directed to Linuxor Capital Management ("LCM") due to an administrative error by the attorney who set up the account. The attorney, Charles E. Hall Jr., admitted that he erroneously listed the wrong account number when placing the funds in an account. When this error was realized, this mistake was promptly corrected and all of the funds were transferred to the proper account, along with the appropriate interest.

**POINT III**

**THE CFTC IS NOT ENTITLED TO RELIEF BY SUMMARY JUDGMENT.**

**A.    The CFTC is Not Entitled to a Permanent Injunction.**

The cases cited by the CFTC do not support injunctive relief on this motion, nor ultimately in this case. In *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807, 814 (2d Cir. 1975), after pointing out that " . . . illegal activity, without more, does not automatically justify the issuance of an injunction," the Second Circuit affirmed issuance of an injunction against Levy and vacated that against Hodge, the difference being a clear showing of a "likelihood that the wrong will be repeated" in the one instance, and its absence in the second. Furthermore, injunctive relief is never automatic upon the

showing of a statutory violation. *SEC v. Advance Growth Capital Corp.*, 470 F. 2d 40, 53 (7th Cir. 1972); see also *SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8, 18 (2d Cir.1977). While past misconduct is highly suggestive of the likelihood of future violations, it does not necessarily lead to the conclusion that future misconduct will occur. *Commodity Futures Trading Commission v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979).

In this case, the SEC has not cited a single instance of past misconduct by defendants, let alone any evidence that future misconduct will occur. Moreover, injunctive relief is only granted upon showing a violation of the Act, which the CFTC has not demonstrated in its motion for summary judgment. A "summary injunction" without a trial is entirely inappropriate.

**B.    The CFTC is Not Entitled to a Civil Monetary Penalty**

The CFTC is not entitled to a civil monetary penalty. First, in *Hunt*, 591 F.2d at 1223, cited by the CFTC, no civil penalty was even imposed. In the second case cited by the CFTC, *Reddy v. CFTC*, 191 F.3d 109, 123 (2d Cir. 1999), the Second Circuit was reviewing the imposition of a penalty in an internal administrative proceeding conducted by the CFTC, not a district court's "summary penalty" ruling. In *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999), the court was also reviewing the decision of an Administrative Law Judge within the CFTC. Thus, *Reddy* and *Miller* do not bear any weight on a motion for summary judgment in federal court.

Moreover, in *Miller*, the Ninth Circuit did not uphold the penalty imposed because the CFTC could not show that the losses were causally related to the fraud. *Id.* at 1235-36. In the case at bar, the CFTC has not shown any causal relation between the losses and the fraud, and it cannot do so because all parties recognize that the losses in

17

question were caused in the market – and the jury will ultimately find that there was no fraud.

Thus, a civil monetary penalty is inappropriate in this Court and at this stage and the CFTC cannot show that any losses were causally related to any of Shah's actions.

## C.     The CFTC is Not Entitled to Restitution

The primary purpose of restitution or disgorgement has been described as follows:

> To prevent unjust enrichment, the court may exercise its equitable power only over property causally related to the wrongdoing. The remedy may well be a key to the SEC's efforts to deter others from violating the securities laws, but disgorgement may not be used punitively.

*S.E.C. v. First City Financial Corp., Ltd.,* 890 F.2d 1215, 1231 (D.C. Cir. 1989), *citing SEC v. Blatt,* 583 F.2d 1325, 1335 (5th Cir.1978); *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1104 (2d Cir.1972). Similarly, the CFTC has the burden of proving that the disgorgement figure correlates to the unjust enrichment. *Commodity Futures Trading Comm'n v. Sidoti*, 178 F.3d 1132, 1138 (11th Cir. 1999) (holding that the district court should have limited the period of disgorgement to the period of time as to which the district court received evidence of fraud). In *Sidoti*, the Eleventh Circuit stated:

> Nevertheless, the CFTC has the burden of proving the disgorgement figure reasonably approximates the amount of unjust enrichment. *See CFTC v. American Metals Exchange Corp.,* 991 F.2d 71, 79 (3d Cir. 1993) ("[T]he district court should keep in mind the limitation placed on its equitable powers by this requirement that there be a relationship between the amount of disgorgement and the amount of ill-gotten gain."); *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1231 (D.C. Cir. 1989). As a corollary to this rule, the district court may not disgorge profits obtained without the aid of any wrongdoing. *See First City,* 890 F.2d at 1231 ("Since disgorgement primarily serves to prevent unjust enrichment, the court may exercise its equitable power only over property causally related to the wrongdoing . . . . [D]isgorgement may not be used punitively.").

### 1. *Disgorgement of Profits from Carrington and Wuensch*

The CFTC contends and the district court agreed that the systematic and

pervasive nature of fraud at Trinity and Carrington made all of their profits unlawful. Wuensch and Carrington, however, challenge the breadth of the disgorgement order. They contend the district court should have limited the period of disgorgement to the period of time as to which the district court received evidence of fraud. We agree.

Based upon an in limine motion filed by the CFTC, the district court limited the evidence at trial to pre-1995 conduct by Appellants. Therefore, there was no record evidence of fraud in 1995, 1996, or 1997. A district court may not order disgorgement of profits for a period during which there was no record evidence of fraud. *Cf. First City,* 890 F.2d at 1231. If the CFTC had wanted the district court to disgorge profits after 1994, it should have introduced evidence of fraud occurring after 1994. Accordingly, we hold the district court abused its discretion by ordering disgorgement of post-1994 profits.

Furthermore, in *Commodities Futures Trading Commission v. Hunt*, 591 F.2d 1211, 1223 (7th Cir. 1979), the Court remanded the disgorgement issue because the CFTC failed to prove the profits received by the defendants and failed to suggest what a court should do with such disgorged funds.

The CFTC states that the intention of restitution is "to make the damaged persons whole and compensate them for a defendant's wrongful acts." *CFTC v. AVCO Financial Corp.*, 28 F.Supp.2d 104, 121 (S.D.N.Y. 1998) (*citing SEC v. Drexel Burnham Lambert*, 956 F. Supp. 503, 507 (S.D.N.Y. 1997) (Defs. Br. at 20.) However, the CFTC neglects to mention the preceding sentence in AVCO: "The disgorgement remedy is not intended to compensate investors; rather, it is intended to deprive the violator of his ill-gotten gains and to further the deterrence objectives of the CEA." AVCO, 28 F.Supp.2d at 121. Following that rationale, the Court in *AVCO* determined that AVCO received $4,148,572 in ill-gotten gains and ordered disgorgement of that amount to the dollar. In a subsequent decision by the same court, *Commodity Futures Trading Commission v. AVCO Financial Corp.*, 1998 WL 524901 *1 (S.D.N.Y. 1998), the Court reduced that amount to $701,534

to reflect expenses incurred by AVCO.  In both decisions, the amount disgorged was the same amount as the ill-gotten gains.  Disgorgement is not an insurance policy for market losses or a penalty, it is strictly to restore ill-gotten gains.

Here, Shah did not receive any ill-gotten gains, which the CFTC obscures in its statement that  Shah "has conceded the losses."  (Def. Br. at 20.)  Concede means he has acknowledge them to be true; it does not mean he caused them or received any ill-gotten gain.  The CFTC has not even attempted to show what property Shah got from any investor that was causally related to the wrongdoing.  The disgorgement claim fails.

## CONCLUSION

Defendants Abbas A. Shah, Linuxor Asset Management, LLC, and Linuxor Capital Management, LLC respectfully request that plaintiff's motion for summary judgment be denied.


Dated:  New York, New York
        October 19, 2007

SHIBOLETH, YISRAELI, ROBERTS & ZISMAN, LLP


By: *Charles B. Manuel, Jr*
Charles B. Manuel, Jr.
Of Counsel
One Penn Plaza, Suite 2527
New York, New York 10119
Tel. 212-244-4111

Attorneys for Defendants Abbas  Shah,
Linuxor Asset Management, LLC, and
Linuxor Capital Management, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

U.S. COMMODITY FUTURES                          05-CV-8091 (LAK)
TRADING COMMISSION,

                    Plaintiff,                    ECF CASE

      v.

ABBAS A. SHAH and LINUXOR ASSET
MANAGEMENT LLC,

                  Defendants.

--------------------------------------------------------X


## AFFIDAVIT AND EXHIBITS IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


Charles B. Manuel, Jr. (CM 3020)
Shira Y. Rosenfeld (SR 5392)
SHIBOLETH, YISRAELI, ROBERTS & ZISMAN, LLP
One Penn Plaza, Suite 2527
New York, New York 10119
Tel: 212-244-4111
Fax: 212-563-7108


*Attorneys for Defendants Abbas Shah,*
*Linuxor Asset Management, LLC, and*
*Linuxor Capital Management, LLC*


October 19, 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, Plaintiff, | ) ) ) ) | 05-CV-8091 (LAK)

ECF CASE |
| v. | ) ) ) | **AFFIDAVIT OF ABBAS SHAH** |
| ABBAS A. SHAH and LINUXOR ASSET MANAGEMENT LLC, Defendants. | ) ) ) ) ) ) | |

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK  )

Abbas Shah, duly sworn, states:

1. In February 2002, at a New York City dinner, Philip McCarthey ("McCarthey") told me he was interested in investing for high returns and told his financial representative Philip Egger ("Egger"), a McCarthey family friend, to give me $1.5 million as an initial trial investment amount. McCarthey was told that he would be the first investor and that the fund had not been started.

2. Initially, I solicited only one investor – Philip McCarthey – as Egger later voluntarily invested $300,000 in the fund on June 3, 2002 and James Temple only invested in the fund from December 2003 to April 2004.

1

3. Per McCarthey's request, Milbank Tweed conducted due diligence on me and the proposed Linuxor investment pool prior to McCarthey's investment.

4. In March 2002, as McCarthey's financial representative, Egger transferred $1.5 million out of McCarthey's trust funds, under the care of his law firm, Milbank Tweed, into LAM's fund.

5. In March 2002, McCarthey told me that he was not interested in small returns like 1-2% per month, but stated that he was looking for very high percentage returns and was prepared to take the risks and volatility associated with extremely high possible return. McCarthey also directed me to look for trades that meet these requirements.

6. Around May 2002, McCarthey invested an additional $10 million into the fund on behalf of two trusts under his control. Both McCarthey and Egger instructed me to take on positions that could possibly achieve large gains, notwithstanding the high volatility and risks involved.

7. I made no promise to stay within 15% parameters. I may have discussed conservative investment strategies with 1-2% monthly returns and drawdowns limited to 15% with McCarthey, but McCarthey rejected any such approach. McCarthey consistently asserted that he was only interested in large gains and was prepared to take the risks and volatility associated with extremely high possible returns.

8. Egger told me that McCarthey was accustomed to risky gambling and had been known to place larger bets in Las Vegas than the amounts he invested into LAM's fund.

9. In June 2002, I called McCarthey to give him a status report on the investments and was told that he only wanted to receive year-end annual reports because these were required for tax purposes.

10. McCarthey and Eggers told me on numerous occasions from June 2002 throughout 2003 not to send any reports other than annual reports.

11. By June 2002, Egger, who was by then an investor in the fund, telephoned me very frequently, often several times per day.

12. Egger also visited New York City on numerous occasions to observe me and monitor the fund.

13. In June 2002, the initial trades set up in the fund experienced significant losses.

14. On or around August 14, 2002, the complete status of the portfolio was made known to McCarthey and Egger in a telephone call detailing the loss. This report disclosed that McCarthey and Egger were down 32% at this time.

15. As the portfolio showed losses of approximately 50% during July and August of 2002, I mailed reports to McCarthey and Egger notifying them of these losses in early October, and McCarthey had discussions with Egger concerning these losses.

16. This written report in early October 2002 to McCarthey and Egger was in addition to continuous telephone contact with me since April 2002.

17. McCarthey also spoke to me in January 2003 regarding the value of the investment, when he told me, "So, we didn't hit the home run we were hoping for" and to "keep your head down."

18. As soon as I received the 2002 K-1's from the accountant, I delivered them to McCarthey and Egger by regular mail on August 14, 2003, and again by fax on August 25, 2003.

19. Prior to August 25, 2003, I also invited McCarthey and his CFO, Todd Brashear, to contact the accountant directly with any questions regarding the portfolio and records.

3

20. After receiving the K-1s in August 2003, McCarthey remained invested in the fund, requested no further written reports, and sought no redemption until June 2004.

21. McCarthey, Todd Brashear, Egger and a representative of the McCarthey investments were in frequent, often daily, contact with me concerning the investments, including over 1500 phone calls, numerous emails, and around 10 personal visits from 2002 until 2004.

22. In an email to me, dated May 17, 2004, Brashear praised the gains realized during the prior week, and inquired about a withdrawal of only $500,000 from the McCarthey account.

23. After Brashear's May 17, 2004 email, I immediately transferred $500,000 to the Fund's checking account pending wire transfer to McCarthey, but within two days McCarthey decided not to withdraw the $500,000 and instructed me to return the full amount to the investment pool.

24. When pool funds were initially mistakenly directed to Linuxor Capital Management ("LCM"), this was due to an administrative error by the attorney who set up the account. When this error was realized, this mistake was promptly corrected and all of the funds were transferred to the proper account, along with the appropriate interest.

25. I was told by my attorney, Charles Hall, Jr., that I had to file under the exemptions of CFTC Regulation 4.7, as there was only 1 investor and McCarthey was a Qualified Eligible Person ("QEP").

26. In addition, McCarthey, a QEP, specifically told me not to send paper quarterly reports saying, "the only time we need a report is annually for tax purposes."

27. The delay in sending out the 2002 Annual Report was caused by the broker and the accountant, who filed for the tax extension because one brokerage firm had not yet submitted

final trading records for 2002, and was not my fault whatsoever.  Moreover, McCarthey and his adviser, Brashear, were informed by letter of the extension request which they approved.

28. The pool's losses for 2002 were disclosed to McCarthey, his advisers and Egger on a current basis.

29. I spoke to McCarthey in May 2003 and notified him that the value of his account had gone down further.

30. In my deposition, I was confused by an incomprehensible question with regard to "further losses since the beginning of 2002," as the fund originated at the beginning of 2002, and a fund cannot suffer any losses prior to its existence.

31. Citco values options at book value while market value is calculated assuming market value of the options.  Using market value, the approximate net asset value of the pool for the period ending December 31, 2002 was $5,919,609. However, both valuations are correct, despite getting different numbers.  It is typical for a discrepancy to exist, even among highly reputable professional auditors, as the value of these funds fluctuate intraday as well as from day to day.

32. Once again, the email on January 30, 2004 was an acknowledged mistake.  In response to a request from Brashear, the email was hurriedly sent late in the evening from a vacation hotel, in a remote location, where I had no records or financial information with me for reference.  As soon as I returned to New York and discovered my mistake, I called McCarthey's financial adviser, Todd Brashear, on the telephone on or about February 6, 2004, notified him of the inaccurate email, and disclosed the accurate account balances.  Upon notifying Mr. Brashear of the mistaken email and providing the accurate pool balances, not only did the McCarthey pool participants not withdraw their investment, but Mr. Brashear told me to keep "doing what you're doing."  Moreover, the McCarthey pool participants did not incur any loss from my mistaken

email of January 30, 2004. Indeed, if the McCarthey pool participants had withdrawn their investment on January 30, 2004, they would have lost money, as the pool made substantial gains from January 30, 2004 forward, even with forced liquidation costs factored in).

33. The McCarthey pool participants received their distributions shortly after June 2004, while Egger and Temple received their distributions in April 2004.

34. Linuxor only missed one report to the CFTC in 2004, as no quarterly reports were required to be made to the CFTC under the CFTC Regulation 4.7 exemption.

35. My compensation from the beginning of the fund in 2002 to liquidation in 2004 was approximately $60,000 in management fees. However, this compensation amount should be reduced by the substantial costs I incurred in setting up and operating the fund.

36. I received virtually no compensation based upon the profits earned by the fund and, because of the high water mark that was attained in May 2002 and never met thereafter, I never received a profit-related incentive fee from the fund.

37. There could have been no scheme to defraud as alleged by the CFTC when the consequence of the "fraud" as that I was paid almost nothing.

38. The losses in the fund were market losses only. There is no allegation, let alone any evidence, in this case that I misappropriated or misinvested funds.

39. Finally, I never intentionally mislead investors.

WHEREFORE, we respectfully request that Plaintiff's Motion for Summary Judgment be denied.

_____
Abbas Shah

Sworn to before me
October 19, 2007

_____
Notary Public

SHIRA YAEL ROSENFELD
Notary Public, State Of New York
No. 02RO6053576
Qualified In New York County
Commission Expires January 16, 20 __

## TABLE OF EXHIBITS

Exhibit A –  Deposition of Philip McCarthey – April 26, 2006 (pages cited)

Exhibit B -  December 23, 2004 Email from Charles E. Hall Jr.

Exhibit C -  LAM Chase Account Statements Evidencing Account Correction

Exhibit D -  Notice of Claim of Exemption to NFA under Rule 4.7 – March 18, 2002

Exhibit E -  McCarthey Financial Advisor Internet Listing

Exhibit F -  Market Value of Fund Assets Spreadsheet

Exhibit G -  April 8, 2003 Letter from Tim Garret to McCarthey

Exhibit H -  Excerpts of Telephone Records from Shah and LAM to McCarthey, Eggers and Brashear

Exhibit I -  LAM Futures and Options Positions – Dec. 31, 2002 to Jan. 30, 2003

Exhibit J -  Deposition of Phillip Egger – November 7, 2006 (pages cited)

Exhibit K -  April 30, 2002 Milbank Tweed Wire Transfer

Exhibit L -  August 15, 2002 Email from Egger to Shah

Exhibit M -  Citco Report from March 1, 2002 to August 31, 2002

Exhibit N -  McCarthey K1 Tax Information for December 31, 2002

Exhibit O -  May 17, 2004 from Brashear to Shah

Exhibit P -  LAM $500,000 Transfer Documents

**Exhibit A**

1

2 UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

3 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

COMMODITY FUTURES TRADING COMMISSION,

4

Plaintiff,

5

- against -          Index No.

6                    05 CV 8091

7 ABBAS A. SHAH and

LINUXOR ASSET MANAGEMENT, LLC,

8

Defendants.

9 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

10                   140 Broadway

New York, New York

11

April 26, 2006

12                   10:25 a.m.

13

14

15

16

17        DEPOSITION of PHILIP McCARTHEY, the

18   Nonparty Witness herein, taken by

19   Adverse Parties, pursuant to Notice,

20   held at the above-noted time and place

21   before a Notary Public of the State of

22   New York.

23

24

25

ALLIANCE REPORTING SERVICE, INC.  (516) 741-7585

2

1
2    A P P E A R A N C E S :
3    COMMODITY FUTURES TRADING COMMISSION
     DIVISION OF ENFORCEMENT
4         140 Broadway, 19th floor
          New York, New York 10005
5    BY:   DAVID ACEVEDO, ESQ.
          MICHAEL BERLOWITZ, ESQ.
6         JOHN CIPRIANI, INVESTIGATOR
     P.O. No.: 06-82-037
7
8

     HARTMAN & CRAVEN, LLP
9    Attorneys for Defendants
          488 Madison Avenue
10        New York, New York 10022
     BY:   EDWARD A. WHITE, ESQ.
11        COLLEEN DALTON, ESQ.
12
13   PICKARD AND DJINIS, LLP
     Attorneys for Philip McCarthey
14        1990 M Street, N.W.
          Washington, D.C. 20036
15   BY:   PAUL J. BAZIL, ESQ.
16
17
18
19
20
21
22
23
24
25

7

McCarthey

1

2      A     I have a B.A. from Gonzaga
3  University, 1974.

4      Q     Do you have any other degrees or
5  professional licenses that you hold?

6      A     I have a professional designation, a
7  CLU, it's a charter life underwriter, which I
8  believe I received in either 1990 or 1991.

9      Q     What is a charter life underwriter?

10      A     A specific degree to the life
11  insurance industry.  It's a series of ten courses
12  which I had to pass.

13      Q     Does that allow you to do anything in
14  particular?

15      A     It's more of a professional
16  designation.  It allows you to belong to a
17  professional organization, and it just
18  traditionally sets you apart from others in the
19  insurance industry.

20      Q     Are you presently in the insurance
21  business as well?

22      A     I am sort of part time.  I am kind of
23  semi-retired.

24      Q     I would like to draw your attention,
25  Mr. McCarthey, to the fall of 2001.  Were you in

9

McCarthey

1

2  Tydus Richards.

3          MR. ACEVEDO:  That's E-G-G-E-R,

4          T-Y-D-U-S, and Richards is as it

5          sounds.

6          Q    Prior to coming to New York, did you

7  know you were going to meet with Mr. Shah?

8          A    I knew I was going to meet with

9  several people.  I am sure Mr. Shah was one of

10  several people I was going to meet with.

11          Q    You mentioned Mr. Egger.  Who is or

12  who was Mr. Egger?

13          A    Phil Egger had an older brother who

14  had gone to school with my older brother, so I

15  had known of Phil Egger or the Egger family for

16  many years.

17          Q    And what if any role did Mr. Egger

18  play in your meeting with these investment

19  managers?

20          A    I believe Mr. Egger had set up

21  several of those meetings.

22          Q    Was Mr. Egger employed by you at that

23  time?

24          A    No, he was not employed by me at that

25  time, nor at any time.

McCarthey

1

2       Q     You used the word cambio.  Is that

3   C-A-M-B-I-O?

4       A     Yes.  That's an Italian word for one

5   of those places where you can go and change

6   money.

7       Q     You would exchange one currency for

8   another?

9       A     Yes.  This was before the euro.

10      Q     What other discussions, if any, did

11  you have with Mr. Shah that evening about the

12  Linuxor fund?

13      A     Well, I was interested because here

14  was a man who seemed sincere, who seemed to have

15  a proper background, who seemed interested in --

16  I was very clear that I was not interested in

17  gambling a lot of money.  So obviously, if there

18  is an opportunity to make a high return there

19  must be some kind of high risk, and I said I am

20  very, very uncomfortable with this huge risk.  If

21  there is something in the neighborhood of a 15

22  percent downside risk I said certainly I would be

23  willing to take a look at that, but I'm not here

24  to gamble money.

25      Q     You used the word "sincere."  Please

20

McCarthey

1

2  be more specific.  What do you mean when you say

3  that Mr. Shah appeared sincere?

4      A      After he returned to the table we had

5  the opportunity to kind of talk, and so I was

6  able to ask him some questions and say if the

7  other gentlemen at the table had something else

8  to say they are welcome to, but I wanted to ask

9  him some questions and find out a little bit

10  about his background, why he thought he can do

11  some of the things he said he could do, what his

12  strategies had been, where he had been, where he

13  was going, et cetera, but also to be very clear,

14  that while I was interested in this, we had to

15  have some kind of protection so to speak.  We

16  couldn't just take and throw money away.

17      Q      Did he answer your questions to your

18  satisfaction?

19      A      Yes.

20      Q      And you just used the word

21  "protection."  Can you be more specific.  What

22  specifically did you say to Mr. Shah about

23  protection, or at least what were you referring

24  to?

25      A      The family had a very concentrated

ALLIANCE REPORTING SERVICE, INC.  (516) 741-7585

26

1                        McCarthey.

2        Q      So you made a decision some time

3  after the dinner; is that correct?

4        A      Yes.

5        Q      Did Mr. Shah ask you at the dinner

6  whether you would or would not be investing with

7  his fund?

8        A      He did.

9        Q      What did he say?

10       A      "Would you be doing this? Are you

11  interested in this?"

12              And I said, "I try to be

13  noncommittal," and I said, "I would be very

14  interested in at least pursuing this, so give me

15  some time to chomp on that and I will give you an

16  answer."

17       Q      There came a time in which on behalf

18  of McCarthey Investments you invested some money

19  with the Linuxor fund; is that correct?

20       A      That's correct.

21       Q      Would that have been in 2002?

22       A      Yes.

23       Q      Do you remember about what time that

24  was, when in '02?

25       A      I authorized one of the Grantor

27

McCarthey

Retained Annuity Trusts that had some cash in there to make an investment, I believe it was in March of 2002, and then about two months later -- and that would have been about a million and a half dollars.

Q    Is it correct to refer to that as a trust?

A    Yes.

Q    So which trust was that?

A    It was the Grantor Retained Annuity Trust No. 5.

Q    Did it have some other name other than GRAT No. 5?

A    GRAT No. 5 existed then.  So what happened after that is we created this McCarthey Investments as an investment vehicle for the other GRATS, because what I was going to find then is I would have had to have made say eight different investments.  We would have had eight different reporting forms, and our CFO and I decided that was really going to be quite cumbersome, so we created McCarthey Investments to do the investing for these GRATS, these Grant Retained Annuity Trusts.

28

McCarthey

1

2     Q    By the way, let me just step back a

3  little bit.  At the time that you decided you

4  wanted to invest some of the McCarthey money into

5  the Linuxor fund, did you decide then how much

6  that would be?

7     A    Yes.

8     Q    What was the figure that you thought?

9     A    It was $10 million.

10    Q    After March, '02, did you commit some

11  more, did you invest more money with the Linuxor

12  fund?

13    A    We did.

14    Q    And when and how much?

15    A    I believe in early May I had

16  McCarthey Investments make another investment in

17  Linuxor of $5 million, and I believe at the same

18  time one of our other entities, JFM Holdings,

19  would have made an investment of $5 million,

20  also.

21    Q    Why the wait between March when there

22  was a figure of one and a half million dollars

23  invested to May when an additional $10 million

24  was invested?

25    A    The additional $10 million would have

ALLIANCE REPORTING SERVICE, INC.  (516) 741-7585

72

McCarthey

1

2    Q    Can, you said can get you?

3    A    Can get you, yes.

4    MR. BAZIL:  Would be able to.

5    THE WITNESS:  Would be able to.

6    Q    Did you instruct him thereafter, that

7    is Mr. Shah, to wire $500,000 to an account?

8    A    No.  Mr. Brashear and I then made the

9    decision that that legal bill, why don't we put

10   that off for a few days since we didn't have to

11   pay it right that day.  So we did not follow up

12   and give Mr. Shah all the wire instructions.

13   Q    So at some point thereafter did you

14   provide Mr. Shah with a notice that you wanted to

15   liquidate the McCarthey investments in the

16   Linuxor fund?

17   A    I did it by phone, I believe I also

18   did it by e-mail.

19   Q    At some appointment thereafter were

20   you able to liquidate?

21   A    Yes.

22   Q    And was that in June, '04, was it

23   some time shortly thereafter, if you recall?

24   A    It was shortly after June of '04.

25   Q    And how much money was returned to

1                          McCarthey

2    you from the Linuxor fund?

3         A      Approximately $4 million.

4         Q      That was from your initial $11.5

5    million investment back in '02?

6         A      That is correct.

7         Q      How did you know, Mr. McCarthey, that

8    that's what the McCarthey entities were entitled

9    to get back?  That is, how did you know you were

10   entitled to get back $4 million and not some

11   other figure?

12        A      I didn't.

13        Q      And why not?

14        A      I requested from Mr. Shah, I said, "I

15   was told it was between 9 and $9.5 million, and I

16   would like all of that, please."  And some time

17   in early July then what I got was $4 million.

18        Q      How did you know that when you spoke

19   to Mr. Shah that what he was telling you was

20   accurate, that is, that you were entitled to

21   receive 9 or $9.5 million then?

22        A      I put it in an e-mail and I asked him

23   on the phone, and that's what he told me.

24        Q      Aside from him telling you that

25   that's what it was worth, were you able to

**Exhibit B**

**Michael Paradise**

| | |
|---|---|
| **From:** | Charles E. Hall Jr. [charleshall@cehalljr.com] |
| **Sent:** | Thursday, December 23, 2004 1:19 PM |
| **To:** | 'Thomas Yee' |
| **Subject:** | RE: The Request |

Thomas,

It was my understanding that Linuxor Capital Management was acting as the General Partner to the Linuxor Global Macro Fund and that Linuxor Asset Management was acting as the investment adviser to the Fund.  That is all that I know about this issue.

> -----Original Message-----
> **From:** Thomas Yee [mailto:thomas.yee@sbcglobal.net]
> **Sent:** Wednesday, December 22, 2004 3:01 PM
> **To:** charleshall@cehalljr.com
> **Subject:** The Request
>
> December 22, 2004
>
>
> Hello Charles,
>
>    I was wondering whether you could write the note today regarding the Linuxor issue - I know this request has been difficult to ask from you.  I wouldn't be bothering you if I thought the request was an overly difficult task.  Couldn't you find a few minutes from your busy schedule to write a few words addressing the inadvertent typo. error with the Linuxor docs?
>
>    If you can't do this, nevertheless I wish you a very Merry Christmas and a Happy New Year. And again, I apologize to you for this request.
>
> Thomas

12/23/2004

**Exhibit C**

October 25 - November 26, 2003
**Page 1 of 4**

217-00217-B017-00217-      -023-5-01-5 B - Y -

LINUXOR ASSET MANAGEMENT LLC
230 PARK AVE
10TH FL SUITE 139
NEW YORK NY  10169

]I01690005990]

**Customer Service**
Call Small Business ServiceLine at 1-800-CHASE38
- Small Business Experts - 6 a.m. to midnight ET
- Updated Account Information
- Transfer Funds/Pay Bills
- Hearing impaired call 1-800-CHASETD

Access Accounts, Make Payments, Transfer Money
Chase Online ᵗfor Small Business
www.chase.com/cosb

Primary Account Number:    217-5026247-65
Number of Checks Enclosed: 7

## Important Information

Your combined Business Banking balances in October totaled $433,905.61. You will earn Premium Rates on linked Business Money Market Accounts in November because you met the balance requirement.

## Business Checking                Account # 217-5026247-65                Linuxor Asset Management LLC

| Summary | Number | Amount |
|---|---|---|
| Opening Balance | | 1,013,183.72 |
| Deposits and Credits | 1 | 1,000,000.00 |
| Withdrawals and Debits | 0 | 0.00 |
| Checks Paid | 7 | 7,147.59 |
| **Ending Balance** | | **2,006,036.13** |

### Deposits and Credits

| Date | Description | Amount |
|---|---|---|
| 10/29 | Incoming Funds Transfer B/O: James Temple L | 1,000,000.00 |
| | **Total** | **1,000,000.00** |

### Checks Paid

| Check | Date Paid | Amount | Check | Date Paid | Amount | Check | Date Paid | Amount |
|---|---|---|---|---|---|---|---|---|
| 1111 | 10/27 | 1,000.00 | 1120 | 10/30 | 1,147.59 | 1123 | 11/24 | 1,000.00 |
| 1118* | 10/27 | 1,000.00 | 1121 | 11/12 | 1,000.00 | | | |
| 1119 | 11/24 | 1,000.00 | 1122 | 11/18 | 1,000.00 | | | |

*indicates gap in check sequence                                **Total (7 checks)**    **7,147.59**

### Daily Balances

| Date | Balance | Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|---|---|
| 10/27 | 1,011,183.72 | 10/30 | 2,010,036.13 | 11/18 | 2,008,036.13 | | |
| 10/29 | 2,011,183.72 | 11/12 | 2,009,036.13 | 11/24 | 2,006,036.13 | | |

**THE SMALL BUSINESS TEAM AT CHASE** ˢᵐ

217-00217-B017-00217-     -023-5-01-5 B -  Y -

| Business Checking | Account # 217-5026247-65 | Linuxor Asset Management LLC |
|---|---|---|

(continued)

## Analysis Fee Explanation

Your account was not charged an analysis fee based on your activity and balances during the period 10/01 - 10/31.  Below is a summary of your activity in the following account(s):
217-5026247-65

Because your combined Business Banking balances exceeded $5,000.00 for the period 10/01 - 10/31, your Business Checking balances received an earnings credit which exceeded your charges.

Services Eligible to be Offset By Earnings Credit

| Service | Volume | Price/Unit | Total | Service | Volume | Price/Unit | Total |
|---|---|---|---|---|---|---|---|
| Incmng Fnd Trnsf | 3 | $ 15.00 | 45.00 | Check Paid | 12 | $ 0.20 | 2.40 |
| Chase Chk Cashed | 1 | $ 3.00 | 3.00 | | | | |

| | |
|---|---|
| Total Itemized Service Charges | 50.40 |
| **Total Charges Offset By Earnings Credit** | **50.40** |

## THIS ENDS YOUR STATEMENT FINANCIAL DATA

Personal accounts are subject to the Deposit Accounts Agreement and Disclosures.  Business Accounts are subject to the Terms and Conditions for Business Accounts and Services.  Please note the rules regarding the time within which you must notify JPMorgan Chase Bank (the "Bank") of any error or discrepancies. Call us at the phone number printed on the front of this statement, or write to us at:  P.O. Box 5206, New Hyde Park, NY 11042. In Texas, write to us at:  JPMorgan Chase Bank, P.O. Box 1231, Houston, Texas 77251-1231.

International Financial Services customers, please write to us at CIFS, P.O. Box 79779, Houston, TX 77224-9779.

Accounts held at the Bank, including checking, savings, CD, and money market accounts are FDIC insured. Call us for full details and limitations of FDIC coverage.

EQUAL HOUSING
**LENDER**

**THE SMALL BUSINESS TEAM AT CHASE** sm

October 25 - November 26, 2003
**Page 3 of 4**

217-00217-B017-00217-     -023-5-01-5 B - Y -

Primary Account Number:     217-5026247-65

**How to Balance Your Checkbook**

**Items Outstanding** (checks and withdrawals not yet shown on your statement)

| Number or Date | Amount | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **TOTAL** | | |

**1. Update your checkbook.**

A. Record in your checkbook register all automatic transactions listed in your statement that you have not previously entered, including:

+ any interest earned
+ automatic deposits
- service charges
- automatic payments

B. Enter in your checkbook register any other transactions listed in your statement that you did not record, including:

+ deposits
- checks paid
- ATM withdrawals
- phone transfers and payments

**2. Adjust your statement balance.**

A. ENTER your checking account closing balance shown on the front of this statement.

B. ADD any deposits not yet shown on your statement.   **+**

C. TOTAL (A and B above).

D. SUBTRACT total items outstanding (from chart at left).   **—**

E. BALANCE (should equal your checkbook balance).

If you have any questions about your accounts, call the customer service number on the front of your statement.

**Want to see your checking account statement sooner?**                    Linuxor Asset Management LLC

Now you can with Chase Online(sm) for Small Business.  Statements are available online 2 days after your statement cycle ends.  Simply logon at www.chase.com/smallbusiness and click  "View Statement" from the Account Detail page.

Not enrolled in Chase Online for Small Business? Visit www.chase.com/getstarted

**T H E  S M A L L  B U S I N E S S  T E A M  A T  C H A S E** ℠

217-00217-B017-00217-      -023-5-01-5 B -  Y -

Primary Account Number:      217-5026247-65

---

### Call 1-800-CHASE38 for all your business service needs.

The Small Business ServiceLine[sm] connects you directly to our team of Small Business experts.

- Check balances, verify deposits, stop payments
- Transfer funds between linked accounts
- Order checks and deposit slips
- Obtain copies of statements and checks

---

# CHASE

217-00217-B017-00217-    -023-5-01-5 B - Y -

LINUXOR ASSET MANAGEMENT LLC
20 EXCHANGE PLACE
45TH FLOOR
NEW YORK NY  10005

**Customer Service**
Call Small Business ServiceLine at 1-800-CHASE38
• Small Business Experts - 6 a.m. to midnight ET
• Updated Account Information
• Transfer Funds/Pay Bills
• Hearing impaired call 1-800-CHASETD

Access Accounts, Make Payments, Transfer Money
Chase Online[SM] for Small Business
www.chase.com/cosb

Primary Account Number:  217-5026247-65
Number of Checks Enclosed: 4

## Important Information

Your combined Business Banking balances in November totaled $2,008,502.66. You will earn Premium Rates on linked Business Money Market Accounts in December because you met the balance requirement.

## Business Checking        Account # 217-5026247-65        Linuxor Asset Management LLC

| Summary | Number | Amount |
|---|---|---|
| Opening Balance | | 2,006,036.13 |
| Deposits and Credits | 0 | 0.00 |
| Withdrawals and Debits | 1 | 2,000,000.00 |
| Checks Paid | 4 | 5,000.00 |
| **Ending Balance** | | **1,036.13** |

### Withdrawals and Debits

| Date | Description | Amount |
|---|---|---|
| 12/01 | Funds Transfer (Domestic) A/C: Man Financial Cust Segregated | 2,000,000.00 |
| | Total | 2,000,000.00 |

### Checks Paid

| Check | Date Paid | Amount | Check | Date Paid | Amount | Check | Date Paid | Amount |
|---|---|---|---|---|---|---|---|---|
| 1124 | 12/09 | 1,000.00 | 1126 | 12/11 | 1,000.00 | | | |
| 1125 | 12/08 | 1,000.00 | 1127 | 12/23 | 2,000.00 | | | |

* indicates gap in check sequence        **Total (4 checks)        5,000.00**

### Daily Balances

| Date | Balance | Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|---|---|
| 12/01 | 6,036.13 | 12/09 | 4,036.13 | 12/23 | 1,036.13 | | |
| 12/08 | 5,036.13 | 12/11 | 3,036.13 | | | | |

### Analysis Fee Explanation

Your account was not charged an analysis fee based on your activity and balances during the period 11/01 - 11/30.  Below is a summary of your activity in the following account(s):
217-5026247-65

Because your combined Business Banking balances exceeded $5,000.00 for the period 11/01 - 11/30, your Business Checking balances received an earnings credit which exceeded your charges.

THE SMALL BUSINESS TEAM AT CHASE[sm]

November 27 - December 23, 20C3
**Page 2 of 3**

217-00217-B017-00217-      -023-5-01-5 B - Y -

Primary Account Number: 217-5026247-65

**Business Checking**
(continued)      Account # 217-5026247-65      Linuxor Asset Management LLC

### Services Eligible to be Offset By Earnings Credit

| Service | Volume | Price/Unit | Total | Service | Volume | Price/Unit | Total |
|---------|--------|-----------|-------|---------|--------|-----------|-------|
| Check Paid | 4 | $ 0.20 | 0.80 | | | | |

| | |
|---|---|
| Total Itemized Service Charges | 0.80 |
| **Total Charges Offset By Earnings Credit** | **0.80** |

## THIS ENDS YOUR STATEMENT FINANCIAL DATA

Personal accounts are subject to the Deposit Accounts Agreement and Disclosures. Business Accounts are subject to the Terms and Conditions for Business Accounts and Services. Please note the rules regarding the time within which you must notify JPMorgan Chase Bank (the "Bank") of any error or discrepancies. Call us at the phone number printed on the front of this statement, or write to us at: P.O. Box 5206, New Hyde Park, NY 11042.
In Texas, write to us at: JPMorgan Chase Bank, P.O. Box 1231, Houston, Texas 77251-1231.

International Financial Services customers, please write to us at CIFS, P.O. Box 79779, Houston, TX 77224-9779.

Accounts held at the Bank, including checking, savings, CD, and money market accounts are FDIC insured.
Call us for full details and limitations of FDIC coverage.

**EQUAL HOUSING
LENDER**

**How to Balance Your Checkbook**

**Items Outstanding** (checks and withdrawals not yet shown on your statement)

| Number or Date | Amount | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **TOTAL** | | |

**1. Update your checkbook.**

     A. Record in your checkbook register all automatic transactions listed in your statement that you have not previously entered, including:

         + any interest earned
         + automatic deposits
         - service charges
         - automatic payments

     B. Enter in your checkbook register any other transactions listed in your statement that you did not record, including:

         + deposits
         - checks paid
         - ATM withdrawals
         - phone transfers and payments

**2. Adjust your statement balance.**

     A. ENTER your checking account closing balance shown on the front of this statement.

     B. ADD any deposits not yet shown on your statement.   **+**

     C. TOTAL (A and B above).

     D. SUBTRACT total items outstanding (from chart at left).   **—**

     E. BALANCE (should equal your checkbook balance).

If you have any questions about your accounts, call the customer service number on the front of your statement.

**THE SMALL BUSINESS TEAM AT CHASE** sm

November 27 - December 23, 2003
**Page 2 of 3**

217-00217-B017-00217-        -023-5-01-5 B - Y -

Primary Account Number:  217-5026247-65

| **Business Checking** (continued) | Account # 217-5026247-65 | Linuxor Asset Management LLC |
| --- | --- | --- |

### Services Eligible to be Offset By Earnings Credit

| Service | Volume | Price/Unit | Total | Service | Volume | Price/Unit | Total |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Check Paid | 4 | $ 0.20 | 0.80 | | | | |

| | |
| --- | --- |
| **Total Itemized Service Charges** | 0.80 |
| **Total Charges Offset By Earnings Credit** | 0.80 |

## THIS ENDS YOUR STATEMENT FINANCIAL DATA

Personal accounts are subject to the Deposit Accounts Agreement and Disclosures.  Business Accounts are subject to the Terms and Conditions for Business Accounts and Services.  Please note the rules regarding the time within which you must notify JPMorgan Chase Bank (the "Bank") of any error or discrepancies. Call us at the phone number printed on the front of this statement, or write to us at:  P.O. Box 5206, New Hyde Park, NY 11042.
In Texas, write to us at:  JPMorgan Chase Bank, P.O. Box 1231, Houston, Texas 77251-1231.

International Financial Services customers, please write to us at CIFS, P.O. Box 79779, Houston, TX 77224-9779.

Accounts held at the Bank, including checking, savings, CD, and money market accounts are FDIC insured.
Call us for full details and limitations of FDIC coverage.

**EQUAL HOUSING LENDER**

### How to Balance Your Checkbook

**Items Outstanding** (checks and withdrawals not yet shown on your statement)

| Number or Date | Amount |
| --- | --- |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL** | |

**1. Update your checkbook.**

   A. Record in your checkbook register all automatic transactions listed in your statement that you have not previously entered, including:

      + any interest earned
      + automatic deposits
      - service charges
      - automatic payments

   B. Enter in your checkbook register any other transactions listed in your statement  that you did not record, including:

      + deposits
      - checks paid
      - ATM withdrawals
      - phone transfers and payments

**2. Adjust your statement balance.**

   A. ENTER your checking account closing balance shown on the front of this statement.

   B. ADD any deposits not yet shown on your statement.

   +

   C. TOTAL (A and B above).

   D. SUBTRACT total items outstanding (from chart at left).

   —

   E. BALANCE (should equal your checkbook balance).

If you have any questions about your accounts, call the customer service number on the front of your statement.

November 27 - December 23, 2003
**Page 3 of 3**

217-00217-B017-00217-          -023-5-01-5 B - Y -

Primary Account Number:  217-5026247-65

**Give Your Business A Boost!**                                      Linuxor Asset Management LLC

Apply for a Business Installment Loan today. It's a fixed loan  with flexible repayment
terms. Use it to expand the workplace,  redecorate the office or buy new equipment.
Call 1-800-CHASE24 and select option 4 to apply.

### Call 1-800-CHASE38 for all your business service needs.

The Small Business ServiceLine[sm] connects you directly to our team of Small Business experts.

- Check balances, verify deposits, stop payments
- Transfer funds between linked accounts
- Order checks and deposit slips
- Obtain copies of statements and checks

**THE SMALL BUSINESS TEAM AT CHASE**[sm]

# CHASE

May 26 - June 23, 2004
Page 1 of 2

217-00217-B017-00217-    -023-5-03-W B -2 00-
001470

LINUXOR GLOBAL MACRO FUND LP
20 EXCHANGE PLACE 45TH FL
NEW YORK NY  10005

**Customer Service**
Call Small Business ServiceLine at 1-800-CHASE38
• Small Business Experts - 6 a.m. to midnight ET
• Updated Account Information
• Transfer Funds/Pay Bills
• Hearing impaired call 1-800-CHASETD

Access Accounts, Make Payments, Transfer **Money**
Chase Online℠ for Small Business
www.chase.com/cosb

Primary Account Number:  217-5038467-65
Number of Checks Enclosed: 0

## OVERVIEW

**Deposit Accounts - JPMorgan Chase Bank ("Bank")**

| Checking | Opening Balance | Total Credits | Total Debits | Ending Balance |
|---|---|---|---|---|
| BusinessCustom Checking 217-5038467-65 | 500,500.00 | 5,144.63 | 0.00 | 505,644.63 |
| Business Money Market Account 217-5038467-66 | 0.01 | 0.00 | 0.00 | 0.01 |
| **Total** | **500,500.01** | **5,144.63** | **0.00** | **505,644.64** |

### THIS ENDS YOUR STATEMENT OVERVIEW

**Important Information**

Your average checking account balance(s) in May totaled $468,881.33.

**BusinessCustom Checking**          Account # 217-5038467-65          LINUXOR GLOBAL MACRO FUND LP

| Summary | Number | Amount |
|---|---|---|
| Opening Balance | | 500,500.00 |
| Deposits and Credits | 1 | 5,144.63 |
| Withdrawals and Debits | 0 | 0.00 |
| Checks Paid | 0 | 0.00 |
| **Ending Balance** | | **505,644.63** |

**Deposits and Credits**

| Date | Description | Amount |
|---|---|---|
| 05/27 | Bank Miscellaneous Credit | 5,144.63 |
| | **Total** | **5,144.63** |

**Daily Balances**

| Date | Balance | Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|---|---|
| 05/27 | 505,644.63 | | | | | | |

3/4

THE SMALL BUSINESS TEAM AT CHASE℠

# CHASE

May 26 - June 23, 2004
**Page 2 of 2**

Primary Account Number:  217-5038467-65

217-00217-B017-00217-        -023-5-03-W B -2 00-

| **BusinessCustom Checking** (continued) | Account # 217-5038467-65 | LINUXOR GLOBAL MACRO FUND LP |

## Service Fee Explanation

All service fees were waived on your account this month.

| **Business Money Market Account** | Account # 217-5038467-68 | LINUXOR GLOBAL MACRO FUND LP |

| Summary | Number | Amount |
|---|---|---|
| Opening Balance | | 0.01 |
| Deposits and Credits | 0 | 0.00 |
| Withdrawals and Debits | 0 | 0.00 |
| Checks Paid | 0 | 0.00 |
| **Ending Balance** | | 0.01 |

### THIS ENDS YOUR STATEMENT FINANCIAL DATA

Personal accounts are subject to the Deposit Accounts Agreement and Disclosures.  Business Accounts are subject to the Terms and Conditions for Business Accounts and Services.  Please note the rules regarding the time within which you must notify JPMorgan Chase Bank (the "Bank") of any error or discrepancies. Call us at the phone number printed on the front of this statement, or write to us at:  P.O. Box 5206, New Hyde Park, NY 11042.
In Texas, write to us at:  JPMorgan Chase Bank, P.O. Box 1231, Houston, Texas 77251-1231.

International Financial Services customers, please write to us at CIFS, P.O. Box 79779, Houston, TX 77224-9779.

Accounts held at the Bank, including checking, savings, CD, and money market accounts are FDIC insured.
Call us for full details and limitations of FDIC coverage.

EQUAL HOUSING
**LENDER**

| **Save With Your Chase Business Banking Card** | LINUXOR GLOBAL MACRO FUND LP |

As a small business owner, you're always looking for ways to get more  value for your dollar. That's why we're pleased to offer you special  merchant discounts when you use your Chase Business Banking Card. Just go to www.chase.com/smallbizsavings for a list of participating merchants. Don't have a Business Banking card? Call 1-800CHASE38 to apply.

4/4

---

**THE SMALL BUSINESS TEAM AT CHASE** sm

**Exhibit D**

# L I N U X O R
## Asset Management LLC

## NOTICE OF CLAIM FOR EXEMPTION

March 18, 2002

National Futures Association
200 West Madison Street
Chicago, Ill 60606
Attn: Director of Compliance, Compliance Department

**Re:    Linuxor Global Macro Fund, L.P.**
**Linuxor Global Macro Fund, Ltd.**

      This Notice of Claim for Exemption ("Notice") under Rule 4.7 of the Commodity Exchange Act (the "Act"), is made by Linuxor Asset Management LLC ("Linuxor"), a Delaware limited liability company, on behalf of Linuxor Global Macro Fund, L.P., a Delaware limited partnership, and Linuxor Global Macro Fund, Ltd., a Cayman Islands exempted company (collectively, the "Commodity Pools"). Our main business address is 90 Williams Street, Suite 1201, New York, NY 10038, our main business telephone number is 212-324-3290, and our National Futures Association commodity pool identification number is 0314145. Participation units in the Commodity Pools will be offered on a continuing basis. We are enclosing duplicate filings of this letter pursuant to Rule 4.7.

      Linuxor certifies that neither Linuxor nor any of its principals is subject to any statutory disqualification under Section 8(a)(2) or Section 8(a)(3) of the Act. Further, Linuxor certifies that the Commodity Pools will offer and sell participation units solely to qualified eligible persons in an offering that complies with Section 4(2) of the Securities Act of 1933, as amended, and the regulations and rules thereunder, and that it will comply with the applicable requirements of Section 4.7 under the Act and that the Commodity Pools will be offered and operated in compliance with the applicable requirements of

      Section 4.7. In connection with these undertakings, Linuxor claims relief with respect to the Commodity Pools from (i) the Act's disclosure requirements as set forth in Sections 4.21, 4.24, 4.25 and 4.26; (ii) the Act's disclosure requirements with respect to past performance; (iii) the Act's periodic reporting requirements as set forth in Sections 4.22(a) and (b); (iv) the Act's annual report requirements as set forth in Sections 4.22(c) and (d); and, the Act's record keeping requirements as set forth in Section 4.23.

If you have any questions, please do not hesitate to contact me at the number listed above.

Sincerely yours,

Abbas Shah
Managing Member of Linuxor Asset Management LLC

# LINUXOR
## Asset Management LLC

February 13, 2002

National Futures Association
Attn: Director of Compliance, Compliance Department
200 West Madison Street
Suite 1600
Chicago, Illinois 60606-3447

Dear Sir or Madam:

Pursuant to Advisory Number 18-96 ("Offshore Commodity Pools Relied for Certain Registered CPOs"), Linuxor Asset Management LLC is filing a claim for exemption from the disclosure, reporting and record keeping requirements of Rules 4.21, 4.22 and 4.23(a)(10) and (a)(11), respectively. Below is the required information as outlined in the above noted Advisory:

**Requirement 1:**

| | |
|---|---|
| Name of CPO: | Linuxor Asset Management LLC |
| Address: | 90 Williams Street, Suite 1201<br>New York, NY 10038 |
| Contact: | Mr. Adam Bornstein |
| Telephone number: | 1-212-324-3290 |
| NFA Identification Number: | 0314145 |

**Requirement 2:**

| | |
|---|---|
| Name of CP: | Linuxor Global Macro Fund Ltd. |

**Requirement 3:**

This letter confirms neither the CPO nor any of its principals is subject to any statutory disqualification under Section 8a(2) or 8a(3) of the Act unless such disqualification arises from a matter which (a) was previously disclosed in connection with a previous application for registration if such registration was granted, or (b) was disclosed to the Commission or the NFA more than thirty days prior to the filing of this notice.

**Requirement 4:**

I. The rules from which Linuxor Asset Management LLC seeks relief for Certain Registered CPOs from Disclosure, Reporting and Certain Record keeping Requirements in Connection with the Operation of Offshore Commodity Pools. Linuxor Asset Management LLC operates an offshore commodity pool and seeks to claim relief from the disclosure, reporting and record keeping requirements of Rules 4.21, 4.22 and 4.23(a)(10) and (a)(11), respectively.

03 02

**II.**  Pursuant to Section B of the Advisory Number 18-96, Linuxor Asset Management LLC will make the following representations:

(a)  The CPO will maintain the original books and records of the commodity pool at the main office of the commodity pool located outside the United States;

(b)  The CPO desires to maintain such books and records outside the United States in furtherance of compliance with Internal Revenue Service ("IRS") requirements for relief from United States federal income taxation;

(c)  The CPO will maintain duplicate books and records of the commodity pool at a designated office in the United States

(d)  Within 72 hours after the request of a representative from the Commission, the United States Department of Justice or the National Futures Association ("NFA"), the original books and records will be provided to such representative at a place located in the United States that is specified by the representative.

**III.**  Linuxor Asset Management LLC's offshore fund administrator, Citco Fund Services (Bermuda) Limited, will have custody of the pool's original books and records.

Name:              Citco Fund Services (Bermuda) Limited

Address:           Wessex House, 45 Reid Street
                   Hamilton HM 12, Bermuda

Contact:           Mr. Ian Pilgrim

Telephone:         441-295-7149


Should you require any additional specific information please contact Mr. Adam Bornstein at either 1-212-324-3290 or adam@japaninsider.com.

Thanks and regards,

Mr. Abbas Shah
CEO and General Principal



NATIONAL
FUTURES
ASSOCIATION

## 0314145: LINUXOR ASSET MANAGEMENT LLC
### QCPO QUESTIONNAIRE RESULTS SECTION

# Online Questionnaire

Please carefully review the information below for accuracy. When you are done please click the 'Finished' button at the bottom right of the screen and the questionnaire will be filed with NFA. If corrections are still needed please click the 'Edit Filing' button at the bottom left corner of the page.

**NFA ID: 0314145    0314145: LINUXOR ASSET MANAGEMENT LLC**

**FIRM INFORMATION:**

Identify which of the following types of promotional material, if any are used by your firm:

| TV or Radio Advertisements | No |
| Printed marketing materials(excluding exchange prepared materials and newspaper reprints) | No |
| E-mail & correspondence | Yes |

**POOL INFORMATION:**

| P010826 | LINUXOR GLOBAL MACRO FUND LP | UPDATE |
| Fiscal Year End | | 12 / 31 |
| Has the CPO received customer funds for investment in this commodity pool? | | Yes |
| Has the pool commenced trading? | | Yes |

0310.9

Is the pool operating pursuant to the following exemptions?

| 4.7 | Yes |
| 4.12 | Yes |
| 18-96 | Yes |

Enter your most recent Disclosure Document date. — 3/25/2002
Documents for exempt pools that have not been submitted to NFA should not be included.

Does this pool trade off-exchange foreign currency products? — Yes

Does this pool trade Security Futures Products? — Yes

Ceased Operations Date
If answer differs from current information please explain:

| P010827 | LINUXOR GLOBAL MACRO FUND LTD | UPDATE |

Fiscal Year End — 12 / 31

Has the CPO received customer funds for investment in this commodity pool? — Yes

Has the pool commenced trading? — Yes

Is the pool operating pursuant to the following exemptions?

| 4.7 | Yes |
| 4.12 | Yes |
| 18-96 | Yes |

Enter your most recent Disclosure Document date.

Documents for exempt pools that have not been
submitted to NFA should not be included.

Does this pool trade off-exchange foreign currency
products?

Yes

Does this pool trade Security Futures Products?

Yes

Ceased Operations Date
if answer differs from current information please explain:

**PREPARER INFORMATION:**

**0314145: LINUXOR ASSET MANAGEMENT LLC**
na

**Abbas Shah**
**Managing Principal**
**ashah13@bloomberg.net**
**212 269 1890**

Edit Filing

Finished

© 2003 National Futures Association

# L I N U X O R
## Asset Management LLC

TO:        BRENT

FROM:      ADAM BORNSTEIN

DATE:      March 18, 2002

NOTICE OF CLAIM FOR EXEMPTION

**Exhibit E**

# Philip George McCarthey, CLU

Philip George McCarthey, CLU

610 East South Temple Ste. #200
Salt Lake City, UT 84102

Phone: (801) 363-6572

**Note:** If you call Philip George
McCarthey, please mention this website
- **www.financial-advisors.in**.
Thank you!

Web: N/A

Contact Philip George McCarthey, CLU

**Exhibit F**

**MARKET VALUE OF FUND ASSETS**

**Summary Exhibit 1**

| DATES | MAN FINANCIAL (SECURITIES) 5149-4696 | MAN FINANCIAL (FUTURES) 6565240 | ABN AMRO (SECURITIES) 483-81149 | ABN AMRO (FUTURES) CT 22555 | ABN AMRO (COLLATERAL) WEXFORD LRS-950373 | WEXFORD LRS-950024 | JP MORGAN CHASE 301-1120756-65 | JP MORGAN CHASE 217-503946?-65 | LCM JP MORGAN CHASE 217-503147-65 | LCM JP MORGAN CHASE 217-502623-65 | LAM JP MORGAN CHASE 502-6247-65 | MARKET VALUE OF FUND ASSETS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/19/2002 | 374.864 | 8,565.000 | | | | | | | | | 190 | 1,908,400 |
| 3/31/2002 | 225.987 | 1,500.000 | | | | | | | | | 801 | 1,395,610 |
| 4/18/2002 | | 1,024.626 | | | | | | | | | | |
| 4/30/2002 | 189.313 | 1,154.788 | | | | | | | | | 1,380,795 | 1,380,795 |
| 5/31/2002 | | 1,151.593 | | | | | | | | | 1,320,906 | 1,320,906 |
| 5/31/2002 | 157.215 | | 3,617.800 | 3,800.524 | | | | | 0.01 | | | 11,624 |
| 6/30/2002 | 192.700 | 2,820.856 | 2,498.576 | 6,132.654 | 1,191.630 | | | 8,275 | 3,300 | | 10,426 | 11,244 |
| 7/31/2002 | 82.437 | 186 | 1,323.170 | 5,204.140 | 1,249.337 | | 6 | 5,133 | 3,300 | | 11,159 | 10,199,395 |
| 8/31/2002 | 67.060 | 126 | | 3,831.887 | 1,059.257 | | 59,004 | 5,133 | 3,260 | | 11,426 | 10,199,395 |
| 9/30/2002 | 57.730 | 116 | 944.239 | 3,634.085 | 1,236.191 | | 21,266 | 5,140 | 2,678 | | 13,505 | 7,801,563 |
| 10/31/2002 | 56 | | 1,421.460 | 4,462.678 | 0 | | 7,959 | | 2,696 | | 133,356 | 6,105,531 |
| 11/20/2002 | | | 1,341.111 | | | | 59,172 | | 2,640 | | 24,089 | 5,230,790 |
| 12/31/2002 | 78.569 | 4,416.645 | | | | | 172 | | 0 | | 19,651 | 7,077,619 |
| 12/31/2002 | 78.244 | 2,936.806 | 2,793.755 | | | | 172 | | 0 | | 17,124 | 5,919,606 |
| 1/8/2002 | 76.209 | 2,938.397 | 2,790.350 | | 2,643.949 | | 172 | | [-9] | | 37,116 | 5,812,493 |
| 1/31/2003 | 76.288 | 3,032.262 | 2,722.700 | | 2,616.797 | [-300] | | 5,144 | [-9] | | 33,987 | 5,832,403 |
| 2/28/2003 | 76.329 | 2,205.431 | | | 2,925.950 | [-300] | | | [+9] | | 14,388 | 5,825,850 |
| 3/31/2003 | 76.363 | 1,604.162 | | | | [-300] | | | 0 | | 10,388 | |
| 4/30/2003 | 73.599 | 1,568.571 | | | | [-300] | | | | | 7892 | |
| 4/30/2003 | 108.932 | 3,355.577 | | | | | | | | | 4,350,378 | 4,350,376 |
| 5/31/2003 | 52 | 3,712.641 | | | | 2,671.628 | 9,172 | | | | 2,649,710 | 2,649,710 |
| 6/30/2003 | 3208 | 3,860.103 | | | | 7555 | | | | | 134 | |
| 8/22/2003 | 164.469 | 3,989.012 | | | | 10,000 | | | | | 181,162 | 3,451,764 |
| 8/31/2003 | 1,092.335 | 4,891.441 | | | | 0 | | | | | 3,688,162 | 3,688,162 |
| 9/30/2003 | 1,087.523 | 5,767.017 | | | | 0 | | | | | 3,838,624 | 3,838,624 |
| 10/29/2003 | 737.415 | 5,597.027 | | | | 0 | | | | | 13,155 | 5,959,386 |
| 10/31/2003 | 350.321 | 2,546.860 | | | | | | | | | 8,149 | 5,959,386 |
| 11/30/2003 | 347.821 | 2,989.606 | | | | | | | | | 2,011,184 | 13,155 |
| 12/31/2003 | 460 | 4,675.489 | | | | | | | | | 6,660,476 | 8,828,687 |
| 12/31/2003 | 153.794 | 4,487.373 | | | | | | | | | 4,878,818 | 6,660,476 |
| 1/31/2004 | | 3,134.480 | | | | | | | | | 4,998,889 | 4,878,818 |
| 2/26/2004 | 92.291 | 3,742.613 | | | | | | | | | 6699 | 4,998,889 |
| 2/29/2004 | 36.180 | | | | | | | | | | 1038 | 4,983,391 |
| 3/5/2004 | 29.186 | 1,959.970 | | | | | | | | | | |
| 3/31/2004 | 1 | 2,913.544 | | | | | | | | | [-1115] | 3,283,812 |
| 3/31/2004 | 29.186 | 3,879.339 | | | | | | | | | [-1137] | 3,723,347 |
| 4/2/2004 | 0 | 3,922.299 | | | | | | | | | 1807 | 2,027,776 |
| 4/5/2004 | | | | | | | | | | | 1807 | 2,918,243 |
| 4/30/2004 | | 3,390.284 | | | | | | | | | 1807 | 3,879,340 |
| 4/30/2004 | 0 | 5,352.623 | | | | | | | | | 1807 | 3,419,481 |
| 5/17/2004 | | 3,777.945 | | | | | | | | | 1807 | 5,363,393 |
| 5/31/2004 | | 4,127.980 | | | | | | | | | 82,701 | 4,277,559 |
| 6/22/2004 | | 4,418.260 | | | | | 500 | | | | 73,481 | 4,533,994 |
| 6/30/2004 | | 7,970.008 | | | | | 505,645 | | | | 48,754 | 4,923,824 |
| 6/30/2004 | | -3,435.568 | | | | | 505,645 | | | | 34,670 | 3,742,902 |
| 7/30/2004 | | [-750] | | | | | 505,645 | | | | 34,356 | |
| 7/31/2004 | | | | | | | 80,031 | | | | 14,771 | |
| 8/31/2004 | | | | | | | | | | | 12,841 | |
| 9/30/2004 | | | | | | | | | | | 250 | 250 |
| 10/31/2004 | | | | | | | 70,031 | | | | 8814 | 70,031 |
| 11/30/2004 | | | | | | | | | | | 5154 | |
| 12/31/2004 | | | | | | | 43,531 | | | | 23 | 43,531 |
| 2/28/2005 | | | | | | | 31,031 | | | | 4 | 31,031 |
| 2/28/2005 | | | | | | | 15,481 | | | | [-47] | 15,481 |
| 4/20/2005 | | | | | | | 5,354 | | | | [-36] | 5,354 |

**Exhibit G**

# LINUXOR ASSET MANAGEMENT LLC.
### 230 Park Ave. 10th FL, Suite 139
### New York, NY 10169
### (212) 551-3624

April 8, 2003

Mr. McCarthey:

Due to some delays in the auditing process and completion of the K1 financial statements, I am uncertain that it will be completed in a timely manner. In order to avoid any extra costs to yourself, I would like to recommend that you file an extension. If you have any questions in regards to the tax filings, please feel free to contact John Zacharella from Rothstein Kass @ (973) 994-6666 or me @ (212) 551-3624.

Regards,

Tim Garrett

**Exhibit H**

# Individual Charges

www.sprintpcs.com

| Customer | Account Number | Billing Period Ending | Invoice Date | Page |
|---|---|---|---|---|
| ABBAS SHAH | 0069900108-0 | Jun. 23, 2002 | Jun. 25, 2002 | 16 of 18 |

 Individual Charges for **917-749-7106**    (continued)

## Voice Call Detail

| | Date | Time | Phone Number | Call Destination | Rate/Type | Minutes Used | Airtime Charges | LD/Additional Charges | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| 545 | 6/19 | 4:09 PM | 212-324-3290 | Manhattan, NY | | 10.0 | included | 0.00 | 0.00 |
| 546 | 6/19 | 4:18 PM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| | | | | | CW | 1.0 | | 0.00 | 0.00 |
| 547 | 6/19 | 5:04 PM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| 548 | 6/19 | 6:02 PM | 917-687-6550 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 549 | 6/19 | 6:06 PM | Incoming | | | 2.0 | included | 0.00 | 0.00 |
| 550 | 6/19 | 6:27 PM | Incoming | | | 3.0 | included | 0.00 | 0.00 |
| 551 | 6/19 | 6:33 PM | 212-325-2040 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 552 | 6/20 | 4:13 AM | Incoming | | | 9.0 | included | 0.00 | 0.00 |
| 553 | 6/20 | 4:50 AM | 917-744-5115 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 554 | 6/20 | 4:55 AM | 917-744-5115 | New York, NY | | 2.0 | included | 0.00 | 0.00 |
| 555 | 6/20 | 5:49 AM | Incoming | | | 3.0 | included | 0.00 | 0.00 |
| 556 | 6/20 | 5:54 AM | 212-427-5173 | New York, NY | | 15.0 | included | 0.00 | 0.00 |
| 557 | 6/20 | 6:13 AM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| 558 | 6/20 | 7:37 AM | 212-975-0940 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 559 | 6/20 | 7:42 AM | 212-324-3290 | Manhattan, NY | | 1.0 | included | 0.00 | 0.00 |
| 560 | 6/20 | 11:12 AM | 917-744-5115 | New York, NY | | 4.0 | included | 0.00 | 0.00 |
| 561 | 6/20 | 11:16 AM | 212-975-0940 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 562 | 6/20 | 11:17 AM | 617-868-8456 | Cambridge, MA | | 2.0 | included | 0.00 | 0.00 |
| 563 | 6/20 | 11:18 AM | 212-324-3290 | Manhattan, NY | | 4.0 | included | 0.00 | 0.00 |
| 564 | 6/20 | 11:57 AM | 801-363-6572 | Salt Lake, UT | | 2.0 | included | 0.00 | 0.00 |
| 565 | 6/20 | 11:59 AM | 917-744-5115 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 566 | 6/20 | 11:59 AM | 801-363-6572 | Salt Lake, UT | | 1.0 | included | 0.00 | 0.00 |
| 567 | 6/20 | 12:00 PM | 801-363-6572 | Salt Lake, UT | | 1.0 | included | 0.00 | 0.00 |
| 568 | 6/20 | 12:01 PM | 801-363-6572 | Salt Lake, UT | | 27.0 | included | 0.00 | 0.00 |
| 569 | 6/20 | 4:06 PM | 917-749-7106 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 570 | 6/20 | 4:08 PM | 917-744-5115 | New York, NY | | 10.0 | included | 0.00 | 0.00 |
| 571 | 6/20 | 4:18 PM | 212-324-3290 | Manhattan, NY | | 5.0 | included | 0.00 | 0.00 |
| 572 | 6/20 | 5:44 PM | 212-427-5173 | New York, NY | | 4.0 | included | 0.00 | 0.00 |
| 573 | 6/20 | 7:55 PM | 917-744-5115 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 574 | 6/20 | 7:55 PM | Incoming | | | 3.0 | included | 0.00 | 0.00 |
| 575 | 6/20 | 11:10 PM | 212-782-7300 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 576 | 6/20 | 11:15 PM | Incoming | | | 5.0 | included | 0.00 | 0.00 |
| 577 | 6/20 | 11:37 PM | Incoming | | | 2.0 | included | 0.00 | 0.00 |
| 578 | 6/21 | 12:11 AM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| 579 | 6/21 | 4:53 AM | 212-782-7300 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 580 | 6/21 | 5:19 AM | Incoming | | | 3.0 | included | 0.00 | 0.00 |
| 581 | 6/21 | 5:57 AM | 212-427-5173 | New York, NY | | 6.0 | included | 0.00 | 0.00 |
| 582 | 6/21 | 6:01 AM | Incoming | | | 2.0 | included | 0.00 | 0.00 |
| 583 | 6/21 | 6:10 AM | Incoming | | | 2.0 | included | 0.00 | 0.00 |
| 584 | 6/21 | 6:25 AM | 212-782-7300 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 585 | 6/21 | 6:27 AM | 212-782-7300 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 586 | 6/21 | 6:28 AM | 212-782-7300 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 587 | 6/21 | 7:34 AM | 917-744-5115 | New York, NY | | 1.0 | included | 0.00 | 0.00 |
| 588 | 6/21 | 12:06 PM | 212-324-3290 | Manhattan, NY | | 5.0 | included | 0.00 | 0.00 |
| 589 | 6/21 | 12:11 PM | 917-744-5115 | New York, NY | | 2.0 | included | 0.00 | 0.00 |

Verizon Telephone # 917-846-7106 Calls

October 7, 2002 to November 7, 2002:

1) 11/04: 4:43 pm; 425-466-8633 Outgoing Call to Bellevue, WA
2) 11/04: 4:44 pm; 425-466-8633 Outgoing Call to Bellevue, WA
3) 11/05: 6:26 pm; 425-466-8633 Outgoing Call to Bellevue WA
4) 11/06: 1:16 pm; 425-466-8633 Outgoing Call to Bellevue, WA
5) 11/06: 3:25 pm; 425-466-8633 Outgoing Call to Bellevue, WA
6) 11/06: 5:18 pm; 425-466-8633 Outgoing Call to Bellevue, WA
7) 11/06: 5:51 pm; 425-466-8633 Outgoing Call to Bellevue, WA
8) 11/06: 6:35 pm; 206-778-1316 Outgoing Call to Seattle, WA
9) 11/06: 11:03 pm; 206-778-1316 Outgoing Call to Seattle, WA

February 7, 2003 to March 7, 2003:

1) 03/05: 11:43 pm; Incoming Call to 212-589-6362 from Seattle, WA
2) 03/05: 11:48 pm; Incoming Call to 212-589-6362 from Seattle, WA
3) 03/05: 11:48 pm; Incoming Call to 917-846-7106 from Seattle, WA
4) 03/05: 12:04 am; Incoming Call to 212-589-6362 from Seattle, WA
5) 03/05: 12:15 am; Incoming Call to 917-846-7106 from Seattle, WA

March 7, 2003 to April 7, 2003:

1) 03/13: 6:17 pm; 425-445-1894 Outgoing Call to Bellevue, WA
2) 03/13: 8:26 pm; 425-445-1894 Outgoing Call to Bellevue, WA
3) 03/17: 1:34 pm; 425-445-1894 Outgoing Call to Bellevue, WA
4) 03/19: 5:49 pm; 425445-1894 Outgoing Call to Bellevue, WA
5) 03/20: 11:54 am; 425-445-1894 Outgoing Call to Bellevue, WA
6) 03/21: 6:24 pm; 425-445-1894 Outgoing Call to Bellevue, WA
7) 03/23: 5:21 pm; 425-445-1894 Outgoing Call to Bellevue, WA
8) 03/23: 10:13 pm; 425-445-1894 Outgoing Call to Bellevue, WA
9) 03/24: 5:17 pm; 425-445-1894 Outgoing Call to Bellevue, WA
10) 03/25: 9:41 am; 425-445-1894 Outgoing Call to Bellevue, WA
11) 03/26: 10:56 am; 425-445-1894 Outgoing Call to Bellevue, WA
12) 03/27: 9:51 am; 425-445-1894 Outgoing Call to Bellevue, WA
13) 03/27: 12:02 pm; 425-445-1894 Outgoing Call to Bellevue, WA
14) 03/27: 2:11 pm; 425-445-1894 Outgoing Call to Bellevue, WA
15) 03/27: 3:34 pm; 425-445-1894 Outgoing Call to Bellevue, WA
16) 03/27: 6:31 pm; 425-445-1894 Outgoing Call to Bellevue, WA
17) 03/27: 7:45 pm; 425-445-1894 Outgoing Call to Bellevue, WA
18) 03/27: 9:31 pm; 425-445-1894 Outgoing Call to Bellevue, WA
19) 03/28: 9:50 am; 425-445-1894 Outgoing Call to Bellevue, WA
20) 03/28: 4:54 pm; 425-445-1894 Outgoing Call to Bellevue, WA
21) 03/28: 5:49 pm; 425-445-1894 Outgoing Call to Bellevue, WA

22) 03/29: 1:27 pm; 425-445-1890 Outgoing Call to Bellevue, WA
23) 03/31: 4:27 pm; 425-445-1890 Outgoing Call to Bellevue, WA
24) 03/31: 4:40 pm; 425-445-189 Outgoing Call to Bellevue, WA
25) 03/31: 8:404 pm; 425-445-1890 Outgoing Call to Bellevue, WA
26) 04/01: 9:22 pm; 425-445-1890 Outgoing Call to Bellevue, WA
27) 04/01: 10:04 pm; 425-445-1890 Outgoing Call to Bellevue, WA
28) 04/04: 3:55 pm; 425-445-1890 Outgoing Call to Bellevue, WA
29) 04/06: 12:35 pm; 425-445-1890 Outgoing to Bellevue, WA

January 7, 2003 to February 7, 2003:

PE 1)  01/27: 1:49 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 2)  01/27: 2:22 pm; 425-445-1894 Outgoing Cal to Bellevue, WA
PE 3)  01/27: 2:53 pm; 425-445-1894 Outgoing Call to Bellevue, WA
   4)  01/27: 3:00 pm; 206-778-1316 Outgoing Call to Seattle, WA
   5)  01/27: 3:43 pm; 206-778-1316 Outgoing Call to Seattle, WA
   6)  01/27: 4:01 pm; 206-778-1316 Outgoing Call to Seattle, WA
PE 7)  01/28: 12:29 pm; 425-445-1894; Outgoing Call to Bellevue, WA

December 7 to January 7, 2003:

PE 1)  12/11: 11:16 am; 425-445-1894 Outgoing Call to Bellevue, WA
   2)  12/11: 11:37 am; 425-445-1894 Outgoing Call to Bellevue, WA
   3)  12/22:  7:18 pm; 425-445-1894 Outgoing Call to Bellevue, WA
   4)  12/22: 7:30 pm; 425-445-1894 Outgoing Call to Bellevue, WA
   5)  12/22: 7:31 pm; 425-445-1894 Outgoing Call to Bellevue, WA
   6)  12/22: 7:33 pm; 425-445-1894 Outgoing Call to Bellevue, WA
   7)  12/22: 7:36 pm; 425-445-1894 Outgoing Call to Bellevue, WA
   8)  12/22: 7:42 pm; 425-445-1894 Outgoing Cal to Bellevue, WA
   9)  12/23: 12:40 am; 425-445-1894 Outgoing Call to Bellevue, WA


Verizon Telephone # 212-269-1648 Outgoing Calls

December 3, 2002 to January 1, 2003

PE 1)  12/18: 1:39 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 2)  12/23: 10:29 am; 425-445-1894 Outgoing Call to Bellevue, WA
PE 3)  12/23: 11:52 am; 425-445-1894 Outgoing Call to Bellevue, WA

Verizon Telephone # 212-269-1648 Outgoing Calls

January 1, 2003 to January 31, 2003

PE  1/28: 1:17 pm; 425-445-1894; Outgoing Call to Bellevue, WA

Verizon Telephone # 212-269-1648 Outgoing Calls

February 1, 2003 to February 28, 2003

    1)  2/13: 1:41 pm; 425-467-8471 Outgoing Call to Bellevue, WA
PE 2)  2/21: 12:21 pm; 425-445-1894 Outgoing Call to Bellevue, WA
  3)  2/21: 1:50 pm; 425-445-1894 Outgoing Call to Bellevue, WA
  4)  2/21: 2:06 pm; 425-445-1894 Outgoing Call to Bellevue, WA
  5)  2/27: 12:29 pm; 425-445-1894 Outgoing Call to Bellevue, WA
  6)  2/27: 1:47 pm; 425-445-1894 Outgoing Call to Bellevue, WA

Verizon Telephone # 212-269-1648 Outgoing Calls

March 1, 2003 to March 31, 2003

    1)  2/13: 1:41 pm; 425-467-8471 Outgoing Call to Bellevue, WA
PE 2)  2/21: 12:21 pm; 425-445-1894 Outgoing Call to Bellevue, WA
  3)  2/21: 1:50 pm; 425-445-1894 Outgoing Call to Bellevue, WA
  4)  2/21: 2:06 pm; 425-445-1894 Outgoing Call to Bellevue, WA
  5)  2/27: 12:29 pm; 425-445-1894 Outgoing Call to Bellevue, WA
  6)  2/27: 1:47 pm; 425-445-1894 Outgoing Call to Bellevue, WA

Verizon Telephone # 212-269-1647 Outgoing Calls

March 1, 2003 to March 31, 2003

    1)  3/17: 1:23 pm; 206-892-6502 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-1648 Outgoing Calls

April 1, 2003 to April 30, 2003

PE  1)  4/02: 5:39 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE  2)  4/03: 3:59 pm; 425-445-1894 Outgoing Cal to Bellevue, WA
PE  3)  4/03: 5:20 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE  4)  4/04: 5:39 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE  5)  4/14: 4:12 pm; 425-445-1894 Outgoing Cal to Bellevue, WA
  6)  4/16: 4:40 pm; 425-985-2757 Outgoing Cal to Bellevue, WA
  7)  4/22: 12:18 pm; 206-228-0420 Outgoing Call to Seattle, WA
  8)  4/24: 12:12 pm; 206-228-0420 Outgoing Call to Seattle, WA
  9)  4/24: 12:12 pm; 206-228-0420 Outgoing Cal to Seattle, WA
PE 10)  4/24: 12:35 pm; 425-445-1894 Outgoing Call to Bellevue, WA
  11)  4/28: 5:37 pm; 206-465-8886 Outgoing Call to Seattle, WA
PE 12)  4/28: 5:43 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE (s) 13)  4/28: 5:47 pm; 425-369-0471 Outgoing Call to Issaquah, WA

PE 14) 4/28: 5:57 pm; 425-445-1894 Outgoing Call to Bellevue, WA
15) 4/28: 6:50 pm; 425-641-7584 Outgoing Call to Bellevue, WA
16) 4/29: 2:14 pm; 425-641-7584 Outgoing Call to Bellevue, WA
17) 4/29: 4:54 pm; 425-641-7584 Outgoing Call to Bellevue, WA


## Verizon Telephone # 212-269-1647 Outgoing Calls

April 1, 2003 to April 30, 2003

PE 1)  4/02: 2:03 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 2)  4/24; 11:16 pm; 425-445-1894 Outgoing Call to Bellevue, WA
3)  4/29: 11:50 pm; 425-681-3496 Outgoing Call to Bellevue, WA


## Verizon Telephone # 212-269-1648 Outgoing Calls

May 1, 2003 to May 31, 2003

1)  5/02: 1:03 pm; 425-603-1195 Outgoing Call to Bellevue, WA
PE 2)  5/06: 3:28 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 3)  5/08: 1:04 pm; 425-445-1894 Outgoing Call to Bellevue, WA
4)  5/09: 3:26 pm; 206-228-0420 Outgoing Call to Seattle, WA
5)  5/09: 3:39 pm; 425-641-7584 Outgoing Cal to Bellevue, WA
6)  5/09: 6:25 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE 7)  5/11: 1:42 pm; 425-445-1894 Outgoing Call to Bellevue, WA
8)  5/12: 11:32 pm; 206-228-0420 Outgoing Call to Seattle, WA
9)  5/12: 12:49 pm; 206-228-0420 Outgoing Cal to Seattle, WA
10) 5/12: 1:36 pm; 206-228-0420 Outgoing Call to Seattle, WA
11) 5/12: 2:01 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE 12) 5/13: 12:00 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 13) 5/13: 1:23 pm; 425-445-1894 Outgoing Call to Bellevue, WA
14) 5/14: 12:26 pm; 206-228-0420 Outgoing Call to Seattle, WA
15) 5/14: 12:55 pm; 206-228-0420 Outgoing Call to Seattle, WA
16) 5/14: 1:22 pm; 206-228-0420 Outgoing Call to Seattle, WA
17) 5/14: 1:30 pm; 206-228-0420 Outgoing Call to Seattle, WA
18) 5/14: 4:37 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE (s) 19) 5/15: 4:45 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE 20) 5/15: 5:52 pm; 425-445-1894 Outgoing Cal to Bellevue, WA
PE (s) 21) 5/16: 5:00 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE (s) 22) 5/19: 2:43 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE (s) 23) 5/19: 3:00 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE (s) 24) 5/19: 4:50 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE (s) 25) 5/20: 1:53 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE 26) 5/21: 10:05 am; 425-445-1894 Outgoing Call to Bellevue, WA
PE 27) 5/21: 1:35 pm; 425-445-1894 Outgoing Call to Bellevue, WA

28) 5/22: 1:37 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE 29) 5/23: 9:28 am; 425-445-1894 Outgoing Call to Bellevue, WA
30) 5/23: 9:33 am; 206-228-0420 Outgoing Call to Seattle, WA
31) 5/23: 9:36 am; 206-228-0420 Outgoing Call to Seattle, WA
32) 5/23: 9:51 am; 206-228-0420 Outgoing Call to Seattle, WA
PE (s)33) 5/23: 12:36 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE 34) 5/23: 1:53 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 35) 5/27: 4:01 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 36) 5/27; 4:02 pm; 425-445-1894 Outgoing Cal to Bellevue, WA

### Verizon Telephone # 212-269-1891 Outgoing Calls

May 1, 2003 to May 31, 2003

1)  5/02: 1:00 pm; 425-603-1195 Outgoing Call to Bellevue, WA
2)  5/02: 1:04 pm; 425-603-1195 Outgoing Cal to Bellevue, WA
3)  5/02: 5:51 pm; 425-603-1195 Outgoing Call to Bellevue, WA
4)

### Verizon Telephone # 212-269-1647 Outgoing Calls

May 1, 2003 to May 31, 2003

PM 1)  5/05: 1:20 pm; 801-363-6572 Outgoing Call to Salt Lake City, UT
2)  5/12: 11:33 am; 206-228-0420 Outgoing Call to Seattle, WA
3)  5/12: 11:35 am; 425-641-7584 Outgoing Call to Bellevue, WA
4)  5/15: 11:36 am; 206-778-1316 Outgoing Cal to Seattle, WA
5)  5/23: 9:36 am; 206-412-0449 Outgoing Call to Seattle, WA
6)  5/27: 5:02 pm; 206-264-6319 Outgoing Call to Seattle, WA
7)

### Verizon Telephone # 212-269-1646 Outgoing Calls

May 1, 2003 to May 31, 2003

1)  5/02: 4:14 pm; 206-228-0520 Outgoing Call to Seattle, WA
2)  5/02: 4:14 pm; 206-228-0520 Outgoing Call to Seattle, WA
3)  5/02: 12:36 pm; 206-228-0520 Outgoing Call to Seattle, WA
4)  5/02: 2:02 pm; 206-228-0520 Outgoing Call to Seattle, WA

### Verizon Telephone # 212-269-1648 Outgoing Calls

June 1, 2003 to June 30, 2003

1)  6/02: 12:07 pm; 425-451-8430 Outgoing Call to Bellevue
2)  6/02: 8:16 pm; 206-228-0420 Outgoing Call to Seattle, WA
3)  6/02: 8:22 pm; 206-228-0420 Outgoing Call to Seattle, WA

4) 6/03: 11:15 am; 206-228-0420 Outgoing Call to Seattle, WA
5) 6/03: 11:22 am; 206-228-0420 Outgoing Call to Seattle, WA
6) 6/03: 2:04 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE (6) 7) 6/03: 4:00 pm; 425-369-0471 Outgoing Call to Issaquah, WA
8) 6/03: 4:28 pm; 206-228-0420 Outgoing Call to Seattle, WA
9) 6/03: 5:07 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE 10) 6/04: 12:58 pm; 425-445-1894 Outgoing Call to Bellevue, WA
11) 6/04: 2:44 pm; 451-8430 Outgoing Call to Bellevue, WA
12) 6/04: 3:39 pm; 425-451-8430 Outgoing Call to Bellevue, WA
13) 6/05: 2:26 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE 14) 6/06: 11:05 am; 425-445-1894 Outgoing Call to Bellevue, WA
PE 15) 6/06: 11:58 am; 425-445-1894 Outgoing Call to Bellevue, WA
PE 16) 6/06: 12:10 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 17) 6/06: 12:11 pm; 425-445-1894 Outgoing Call to Bellevue, WA
18) 6/09: 2:05 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE 19) 6/10: 1:50 pm; 425-445-1894 Outgoing Call to Bellevue, WA
20) 6/11: 11:25 pm; 425-641-7584 Outgoing Call to Bellevue, WA
21) 6/11: 12:41 pm; 206-228-0420 Outgoing Call to Seattle, WA
22) 6/11: 1:37 pm; 425-641-7584 Outgoing Call to Bellevue, WA
23) 6/11: 2:24 pm; 425-451-8430 Outgoing Call to Bellevue, WA
PE 24) 6/11: 2:44 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 25) 6/11: 4:40 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 26) 6/12: 1:05 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 27) 6/19: 3:30 pm; 425-445-1894 Outgoing Call to Bellevue, WA
28) 6/19: 5:43 pm; 425-603-1365 Outgoing Call to Bellevue, WA
29) 6/19: 5:57 pm; 206-281-7939 Outgoing Call to Seattle, WA
30) 6/20: 11:41 am; 206-281-7939 Outgoing Call to Seattle, WA
31) 6/20: 2:37 pm; 206-281-7939 Outgoing Call to Seattle, WA
PE 32) 6/20: 5:30 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 33) 6/20: 5:32 pm; 425-445-1894 Outgoing Call to Bellevue, WA
34) 6/23: 2:59 pm; 206-228-0420 Outgoing Call to Seattle, WA
35) 6/23: 3:00 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE 36) 6/24: 4:25 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 37) 6/24: 4:47 pm; 425-445-1894 Outgoing Call to Bellevue, WA
38) 6/24: 5:34 pm; 206-281-7939 Outgoing Call to Seattle, WA
39) 6/25: 2:06 pm; 206-281-7939 Outgoing Call to Seattle, WA
40) 6/27: 4:34 pm; 206-281-7939 Outgoing Call to Seattle, WA
PE 41) 6/30: 6:20 pm; 425-445-1894 Outgoing Call to Bellevue, WA


Verizon Telephone # 212-269-1706 Outgoing Calls


June 1, 2003 to June 30, 2003


PE 1) 6/09: 2:13 pm; 425-445-1894 Outgoing Call to Bellevue, WA
2) 6/10: 2:13 pm; 206-228-0420 Outgoing Call to Seattle, WA

3) 6/25: 4:51 pm; 206-281-7939 Outgoing Call to Seattle, WA

### Verizon Telephone # 212-269-1646 Outgoing Calls

June 1, 2003 to June 30, 2003

1) 6/03: 4:09 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE 2) 6/09: 2:10 pm; 425-445-1894 Outgoing Call to Bellevue, WA
3) 6/11: 4:34 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE 4) 6/12: 10:57 am; 425-445-1894 Outgoing Call to Bellevue, WA
5) 6/12: 5:03 pm; 425-641-7584 Outgoing Call to Bellevue, WA
6) 6/16: 11:06 am; 206-228-0420 Outgoing Call to Seattle, WA
7) 6/19: 5:18 pm; 425-603-1365 Outgoing Call to Bellevue, WA
PE (s) 8) 6/23: 5:11 pm; 425-369-0471 Outgoing Call to Issaquah, WA
9) 6/23: 5:40 pm; 425-603-1365 Outgoing Call to Bellevue, WA

### Verizon Telephone # 212-269-1647 Outgoing Calls

June 1, 2003 to June 30, 2003

1) 6/03: 10:49 am; 206-227-0420 Outgoing Call to Seattle, WA
2) 6/03: 10:49 am; 206-228-0420 Outgoing Call to Seattle, WA
3) 6/03: 2:08 pm; 206-228-0420 Outgoing Call to Seattle, WA
TB 4) 6/04: 1:01 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
PE (s) 5) 6/04: 1:03 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE 6) 6/09: 1:13 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 7) 6/09: 1:17 pm; 425-445-1894 Outgoing Call to Bellevue, WA
8) 6/09: 1:55 pm; 206-228-0420 Outgoing Call to Seattle, WA
9) 6/11: 11:32 am; 206-228-0420 Outgoing Call to Seattle, WA
10) 6/11: 11:43 am; 206-228-0420 Outgoing Call to Seattle, WA
11) 6/12: 10:10 am; 206-228-0420 Outgoing Call to Seattle, WA
12) 6/12: 4:56 pm; 206-228-0420 Outgoing Call to Seattle, WA
13) 6/19: 5:17 pm; 206-281-7939 Outgoing Call to Seattle, WA
14) 6/20: 11:51 am; 206-281-7939 Outgoing Call to Seattle, WA
15) 6/20: 2:59 pm; 206-281-7939 Outgoing Call to Seattle, WA
PE (s) 16) 6/23: 5:16 pm; 425-369-0471 Outgoing Call to Issaquah, WA
17) 6/23: 5:39 pm; 206-281-7939 Outgoing Call to Seattle, WA
PE 18) 6/25: 1:10 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 19) 6/25: 2:07 pm; 425-445-1894 Outgoing Call to Bellevue, WA
20) 6/26: 12:39 pm; 206-281-7939 Outgoing Call to Seattle, WA

### Verizon Telephone # 212-269-1648 Outgoing Calls

July 1, 2003 to July 31, 2003

1) 7/01: 2:23 pm; 206-228-0420 Outgoing Call to Seattle, WA
2) 7/01: 2:26 pm; 206-228-0420 Outgoing Call to Seattle, WA
3) 7/01: 2:37 pm; 206-281-7939 Outgoing Call to Seattle, WA
4) 7/01: 5:18 pm; 206-281-7939 Outgoing Call to Seattle, WA
5) 7/02: 11:58 am; 801-541-4964 Outgoing Call to Salt Lake City, UT
6) 7/02: 1:02 pm; 425-603-1365 Outgoing Call to Bellevue, WA
7) 7/02: 1:37 pm; 425-603-1365 Outgoing Call to Bellevue, WA
8) 7/02: 2:16 pm; 425-603-1365 Outgoing Call to Bellevue, WA
9) 7/02: 3:00 pm; 425-603-1365 Outgoing Call to Bellevue, WA
10) 7/02: 3:16 am; 801-541-4964 Outgoing Call to Salt Lake City, UT
11) 7/02: 4:05 pm; 425-603-1365 Outgoing Call to Bellevue, WA
12) 7/02: 5:07 pm; 206-669-7360 Outgoing Call to Seattle, WA
13) 7/07: 10:17 am; 206-228-0420 Outgoing Call to Seattle, WA
TB 14) 7/07: 3:16 am; 801-578-1246 Outgoing Call to Salt Lake City, UT
TB 15) 7/07: 11:00 am; 801-578-1246 Outgoing Call to Salt Lake City, UT
TB 16) 7/07: 11:19 am; 801-578-1246 Outgoing Call to Salt Lake City, UT
TB 17) 7/07: 11:27 am; 801-578-1246 Outgoing Call to Salt Lake City, UT
TB 18) 7/07: 11:57 am; 801-578-1246 Outgoing Call to Salt Lake City, UT
19) 7/07: 4:26 pm; 206-228-0420 Outgoing Call to Seattle, WA
20) 7/08: 2:26 pm; 206-228-0420 Outgoing Call to Seattle, WA
21) 7/08: 2:27 pm; 206-228-0420 Outgoing Call to Seattle, WA
22) 7/08: 2:55 pm; 206-228-0420 Outgoing Call to Seattle, WA
23) 7/09: 11:34 am; 206-281-7939 Outgoing Call to Seattle, WA
24) 7/09: 11:40 am; 206-228-0420 Outgoing Call to Seattle, WA
25) 7/09: 11:58 am; 206-281-7939 Outgoing Call to Seattle, WA
26) 7/09: 12:41 pm; 206-281-7939 Outgoing Call to Seattle, WA
27) 7/09: 3:54 pm; 206-281-7939 Outgoing Call to Seattle, WA
28) 7/10: 5:16 pm; 206-228-0420 Outgoing Call to Seattle, WA
29) 7/11: 11:47 am; 206-228-0420 Outgoing Call to Seattle, WA
30) 7/11: 12:04 pm; 206-228-0420 Outgoing Call to Seattle, WA
31) 7/11: 1:42 pm; 206-228-0420 Outgoing Call to Seattle, WA
32) 7/11: 3:57 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE 33) 7/11: 4:16 pm; 425-445-1894 Outgoing Call to Bellevue, WA
34) 7/14: 2:36 pm; 206-669-7360 Outgoing Call to Seattle, WA
35) 7/15: 10:50 am; 425-445-1894 Outgoing Call to Bellevue, WA
36) 7/16: 4:49 pm; 206-669-7360 Outgoing Call to Seattle, WA
PE 37) 7/17: 1:41 pm; 425-445-1894 Outgoing Call to Bellevue, WA
38) 7/18: 1:33 pm; 425-462-1234 Outgoing Call to Bellevue, WA
39) 7/21: 8:12 am; 425-454-4424 Outgoing Call to Bellevue, WA
PE (s) 40) 7/21: 10:00 am; 425-369-0471 Outgoing Call to Issaquah, WA
41) 7/23: 12:02 pm; 206-281-7939 Outgoing Call to Seattle, WA
42) 7/23: 1:13 pm; 206-281-7939 Outgoing Call to Seattle, WA
43) 7/24: 8:49 am; 206-281-7939 Outgoing Call to Seattle, WA
44) 7/24: 9:13 am; 206-281-7939 Outgoing Call to Seattle, WA
45) 7/24: 9:19 am; 206-281-7939 Outgoing Call to Seattle, WA
46) 7/24: 2:58 pm; 206-228-0420 Outgoing Call to Seattle, WA

PE 47) 7/30: 11:03 am; 425-445-1894 Outgoing Call to Bellevue, WA
PE (s) 48) 7/30: 11:04 am; 425-369-0471 Outgoing Call to Issaquah, WA
PE 49) 7/30: 11:05 am; 425-445-1894 Outgoing Call to Bellevue, WA
PE (s) 50) 7/30: 1:00 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE (s) 51) 7/30: 1:25 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE (s) 52) 7/30: 2:45 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE (s) 53) 7/30: 4:30 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE (s) 54) 7/30: 4:40 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE (s) 55) 7/30: 4:54 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE (s) 56) 7/30: 5:08 pm; 425-369-0471 Outgoing Call to Issaquah, WA
TB 57) 7/30: 5:10 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
TB 58) 7/30: 5:10 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT

Verizon Telephone # 212-269-1646 Outgoing Calls

July 1, 2003 to July 31, 2003

1) 7/22; 2:39 pm; 206-228-0420 Outgoing Call to Seattle, WA
2) 7/24; 9:18 am; 206-228-0420 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-1647 Outgoing Calls

July 1, 2003 to July 31, 2003

1) 7/01; 2:35 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE 2) 7/02; 4:49 pm; 425-445-1894 Outgoing Call to Bellevue, WA
3) 7/09; 11:40 am; 206-281-7939 Outgoing Call to Seattle, WA
4) 7/10; 7:34 pm; 206-228-0420 Outgoing Call to Seattle, WA
5) 7/22; 11:18 am; 206-281-7939 Outgoing Call to Seattle, WA
6) 7/23; 2:48 am; 206-281-7939 Outgoing Call to Seattle, WA
7) 7/24; 9:57 am; 206-281-7939 Outgoing Call to Seattle, WA
8) 7/30; 11:53 am; 425-822-3305 Outgoing Call to Kirkland, WA

Verizon Telephone # 212-269-1891 Outgoing Calls

July 1, 2003 to July 31, 2003

1) 7/02: 4:04 pm; 425-603-1195 Outgoing Call to Bellevue, WA

Verizon Telephone # 212-269-1646 Outgoing Calls

August 1, 2003 to August 31, 2003

1) 8/11: 1:57 pm; 206-281-7939 Outgoing Call to Seattle, WA
PE 2) 8/19: 5:25 pm; 425-445-1894 Outgoing Call to Bellevue, WA

PE (s) 3) 8/19: 5:27 pm; 425-369-0471 Outgoing Call to Issaquah, WA
4) 8/22; 11:59 am; 206-228-0420 Outgoing Call to Seattle, WA
PE (s) 5) 8/26: 11:03 am; 425-369-0471 Outgoing Call to Issaquah, WA
6) 8/26: 11:57 pm; 206-281-7939 Outgoing Call to Seattle, WA
7) 8/26: 12:20 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE (s) 8) 8/26: 1:57 pm; 425-369-0471 Outgoing Call to Issaquah, WA
PE (s) 9) 8/26: 2:49 pm; 425-369-0471 Outgoing Call to Issaquah, WA

## Verizon Telephone # 212-269-1647 Outgoing Calls

August 1, 2003 to August 31, 2003

1) 7/31: 2:14 pm; 206-228-0420 Outgoing Call to Seattle, WA
2) 8/07: 3:04 pm; 206-669-7360 Outgoing Call to Seattle, WA
3) 8/11: 3:07 pm; 206-228-0420 Outgoing Call to Seattle, WA
4) 8/13: 12:17 pm; 206-281-7939 Outgoing Call to Seattle, WA
5) 8/13: 6:41 pm; 206-281-7939 Outgoing Call to Seattle, WA
6) 8/14: 10:40 am; 206-281-7939 Outgoing Call to Seattle, WA
7) 8/14: 1:54 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE 8) 8/19: 5:35 pm; 425-445-1894 Outgoing Call to Bellevue, WA
9) 8/20: 1:45 pm; 206-669-7360 Outgoing Call to Seattle, WA
PE 10) 8/20: 1:50 pm; 425-445-1894 Outgoing Call to Bellevue, WA
11) 8/21: 6:05 pm; 206-281-1937 Outgoing Call to Seattle, WA
12) 8/25: 2:37 pm; 206-281-7939 Outgoing Call to Seattle, WA
13) 8/25: 3:03 pm; 425-246-2372 Outgoing Call to Bellevue, WA
14) 8/26: 9:31 am; 206-281-7939 Outgoing Call to Seattle, WA
15) 8/26: 9:32 am; 206-281-7939 Outgoing Call to Seattle, WA
16) 8/27: 8:26 am; 206-281-7939 Outgoing Call to Seattle, WA
17) 8/27: 12:39 pm; 206-281-7939 Outgoing Call to Seattle, WA
TB 18) 8/27: 3:51 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
19) 8/27: 4:25 pm; 206-228-0420 Outgoing Call to Seattle, WA
20) 8/28: 10:17 am; 206-281-7939 Outgoing Call to Seattle, WA
21) 8/28: 12:04 pm; 206-281-7939 Outgoing Call to Seattle, WA
22) 8/28: 12:06 pm; 206-228-0420 Outgoing Call to Seattle, WA
23) 8/29: 8:51 am; 206-228-0420 Outgoing Call to Seattle, WA
24) 8/29: 10:25 am; 206-281-7939 Outgoing Call to Seattle, W

## Verizon Telephone # 212-269-1648 Outgoing Calls

August 1, 2003 to August 31, 2003

TB 1) 7/31: 3:31 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
TB 2) 7/31: 4:06 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
TB 3) 7/31: 4:36 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
TB 4) 7/31: 5:00 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
5) 8/06: 1:35 pm; 425-462-4700 Outgoing Call to Bellevue, WA

6)  8/11: 5:42 pm; 206-281-7939 Outgoing Call to Seattle, WA
7)  8/11: 5:46 pm; 206-281-7939 Outgoing Call to Seattle, WA
8)  8/12: 1:07 pm; 206-281-7939 Outgoing Call to Seattle, WA
9)  8/12: 3:29 pm; 206-281-7939 Outgoing Call to Seattle, WA
10) 8/12: 5:21 pm; 206-281-7939 Outgoing Call to Seattle, WA
11) 8/12: 5:28 pm; 206-228-0420 Outgoing Call to Seattle, WA
12) 8/12: 5:31 pm; 206-281-7939 Outgoing Call to Seattle, WA
13) 8/12: 5:48 pm; 206-281-7939 Outgoing Call to Seattle, WA
14) 8/12: 6:43 pm; 206-281-7939 Outgoing Call to Seattle, WA
15) 8/13: 9:35 am; 206-281-7939 Outgoing Call to Seattle, WA
16) 8/13: 10:05 am; 206-281-7939 Outgoing Call to Seattle, WA
17) 8/13: 12:53 pm; 206-281-7939 Outgoing Call to Seattle, WA
18) 8/13: 1:08 pm; 206-281-7939 Outgoing Call to Seattle, WA
19) 8/13: 2:29 pm; 206-281-7939 Outgoing Call to Seattle, WA
20) 8/13: 4:17 pm; 206-281-7939 Outgoing Call to Seattle, WA
21) 8/13: 4:34 pm; 206-228-0420 Outgoing Call to Seattle, WA
22) 8/13: 4:46 pm; 206-228-0420 Outgoing Call to Seattle, WA
23) 8/13: 5:03 pm; 206-228-0420 Outgoing Call to Seattle, WA
24) 8/14: 12:16 pm; 206-281-7939 Outgoing Call to Seattle, WA
TB 25) 8/15: 12:42 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
26) 8/15: 3:00 pm; 801-541-4964 Outgoing Call to Salt Lake City, UT
27) 8/15: 5:36 pm; 206-281-7939 Outgoing Call to Seattle, WA
28) 8/19: 12:17 pm; 425-603-1365 Outgoing Call to Bellevue, WA
29) 8/19: 12:51 pm; 425-246-2372 Outgoing Call to Bellevue, WA
30) 8/20: 11:53 am; 425-246-2372 Outgoing Call to Bellevue, WA
31) 8/20: 12:12 pm; 425-246-2372 Outgoing Call to Bellevue, WA
32) 8/20: 12:13 pm; 425-246-2372 Outgoing Call to Bellevue, WA
TB 33) 8/20: 1:34 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
34) 8/20: 4:33 pm; 206-669-7360 Outgoing Call to Seattle, WA
35) 8/20: 6:34 pm; 206-669-7360 Outgoing Call to Seattle, WA
36) 8/20: 6:37 pm; 425-641-7584 Outgoing Call to Bellevue, WA
PE 37) 8/21: 7:26 pm; 425-445-1894 Outgoing Call to Bellevue, WA
38) 8/22: 9:49 am; 206-281-1937 Outgoing Call to Seattle, WA
TB 39) 8/22: 11:33 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
40) 8/22: 2:15 pm; 206-228-0420 Outgoing Call to Seattle, WA
TB 41) 8/25: 11:49 am; 801-578-1246 Outgoing Call to Salt Lake City, UT
42) 8/25: 11:53 am; 206-281-7939 Outgoing Call to Seattle, WA
TB 43) 8/25: 12:18 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
44) 8/26: 9:13 am; 206-281-3979 Outgoing Call to Seattle, WA
45) 8/26: 9:14 am; 206-281-7939 Outgoing Call to Seattle, WA
46) 8/26: 9:47 am; 206-281-7939 Outgoing Call to Seattle, WA
PE (s) 47) 8/26: 1:28 pm; 425-369-0471 Outgoing Call to Issaquah, WA
48) 8/26: 1:32 pm; 206-281-7939 Outgoing Call to Seattle, WA
TB 49) 8/26: 3:26 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
PE 50) 8/26: 5:02 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 51) 8/26: 5:10 pm; 425-445-1894 Outgoing Call to Bellevue, WA

PE 52) 8/26: 5:12 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 53) 8/26: 5:02 pm; 425-445-1894 Outgoing Call to Bellevue, WA
TB 54) 8/26: 5:23 pm; 801-578-1246 Outgoing Call to Salt Lake City, UT
PE 55) 8/27: 8:58 am; 425-445-1894 Outgoing Call to Bellevue, WA
56) 8/27: 9:18 am; 206-281-7939 Outgoing Call to Seattle, WA
PE (s)57) 8/27: 11:32 am; 425-369-0471 Outgoing Call to Issaquah, WA
PE (s)58) 8/27: 11:36 am; 425-369-0471 Outgoing Call to Issaquah, WA
59) 8/27: 11:41 am; 425-373-0606 Outgoing Call to Bellevue, WA
60) 8/27: 12:52 pm; 425-392-2499 Outgoing Call to Issaquah, WA
61) 8/27: 1:54 pm; 206-228-0420 Outgoing Call to Seattle, WA
62) 8/28: 10:05 am; 206-228-0420 Outgoing Call to Seattle, WA
63) 8/28: 10:06 am; 206-281-7939 Outgoing Call to Seattle, WA
PE 64) 8/28: 10:38 am; 425-445-1894 Outgoing Call to Bellevue, WA
65) 8/28: 8:58 am; 425-373-0606 Outgoing Call to Bellevue, WA
66) 8/28: 11:11 am; 206-281-7939 Outgoing Call to Seattle, WA
67) 8/28: 12:50 pm; 206-228-0420 Outgoing Call to Seattle, WA
68) 8/28: 12:55 pm; 206-281-7939 Outgoing Call to Seattle, WA
69) 8/28: 3:33 pm; 206-281-7939 Outgoing Call to Seattle, WA
70) 8/28: 3:34 pm; 206-228-0420 Outgoing Call to Seattle, WA
71) 8/28: 4:21 pm; 206-281-7939 Outgoing Call to Seattle, WA
72) 8/28: 4:22 pm; 206-281-7939 Outgoing Call to Seattle, WA
73) 8/29: 1:34 pm; 206-281-7939 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-1705 Outgoing Calls

August 1, 2003 to August 31, 2003

PE (s) 1)  8/26: 2:34 pm; 425-369-0471 Outgoing Call to Issaquah, WA

Verizon Telephone # 212-269-1706 Outgoing Calls

August 1, 2003 to August 31, 2003

PE (s) 1)  8/26: 1:34 pm; 425-369-0471 Outgoing Call to Issaquah, WA

Verizon Telephone # 212-269-1891 Outgoing Calls

August 1, 2003 to August 31, 2003

TB    1)  8/25: 11:37 am; 801-578-1246 Outgoing Call to Salt Lake City, UT
TB    2)  8/25: 11:41 am; 801-578-1246 Outgoing Call to Salt Lake City, UT

Verizon Telephone # 212-269-1646 Outgoing Calls

September 1, 2003 to September 30, 2003

1) 9/04: 10:07 am; 206-228-0420 Outgoing Call to Seattle, WA
2) 9/22: 11:47 am; 206-281-7939 Outgoing Call to Seattle, WA
3) 9/23: 11:24 am; 206-228-0420 Outgoing Call to Seattle, WA
4) 9/23: 11:25 am; 206-281-7939 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-1647 Outgoing Calls

September 1, 2003 to September 30, 2003

PE 1) 9/04: 12:34 pm; 425-445-1894 Outgoing Call to Bellevue, WA
2) 9/05: 12:41 pm; 206-228-0420 Outgoing Call to Seattle, WA
3) 9/05: 2:05 pm; 206-228-0420 Outgoing Call to Seattle, WA
4) 9/05: 2:12 pm; 206-228-0420 Outgoing Call to Seattle, WA
5) 9/08: 1:01 pm; 206-281-7939 Outgoing Call to Seattle, WA
6) 9/08: 3:28 pm; 206-281-7939 Outgoing Call to Seattle, WA
7) 9/09: 11:08 am; 206-228-0420 Outgoing Call to Seattle, WA
8) 9/15: 9:33 am; 425-462-9817 Outgoing Call to Bellevue, WA
PE 9) 9/15: 3:28 pm; 425-445-1894 Outgoing Call to Bellevue, WA
10) 9/16: 9:57 am; 206-228-0420 Outgoing Call to Seattle, WA
11) 9/16: 9:59 am; 206-228-0420 Outgoing Call to Seattle, WA
12) 9/16: 4:13 pm; 425-603-1365 Outgoing Call to Bellevue, WA
13) 9/16: 4:14 pm; 425-644-0636 Outgoing Call to Bellevue, WA
PE 14) 9/16: 5:55 pm; 425-445-1894 Outgoing Call to Bellevue, WA
15) 9/22: 1:36 pm; 206-281-7939 Outgoing Call to Seattle, WA
16) 9/22: 4:01 pm; 206-281-7939 Outgoing Call to Seattle, WA
17) 9/22: 4:12 pm; 206-281-7939 Outgoing Call to Seattle, WA
18) 9/23: 10:45 am; 206-281-7939 Outgoing Call to Seattle, WA
19) 9/23: 1:44 pm; 206-281-7939 Outgoing Call to Seattle, WA
20) 9/23: 1:45 pm; 206-228-0420 Outgoing Call to Seattle, WA
21) 9/24: 9:26 am; 206-281-7939 Outgoing Call to Seattle, WA
22) 9/24: 10:53 am; 206-281-7939 Outgoing Call to Seattle, WA
23) 9/24: 1:54 pm; 206-228-0420 Outgoing Call to Seattle, WA
24) 9/24: 4:40 pm; 206-281-7939 Outgoing Call to Seattle, WA
25) 9/25: 5:00 pm; 206-281-7939 Outgoing Call to Seattle, WA
26) 9/29: 1:20 pm; 206-281-7939 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-1648 Outgoing Calls

September 1, 2003 to September 30, 2003

1) 9/02: 10:03 am; 206-228-0420 Outgoing Call to Seattle, WA
2) 9/02: 12:06 pm; 206-228-0420 Outgoing Call to Seattle, WA
3) 9/02: 1:23 pm; 206-228-0420 Outgoing Call to Seattle, WA
4) 9/02: 3:55 pm; 206-228-0420 Outgoing Call to Seattle, WA
5) 9/03: 10:43 am; 206-228-0420 Outgoing Call to Seattle, WA
6) 9/03: 2:56 pm; 206-228-0420 Outgoing Call to Seattle, WA

7)  9/04: 12:51 pm; 206-281-0420 Outgoing Call to Seattle, WA
8)  9/04: 12:52 pm; 206-228-0420 Outgoing Call to Seattle, WA
9)  9/04: 1:19 pm; 206-281-0420 Outgoing Call to Seattle, WA
10) 9/05: 9:55 am; 206-281-0420 Outgoing Call to Seattle, WA
11) 9/05: 12:04 pm; 206-281-7939 Outgoing Call to Seattle, WA
12) 9/05: 12:04 pm; 206-281-0420 Outgoing Call to Seattle, WA
13) 9/05: 12:43 pm; 206-281-7939 Outgoing Call to Seattle, WA
14) 9/05: 2:00 pm; 206-281-0420 Outgoing Call to Seattle, WA
15) 9/05: 2:29 pm; 206-281-0420 Outgoing Call to Seattle, WA
16) 9/08: 10:12 am; 206-281-0420 Outgoing Call to Seattle, WA
17) 9/08: 12:07 pm; 206-281-7939 Outgoing Call to Seattle, WA
18) 9/08: 12:08 pm; 206-281-0420 Outgoing Call to Seattle, WA
19) 9/08: 12:38 pm; 206-281-0420 Outgoing Call to Seattle, WA
20) 9/08: 12:39 pm; 206-281-0420 Outgoing Call to Seattle, WA
21) 9/08: 12:55 pm; 206-281-0420 Outgoing Call to Seattle, WA
22) 9/08: 12:57 pm; 206-281-7939 Outgoing Call to Seattle, WA
23) 9/08: 1:02 pm; 206-281-7939 Outgoing Call to Seattle, WA
24) 9/09: 11:47 am; 206-281-7939 Outgoing Call to Seattle, WA
25) 9/09: 2:33 pm; 206-281-7939 Outgoing Call to Seattle, WA
26) 9/11: 8:35 am; 425-462-9817 Outgoing Call to Bellevue, WA
27) 9/11: 6:36 pm; 206-386-8044 Outgoing Call to Seattle, WA
28) 9/12: 7:53 am; 425-462-9817 Outgoing Call to Bellevue, WA
29) 9/12: 4:20 pm; 206-386-8049 Outgoing Call to Seattle, WA
30) 9/12: 4:20 pm; 206-386-8044 Outgoing Call to Seattle, WA
31) 9/16: 7:54 am; 425-462-9817 Outgoing Call to Bellevue, WA
PE 32) 9/16: 6:01 pm; 425-445-1894 Outgoing Call to Bellevue, WA
33) 9/16: 7:39 pm; 206-386-8044 Outgoing Call to Seattle, WA
34) 9/19: 9:17 am; 425-443-5968 Outgoing Call to Bellevue, WA
35) 9/22: 11:04 am; 206-281-7939 Outgoing Call to Seattle, WA
36) 9/22: 3:27 pm; 206-281-7939 Outgoing Call to Seattle, WA
37) 9/22: 3:31 pm; 206-281-7939 Outgoing Call to Seattle, WA
38) 9/22: 6:00 pm; 206-281-7939 Outgoing Call to Seattle, WA
39) 9/23: 10:35 am; 206-281-7939 Outgoing Call to Seattle, WA
40) 9/23: 4:06 pm; 206-281-7939 Outgoing Call to Seattle, WA
41) 9/24: 12:18 pm; 206-281-3979 Outgoing Call to Seattle, WA
42) 9/24: 12:18 pm; 206-281-0420 Outgoing Call to Seattle, WA
43) 9/24: 4:24 pm; 206-281-7939 Outgoing Call to Seattle, WA
44) 9/25: 9:23 am; 206-228-0420 Outgoing Call to Seattle, WA
45) 9/25: 3:46 pm; 206-281-7939 Outgoing Call to Seattle, WA
46) 9/29: 10:46 am; 206-281-7939 Outgoing Call to Seattle, WA
PE 47) 9/29: 4:44 pm; 425-445-1894 Outgoing Call to Bellevue, WA

Verizon Telephone # 212-269-1891 Outgoing Calls

September 1, 2003 to September 30, 2003

1) 9/25: 11:41 am; 801-880-9095 Outgoing Call to Salt Lake City, UT

Verizon Telephone # 212-269-1646 Outgoing Calls

October 1, 2003 to October 31, 2003

1) 10/01: 11:17 am; 206-228-0420 Outgoing Call to Seattle, WA
2) 10/02: 10:30 am; 206-281-7939 Outgoing Call to Seattle, WA
3) 10/03: 11:32 am; 206-228-0420 Outgoing Call to Seattle, WA
4) 10/03: 1:53 pm; 206-281-7939 Outgoing Call to Seattle, WA
5) 10/14: 11:02 am; 206-281-7939 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-1647 Outgoing Calls

October 1, 2003 to October 31, 2003

1) 9/30: 11:03 am; 206-228-7939 Outgoing Call to Seattle, WA
2) 9/30: 1:16 pm; 206-281-7939 Outgoing Call to Seattle, WA
3) 9/30: 2:17 pm; 206-281-7939 Outgoing Call to Seattle, WA
4) 9/30: 4:53 pm; 206-228-0420 Outgoing Call to Seattle, WA
5) 10/02: 10:03 am; 206-228-0420 Outgoing Call to Seattle, WA
6) 10/02: 1:40 pm; 206-281-7939 Outgoing Call to Seattle, WA
7) 10/03: 12:31 pm; 206-281-7939 Outgoing Call to Seattle, WA
8) 10/03: 1:49 pm; 206-281-7939 Outgoing Call to Seattle, WA
9) 10/06: 10:22 am; 206-281-7939 Outgoing Call to Seattle, WA
10) 10/06: 2:55 pm; 206-281-7939 Outgoing Call to Seattle, WA
11) 10/07: 2:44 pm; 206-228-0420 Outgoing Call to Seattle, WA
12) 10/07: 3:36 pm; 206-228-0420 Outgoing Call to Seattle, WA
13) 10/08: 1:52 pm; 206-228-0420 Outgoing Call to Seattle, WA
14) 10/09: 12:43 pm; 206-281-7939 Outgoing Call to Seattle, WA
15) 10/10: 10:48 am; 206-281-7939 Outgoing Call to Seattle, WA
16) 10/13: 9:35 am; 206-281-7939 Outgoing Call to Seattle, WA
17) 10/15: 4:50 pm; 206-228-0420 Outgoing Call to Seattle, WA
18) 10/23: 11:02 am; 206-228-0420 Outgoing Call to Seattle, WA
19) 10/23: 11:03 am; 206-281-7939 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-1648 Outgoing Calls

October 1, 2003 to October 31, 2003

1) 9/30: 1:26 pm; 206-281-7939 Outgoing Call to Seattle, WA
2) 9/30: 1:47 pm; 206-281-7939 Outgoing Call to Seattle, WA
3) 9/30: 1:57 pm; 206-281-7939 Outgoing Call to Seattle, WA
4) 9/30: 3:36 pm; 206-281-7939 Outgoing Call to Seattle, WA
PE 5) 9/30: 5:33pm; 425-445-1894 Outgoing Call to Bellevue, WA
6) 10/01: 10:48 am; 206-281-7939 Outgoing Call to Seattle, WA

7) 10/01: 1:09 pm; 206-281-7939 Outgoing Call to Seattle, WA
PE 8) 10/02: 4:01pm; 425-445-1894 Outgoing Call to Bellevue, WA
9) 10/03: 9:56 am; 206-281-7939 Outgoing Call to Seattle, WA
10) 10/03: 12:34 pm; 206-281-7939 Outgoing Call to Seattle, WA
11) 10/03: 3:58 pm; 206-281-7939 Outgoing Call to Seattle, WA
12) 10/06: 8:55 am; 206-281-7939 Outgoing Call to Seattle, WA
13) 10/06: 5:07 pm; 206-281-7939 Outgoing Call to Seattle, WA
14) 10/06: 5:51 pm; 206-228-0420 Outgoing Call to Seattle, WA
15) 10/06: 6:04 pm; 206-228-0420 Outgoing Call to Seattle, WA
16) 10/07: 11:45 am; 206-281-7939 Outgoing Call to Seattle, WA
17) 10/07: 1:56 pm; 206-228-0420 Outgoing Call to Seattle, WA
18) 10/07: 3:41 pm; 206-228-0420 Outgoing Call to Seattle, WA
19) 10/07: 6:55 pm; 206-281-7939 Outgoing Call to Seattle, WA
20) 10/08: 9:41 am; 206-281-7939 Outgoing Call to Seattle, WA
21) 10/08: 910:41 am; 206-281-7939 Outgoing Call to Seattle, WA
22) 10/09: 1:48 pm; 206-281-7939 Outgoing Call to Seattle, WA
23) 10/09: 4:07 pm; 206-281-7939 Outgoing Call to Seattle, WA
24) 10/10: 1:49 pm; 206-281-7939 Outgoing Call to Seattle, WA
25) 10/13: 10:05 am; 206-281-7939 Outgoing Call to Seattle, WA
26) 10/14: 4:25 pm; 206-281-7939 Outgoing Call to Seattle, WA
27) 10/15: 9:49 am; 206-281-7939 Outgoing Call to Seattle, WA
28) 10/15: 9:50 am; 206-228-0420 Outgoing Call to Seattle, WA
PE 29) 10/15: 12:36 pm; 425-445-1894 Outgoing Call to Bellevue, WA
30) 10/22: 3:03 pm; 206-228-0420 Outgoing Call to Seattle, WA
31) 10/23: 8:47 am; 206-281-7939 Outgoing Call to Seattle, WA
32) 10/23: 9:35 am; 206-281-7939 Outgoing Call to Seattle, WA
33) 10/23: 2:06 pm; 206-281-7939 Outgoing Call to Seattle, WA
34) 10/24: 11:15 am; 206-281-7939 Outgoing Call to Seattle, WA
35) 10/24: 11:33 am; 206-281-7939 Outgoing Call to Seattle, WA
36) 10/27: 1:40 pm; 509-376-0360 Outgoing Call to Richland, WA
37) 10/28: 10:44 am; 206-431-3741 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-1701 Outgoing Calls

October 1, 2003 to October 31, 2003

PE 1) 10/28: 6:19 pm; 425-445-1894 Outgoing Call to Bellevue, WA
2) 10/31: 3:16 pm; 206-228-0420 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-1705 Outgoing Calls

October 1, 2003 to October 31, 2003

1) 10/22: 10:14 am; 206-281-7939 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-1706 Outgoing Calls

October 1, 2003 to October 31, 2003

PE 1)  9/30: 12:23 pm; 425-445-1894 Outgoing Call to Bellevue, WA
  2)  10/06: 9:44 am; 206-281-7939 Outgoing Call to Seattle, WA
  3)  10/28: 2:17 pm; 509-376-0360 Outgoing Call to Richland, WA
  4)  10/28: 3:03 pm; 509-376-0360 Outgoing Call to Richland, WA

Verizon Telephone # 212-269-1890 Outgoing Calls

October 1, 2003 to October 31, 2003

  1)  10/17: 10:35 am; 206-281-7939 Outgoing Call to Seattle, WA
  2)  10/17: 10:54 am; 206-281-7939 Outgoing Call to Seattle, WA
  3)  10/17: 11:18 am; 206-281-7939 Outgoing Call to Seattle, WA
  4)  10/17: 11:59 am; 206-281-7939 Outgoing Call to Seattle, WA
  5)  10/17: 12:02 pm; 206-281-7939 Outgoing Call to Seattle, WA
  6)  10/17: 12:08 pm; 206-281-7939 Outgoing Call to Seattle, WA
  7)  10/17: 12:31pm; 206-281-7939 Outgoing Call to Seattle, WA
  8)  10/17: 12:43 pm; 206-281-7939 Outgoing Call to Seattle, WA
  9)  10/17: 1:06 pm; 206-281-7939 Outgoing Call to Seattle, WA
  10) 10/17: 1:24 pm; 206-281-7939 Outgoing Call to Seattle, WA
  11) 10/17: 2:19 pm; 206-281-7939 Outgoing Call to Seattle, WA
  12) 10/17: 2:36 pm; 206-281-7939 Outgoing Call to Seattle, WA
  13) 10/17: 2:44 pm; 206-281-7939 Outgoing Call to Seattle, WA
  14) 10/17: 3:24 pm; 206-281-7939 Outgoing Call to Seattle, WA
  15) 10/17: 3:50 pm; 206-281-7939 Outgoing Call to Seattle, WA
  16) 10/17: 3:53 pm; 206-281-7939 Outgoing Call to Seattle, WA
  17) 10/17: 4:07 pm; 206-281-7939 Outgoing Call to Seattle, WA
  18) 10/17: 4:13 pm; 206-281-7939 Outgoing Call to Seattle, WA
  19) 10/17: 4:26 pm; 206-281-7939 Outgoing Call to Seattle, WA
  20) 10/17: 4:30 pm; 206-281-7939 Outgoing Call to Seattle, WA
  21) 10/17: 4:46 pm; 206-281-7939 Outgoing Call to Seattle, WA
  22) 10/17: 5:04 pm; 206-281-7939 Outgoing Call to Seattle, WA
  23) 10/17: 5:05 pm; 206-281-7939 Outgoing Call to Seattle, WA
  24) 10/17: 5:06 pm; 206-281-7939 Outgoing Call to Seattle, WA
  25) 10/17: 5:23 pm; 206-281-7939 Outgoing Call to Seattle, WA
  26) 10/18: 3:44 pm; 206-281-7939 Outgoing Call to Seattle, WA
  27) 10/20: 8:24 am; 206-281-7939 Outgoing Call to Seattle, WA
  28) 10/20: 8:56 am; 206-281-7939 Outgoing Call to Seattle, WA
  29) 10/20: 9:40 am; 206-281-7939 Outgoing Call to Seattle, WA
  30) 10/20: 9:59 am; 206-281-7939 Outgoing Call to Seattle, WA
  31) 10/20: 10:01 am; 206-281-7939 Outgoing Call to Seattle, WA
  32) 10/20: 10:03 am; 206-281-7939 Outgoing Call to Seattle, WA
  33) 10/20: 10:47 am; 206-281-7939 Outgoing Call to Seattle, WA
  34) 10/20: 11:04 am; 206-281-7939 Outgoing Call to Seattle, WA

35) 10/20: 11:16 am; 206-281-7939 Outgoing Call to Seattle, WA
36) 10/20: 11:21 am; 206-281-7939 Outgoing Call to Seattle, WA
37) 10/20: 11:24 am; 206-281-7939 Outgoing Call to Seattle, WA
38) 10/20: 12:01 pm; 206-281-7939 Outgoing Call to Seattle, WA
39) 10/20: 12:26 pm; 206-281-7939 Outgoing Call to Seattle, WA
40) 10/20: 12:42 pm; 206-281-7939 Outgoing Call to Seattle, WA
41) 10/20: 12:46 pm; 206-281-7939 Outgoing Call to Seattle, WA
42) 10/20: 1:04 pm; 206-281-7939 Outgoing Call to Seattle, WA
43) 10/20: 1:15 pm; 206-281-7939 Outgoing Call to Seattle, WA
44) 10/20: 1:19 pm; 206-281-7939 Outgoing Call to Seattle, WA
45) 10/20: 1:31 pm; 206-281-7939 Outgoing Call to Seattle, WA
46) 10/20: 2:01 pm; 206-281-7939 Outgoing Call to Seattle, WA
47) 10/20: 2:45 pm; 206-281-7939 Outgoing Call to Seattle, WA
48) 10/20: 3:43 pm; 206-281-7939 Outgoing Call to Seattle, WA
49) 10/20: 4:44 pm; 206-281-7939 Outgoing Call to Seattle, WA
50) 10/20: 4:47 pm; 206-281-7939 Outgoing Call to Seattle, WA
51) 10/20: 7:43 pm; 206-281-7939 Outgoing Call to Seattle, WA
52) 10/20: 11:05 pm; 206-281-7939 Outgoing Call to Seattle, WA
53) 10/24: 1:05 pm; 206-228-0420 Outgoing Call to Seattle, WA
54) 10/28: 12:47 pm; 425-462-4700 Outgoing Call to Bellevue, WA
55) 10/31: 11:16 am; 425-462-4700 Outgoing Call to Bellevue, WA
56) 10/31: 3:15 pm; 206-281-7939 Outgoing Call to Seattle, WA


Verizon Telephone # 212-269-1891 Outgoing Calls

October 1, 2003 to October 31, 2003

1)  10/01: 11:31 am; 206-281-7939 Outgoing Call to Seattle, WA
2)  10/01: 11:33 am; 206-281-7939 Outgoing Call to Seattle, WA


Verizon Telephone # 212-269-2412 Outgoing Calls

October 1, 2003 to October 31, 2003

1)  10/29: 4:06 pm; 509-376-0360 Outgoing Call to Richland, WA
2)  10/31: 12:31 pm; 206-228-0420 Outgoing Call to Seattle, WA
3)  10/31: 3:49 pm; 206-228-0420 Outgoing Call to Seattle, WA


Verizon Telephone # 212-269-2578 Outgoing Calls

October 1, 2003 to October 31, 2003

PE (s) 1)  10/27: 5:10 pm; 425-369-0471 Outgoing Call to Issaquah, WA

2) 10/27: 6:01 pm; 206-778-1316 Outgoing Call to Seattle, WA

### Verizon Telephone # 212-269-1702 Outgoing Calls

November 1, 2003 to November 30, 2003

PE (s) 1) 11/03: 4:23 pm; 425-369-0471 Outgoing Call to Issaquah, WA
2) 11/06: 6:36 pm; 206-281-7939 Outgoing Call to Seattle, WA
3) 11/14: 1:55 pm; 206-228-0420 Outgoing Call to Seattle, WA

### Verizon Telephone # 212-269-1703 Outgoing Calls

November 1, 2003 to November 30, 2003

1) 11/13: 4:31 pm; 206-228-0420 Outgoing Call to Seattle, WA

### Verizon Telephone # 212-269-2411 Outgoing Calls

November 1, 2003 to November 30, 2003

1) 11/03: 1:49 pm; 206-228-0420 Outgoing Call to Seattle, WA
2) 11/03: 4:01 pm; 206-228-0420 Outgoing Call to Seattle, WA
PE (s) 3) 11/03: 4:20 pm; 425-369-0471 Outgoing Call to Issaquah, WA
4) 11/04: 4:57 pm; 206-228-0420 Outgoing Call to Seattle, WA
5) 11/05: 9:42 am; 206-281-7939 Outgoing Call to Seattle, WA
6) 11/05: 11:22 am; 206-281-7939 Outgoing Call to Seattle, WA
7) 11/05: 12:07 pm; 206-281-7939 Outgoing Call to Seattle, WA
8) 11/05: 1:21 pm; 206-228-0420 Outgoing Call to Seattle, WA
9) 11/05: 2:14 pm; 206-281-7939 Outgoing Call to Seattle, WA
10) 11/05: 4:27 pm; 206-228-0420 Outgoing Call to Seattle, WA
11) 11/05: 4:31 pm; 206-228-0420 Outgoing Call to Seattle, WA
12) 11/05: 5:32 pm; 206-228-0420 Outgoing Call to Seattle, WA
13) 11/05: 5:35 pm; 206-228-0420 Outgoing Call to Seattle, WA
14) 11/05: 6:18 pm; 206-228-0420 Outgoing Call to Seattle, WA
15) 11/05: 7:18 pm; 206-281-7939 Outgoing Call to Seattle, WA
16) 11/06: 10:24 am; 206-281-7939 Outgoing Call to Seattle, WA
17) 11/06: 1:41 pm; 206-281-7939 Outgoing Call to Seattle, WA
18) 11/06: 3:00 pm; 206-281-7939 Outgoing Call to Seattle, WA
19) 11/06: 3:17 pm; 206-281-7939 Outgoing Call to Seattle, WA
20) 11/06: 3:39 pm; 206-228-0420 Outgoing Call to Seattle, WA
21) 11/06: 4:26 pm; 206-281-7939 Outgoing Call to Seattle, WA
22) 11/06: 4:32 pm; 206-281-7939 Outgoing Call to Seattle, WA
23) 11/07: 11:22 am; 206-228-0420 Outgoing Call to Seattle, WA
24) 11/07: 11:30 am; 206-228-0420 Outgoing Call to Seattle, WA

25) 11/07: 1:12 pm; 206-281-7939 Outgoing Call to Seattle, WA
26) 11/07: 2:11 pm; 206-281-7939 Outgoing Call to Seattle, WA
27) 11/07: 4:50 am; 206-228-0420 Outgoing Call to Seattle, WA
28) 11/13: 12:33 pm; 206-281-7939 Outgoing Call to Seattle, WA
29) 11/13: 3:44 pm; 206-228-0420 Outgoing Call to Seattle, WA
30) 11/13: 3:48 pm; 206-228-0420 Outgoing Call to Seattle, WA
31) 11/13: 3:54 pm; 206-228-0420 Outgoing Call to Seattle, WA
32) 11/13: 4:11 pm; 206-228-0420 Outgoing Call to Seattle, WA
33) 11/14: 12:09 pm; 206-281-7939 Outgoing Call to Seattle, WA
34) 11/17: 11:00 am; 206-461-0800 Outgoing Call to Seattle, WA
35) 11/18: 8:44 am; 206-228-0420 Outgoing Call to Seattle, WA
PE 36) 11/18: 4:50 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 37) 11/18: 4:53 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 38) 11/18: 4:54 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 39) 11/18: 4:59 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 40) 11/19: 8:14 am; 425-445-1894 Outgoing Call to Bellevue, WA
PE 41) 11/19: 8:47 am; 425-445-1894 Outgoing Call to Bellevue, WA
PE 42) 11/19: 11:04 am; 425-445-1894 Outgoing Call to Bellevue, WA
PE 43) 11/19: 11:29 am; 425-445-1894 Outgoing Call to Bellevue, WA
PE (s) 44) 11/19: 11:56 am; 425-369-0471 Outgoing Call to Issaquah, WA
PE 45) 11/19: 3:41 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 46) 11/19: 4:49 pm; 425-445-1894 Outgoing Call to Bellevue, WA
47) 11/20: 11:40 am; 206-892-6502 Outgoing Call to Seattle, WA
48) 11/20: 1:55 pm; 206-228-0420 Outgoing Call to Seattle, WA
49) 11/20: 3:16 pm; 206-778-1316 Outgoing Call to Seattle, WA
50) 11/20: 4:14 pm; 206-778-1316 Outgoing Call to Seattle, WA
51) 11/21: 10:46 am; 206-282-3155 Outgoing Call to Seattle, WA
52) 11/21: 2:48 pm; 206-464-3061 Outgoing Call to Seattle, WA
53) 11/23: 2:25 pm; 206-778-1316 Outgoing Call to Seattle, WA
54) 11/24: 10:50 am; 206-228-0420 Outgoing Call to Seattle, WA
55) 11/24: 10:51 am; 206-281-7939 Outgoing Call to Seattle, WA
56) 11/24: 12:55 pm; 206-281-7939 Outgoing Call to Seattle, WA
57) 11/24: 5:30 pm; 206-281-7939 Outgoing Call to Seattle, WA
58) 11/24: 5:52 pm; 206-281-7939 Outgoing Call to Seattle, WA
59) 11/25: 12:42 pm; 206-281-7939 Outgoing Call to Seattle, WA
60) 11/25: 4:30 pm; 206-281-7939 Outgoing Call to Seattle, WA
61) 11/25: 4:42 pm; 206-228-0420 Outgoing Call to Seattle, WA

### Verizon Telephone # 212-269-2412 Outgoing Calls

November 1, 2003 to November 30, 2003

1) 11/03: 11:40 am; 206-281-7939 Outgoing Call to Seattle, WA
PE 2) 11/03: 12:49 pm; 425-445-1894 Outgoing Call to Bellevue, WA
PE 3) 11/03: 12:52 pm; 425-445-1894 Outgoing Call to Bellevue, WA
4) 11/03: 4:02 pm; 206-281-7939 Outgoing Call to Seattle, WA

5) 11/04: 5:16 pm; 206-228-0420 Outgoing Call to Seattle, WA
6) 11/04: 5:44 pm; 206-281-7939 Outgoing Call to Seattle, WA
7) 11/05: 10:30 am; 206-281-7939 Outgoing Call to Seattle, WA
8) 11/05: 11:56 am; 206-281-7939 Outgoing Call to Seattle, WA
9) 11/06: 11:26 am; 206-281-7939 Outgoing Call to Seattle, WA
10) 11/07: 12:29 pm; 206-281-7939 Outgoing Call to Seattle, WA
11) 11/12: 8:27 am; 206-228-0420 Outgoing Call to Seattle, WA
12) 11/12: 2:24 pm; 206-228-0420 Outgoing Call to Seattle, WA
13) 11/13: 12:34 pm; 206-228-0420 Outgoing Call to Seattle, WA
14) 11/13: 1:03 pm; 206-281-7939 Outgoing Call to Seattle, WA
15) 11/14: 1:49 pm; 206-228-0420 Outgoing Call to Seattle, WA
16) 11/14: 4:04 pm; 206-281-7939 Outgoing Call to Seattle, WA
17) 11/24: 1:29 pm; 206-281-7939 Outgoing Call to Seattle, WA
18) 11/24: 2:40 pm; 206-281-7939 Outgoing Call to Seattle, WA
19) 11/25: 12:55 pm; 206-281-7939 Outgoing Call to Seattle, WA
20) 11/25: 4:31 pm; 206-228-0420 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-2578 Outgoing Calls

November 1, 2003 to November 30, 2003

1) 11/03: 4:31 pm; 206-778-1316 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-1702 Outgoing Calls

December 1, 2003 to December 31, 2003

1) 12/01: 2:33 pm; 206-281-7939 Outgoing Call to Seattle, WA
2) 12/02: 12:43 pm; 206-281-7939 Outgoing Call to Seattle, WA
3) 12/02: 2:10 pm; 206-281-7939 Outgoing Call to Seattle, WA
4) 12/04: 2:34 pm; 206-281-7939 Outgoing Call to Seattle, WA
5) 12/11: 2:29 pm; 206-281-7939 Outgoing Call to Seattle, WA
6) 12/11: 4:35 pm; 206-281-7939 Outgoing Call to Seattle, WA
7) 12/12: 1:14 pm; 206-281-7939 Outgoing Call to Seattle, WA
8) 12/26: 1:51 pm; 206-281-7939 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-1891 Outgoing Calls

December 1, 2003 to December 31, 2003

1) 12/15: 2:50 pm; 206-281-7939 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-2411 Outgoing Calls

December 1, 2003 to December 31, 2003

1)  12/02: 2:06 pm; 206-281-7939 Outgoing Call to Seattle, WA
2)  12/02: 2:07 pm; 206-281-7939 Outgoing Call to Seattle, WA
3)  12/02: 2:36 pm; 206-281-7939 Outgoing Call to Seattle, WA
4)  12/03: 3:16 pm; 206-281-7939 Outgoing Call to Seattle, WA
5)  12/03: 4:45 pm; 206-281-7939 Outgoing Call to Seattle, WA
6)  12/03: 7:52 pm; 206-281-7939 Outgoing Call to Seattle, WA
7)  12/04: 1:33 pm; 206-228-0420 Outgoing Call to Seattle, WA
8)  12/04: 1:37 pm; 206-281-7939 Outgoing Call to Seattle, WA
9)  12/04: 1:37 pm; 206-228-0420 Outgoing Call to Seattle, WA
10) 12/04: 1:358 pm; 206-228-0420 Outgoing Call to Seattle, WA
11) 12/04: 2:02 pm; 206-281-7939 Outgoing Call to Seattle, WA
12) 12/04: 2:10 pm; 206-281-7939 Outgoing Call to Seattle, WA
13) 12/04: 3:40 pm; 206-281-7939 Outgoing Call to Seattle, WA
14) 12/04: 5:52 pm; 206-281-7939 Outgoing Call to Seattle, WA
15) 12/05: 12:14 pm; 206-281-7939 Outgoing Call to Seattle, WA
16) 12/05: 1:58 pm; 206-281-7939 Outgoing Call to Seattle, WA
17) 12/05: 4:20 pm; 206-228-0420 Outgoing Call to Seattle, WA
18) 12/05: 4:38 pm; 206-281-7939 Outgoing Call to Seattle, WA
19) 12/08: 3:02 pm; 425-451-8430 Outgoing Call to Bellevue, WA
20) 12/08: 5:36 pm; 206-281-7939 Outgoing Call to Seattle, WA
21) 12/09: 1:26 pm; 206-281-7939 Outgoing Call to Seattle, WA
22) 12/09: 3:21 pm; 206-281-7939 Outgoing Call to Seattle, WA
23) 12/09: 4:24 pm; 206-281-7939 Outgoing Call to Seattle, WA
24) 12/10: 10:55 am; 206-281-7939 Outgoing Call to Seattle, WA
25) 12/10: 3:40 pm; 206-281-7939 Outgoing Call to Seattle, WA
26) 12/11: 3:40 pm; 206-281-7939 Outgoing Call to Seattle, WA
27) 12/11: 5:10 pm; 206-281-7939 Outgoing Call to Seattle, WA
28) 12/15: 12:32 pm; 206-281-7939 Outgoing Call to Seattle, WA
29) 12/17: 12:08 pm; 206-281-7939 Outgoing Call to Seattle, WA
30) 12/17: 12:28 pm; 206-281-7939 Outgoing Call to Seattle, WA
31) 12/18: 11:17 am; 206-281-7939 Outgoing Call to Seattle, WA
32) 12/18: 12:11 pm; 206-281-7939 Outgoing Call to Seattle, WA
33) 12/18: 12:25 pm; 206-281-7939 Outgoing Call to Seattle, WA
34) 12/18: 1:38 pm; 206-281-7939 Outgoing Call to Seattle, WA
35) 12/18: 1:58 pm; 206-281-7939 Outgoing Call to Seattle, WA
36) 12/18: 3:05 pm; 206-281-7939 Outgoing Call to Seattle, WA
37) 12/18: 6:07 pm; 206-281-7939 Outgoing Call to Seattle, WA
38) 12/18: 6:38 pm; 206-281-7939 Outgoing Call to Seattle, WA
39) 12/19: 10:49 am; 206-281-7939 Outgoing Call to Seattle, WA
40) 12/19: 1:20 pm; 206-281-7939 Outgoing Call to Seattle, WA
41) 12/19: 1:42 pm; 206-281-7939 Outgoing Call to Seattle, WA
42) 12/19: 3:00 pm; 206-281-7939 Outgoing Call to Seattle, WA
43) 12/19: 3:23 pm; 206-281-7939 Outgoing Call to Seattle, WA
44) 12/19: 4:49 pm; 206-281-7939 Outgoing Call to Seattle, WA

45) 12/22: 11:56 am; 206-281-7939 Outgoing Call to Seattle, WA
46) 12/22: 12:07 pm; 206-281-7939 Outgoing Call to Seattle, WA
47) 12/22: 12:10 pm; 206-281-7939 Outgoing Call to Seattle, WA
PE 48) 12/23: 11:25 am; 425-445-1894 Outgoing Call to Bellevue, WA
PE 49) 12/23: 11:29 am; 425-445-1894 Outgoing Call to Bellevue, WA
50) 12/23: 3:13 pm; 206-281-7939 Outgoing Call to Seattle, WA
51) 12/26: 11:50 am; 206-281-7939 Outgoing Call to Seattle, WA
52) 12/26: 1:28 pm; 206-281-7939 Outgoing Call to Seattle, WA
53) 12/26: 1:51 pm; 206-281-7939 Outgoing Call to Seattle, WA
54) 12/26: 2:25 pm; 206-281-7939 Outgoing Call to Seattle, WA
55) 12/26: 2:51 pm; 206-281-7939 Outgoing Call to Seattle, WA
56) 12/26: 3:35 pm; 206-281-7939 Outgoing Call to Seattle, WA
57) 12/26: 4:00 pm; 206-281-7939 Outgoing Call to Seattle, WA
58) 12/26: 4:23 pm; 206-228-0420 Outgoing Call to Seattle, WA
59) 12/26: 5:08 pm; 206-281-7939 Outgoing Call to Seattle, WA
60) 12/26: 5:31 pm; 206-281-7939 Outgoing Call to Seattle, WA
61) 12/29: 2:16 pm; 206-281-7939 Outgoing Call to Seattle, WA
62) 12/29: 3:12 pm; 206-281-7939 Outgoing Call to Seattle, WA
63) 12/29: 3:13 pm; 206-228-0420 Outgoing Call to Seattle, WA
64) 12/29: 4:38 pm; 206-281-7939 Outgoing Call to Seattle, WA
65) 12/29: 4:48 pm; 206-281-7939 Outgoing Call to Seattle, WA
66) 12/29: 5:11 pm; 206-281-7939 Outgoing Call to Seattle, WA
PE 67) 12/31: 11:44 am; 425-445-1894 Outgoing Call to Bellevue, WA

Verizon Telephone # 212-269-2412 Outgoing Calls

December 1, 2003 to December 31, 2003

1) 12/01: 12:11 pm; 206-281-7939 Outgoing Call to Seattle, WA
2) 12/01: 12:24 pm; 206-228-0420 Outgoing Call to Seattle, WA
3) 12/01: 3:33 pm; 206-281-7939 Outgoing Call to Seattle, WA
4) 12/03: 12:53 pm; 206-281-7939 Outgoing Call to Seattle, WA
5) 12/04: 2:00 pm; 206-281-7939 Outgoing Call to Seattle, WA
6) 12/04: 2:42 pm; 206-228-0420 Outgoing Call to Seattle, WA
7) 12/04: 3:30 pm; 206-281-7939 Outgoing Call to Seattle, WA
8) 12/05: 5:16 pm; 206-228-0420 Outgoing Call to Seattle, WA
9) 12/08: 2:38 pm; 206-281-7939 Outgoing Call to Seattle, WA
10) 12/09: 10:48 am; 206-281-7939 Outgoing Call to Seattle, WA
11) 12/10: 4:19 pm; 206-281-7939 Outgoing Call to Seattle, WA
12) 12/15: 2:48 pm; 206-281-7939 Outgoing Call to Seattle, WA
13) 12/16: 5:10 pm; 206-281-7939 Outgoing Call to Seattle, WA
14) 12/19: 1:53 pm; 206-281-7939 Outgoing Call to Seattle, WA
15) 12/22: 1:04 pm; 206-281-7939 Outgoing Call to Seattle, WA
16) 12/23: 9:31 am; 206-281-7939 Outgoing Call to Seattle, WA
17) 12/23: 11:45 am; 425-373-0606 Outgoing Call to Bellevue, WA
PE 18) 12/23: 11:47 am; 425-445-1894 Outgoing Call to Bellevue, WA

19) 12/23: 1:12 pm; 206-281-7939 Outgoing Call to Seattle, WA
20) 12/26: 10:43 am; 206-281-7939 Outgoing Call to Seattle, WA
21) 12/26: 2:00 pm; 206-281-7939 Outgoing Call to Seattle, WA
22) 12/26: 2:14 pm; 206-281-7939 Outgoing Call to Seattle, WA
23) 12/26: 4:25 pm; 206-281-7939 Outgoing Call to Seattle, WA

Verizon Telephone # 212-269-2579 Outgoing Calls

December 1, 2003 to December 31, 2003

1)  12/18: 2:43 pm; 206-228-0420 Outgoing Call to Seattle, WA
2)  12/30: 11:28 am; 206-281-7939 Outgoing Call to Seattle, WA

**Exhibit I**

# LINUXOR OPEN POSITIONS
## STMT. DATE: 12/31/02

| Date / Label | LONG | SHORT | DESCRIPTION | STATUS | PRICE | DEBIT | CREDIT |
|---|---|---|---|---|---|---|---|
| 12/31/02 | 100 | | PUT FEB. '03 CBT T-BONDS 112 | | 54/64 | 114,063.00 | |
| 12/31/02 | 50 | | PUT FEB. '03 CBT T-BONDS 112 | | 54/64 | 57,031.50 | |
| 12/31/02 | 500 | | PUT FEB. '03 CBT T-BONDS 112 | | 56/64 | 570,315.00 | |
| 12/31/02 | 50 | | PUT FEB. '03 CBT T-BONDS 112 | | 58/64 | 57,031.50 | |
| SUBTOTAL | 700 | | | | 1 9/64 | 798,441.00 | |
| **LINUXOR CLOSES STMT. DATE: 1/02/03** | | 700 | **PUT FEB.'03 CBT T-BONDS 112** | | **1 16/64** | | |
| 12/30/02 | 25 | | MAR. '03 CBT T-BONDS | | 113-08 | 14,062.50 | |
| 12/30/02 | 25 | | MAR. '03 CBT T-BONDS | | 112-22 | 14,062.50 | |
| SUBTOTAL | | | | | | | |
| 12/05/02 | 25 | | MAR.'03 CBT T-NOTE 10YR. | | 115-07 | 4,296.75 | |
| 12/05/02 | 25 | | MAR.'03 CBT T-NOTE 10YR. | | 115-01.5 | 4,296.75 | |
| SUBTOTAL | | | | | | | |
| | | 300 | CALL MAR. '03 CBT T-NOTE 10YR. 117 | | 14/64 | 187,500.00 | |
| | | 200 | CALL MAR. '03 CBT T-NOTE 10YR. 117 | | 15/64 | 125,000.00 | |
| SUBTOTAL | | 500 | CALL MAR. '03 CBT T-NOTE 10YR. 117 | | 40/64 | 312,500.00 | |
| **LINUXOR CLOSES STMT. DATE: 1/02/03** | | 500 | **CALL MAR. '03 CBT T-NOTE 10YR. 117** | | **18/64** | | |
| 12/05/02 | | 500 | PUT MAR. '03 CBT T-NOTE 10YR. 107 | CLOSE | 27/64 | | 31,250.00 |
| SUBTOTAL | | 500 | **PUT MAR. '03 CBT T-NOTE 10YR. 107** | | **27/64** | | 31,250.00 |
| **LINUXOR CLOSES STMT. DATE: 2/24/03 expired** | | | | | | | |
| 12/31/02 | | 50 | PUT JAN. '03 IMM EURO FX | CLOSE | .0320 | 18,125.00 | |
| | | 50 | PUT JAN. '03 IMM EURO FX | CLOSE | .0290 | 18,125.00 | |
| SUBTOTAL | | | | | | | |

| | LONG | SHORT | DESCRIPTION | STATUS | PRICE | DEBIT | CREDIT |
|---|---|---|---|---|---|---|---|
| 12/30/02 | 100 | | PUT FEB. '03 IMM EURO FX | CLOSE | .1300 | 135,000.00 | |
| | 100 | | | CLOSE | .1080 | 135,000.00 | |
| SUBTOTAL | | | | | | | |
| 12/02/02 | 150 | | PUT JAN. '03 IMM JYEN | CLOSE | .680 CABINET | | 937.50 |
| | 150 | | | | | | 937.50 |
| SUBTOTAL | | | | | | | |
| 12/05/02 | 100 | | PUT FEB. '03 IMM JYEN | CLOSE | .880 | | 7,500.00 |
| | 100 | | | CLOSE | .060 | | 7,500.00 |
| SUBTOTAL | | | | | | | |
| (STMT. DATE: 12/31/02) | | | | | | | |
| 12/06/02 | 10 | 100 | CALL JAN. '03 IMM S&P 500 | CLOSE | 14.80 | | 2,250.00 |
| 12/06/02 | 90 | | CALL JAN. '03 IMM S&P 500 | CLOSE | 15.00 | | 20,250.00 |
| SUBTOTAL | 100 | | | | .90 | | 22,500.00 |
| 12/30/02 | 5 | 5 | MAR. '03 IMM S&P 500 | CLOSE | 881.00 | | 2,625.00 |
| SUBTOTAL | 5 | 5 | | CLOSE | 878.90 | | 2,625.00 |
| 12/27/02 | | 5 | MAR. '03 TSE 10YR. JGB | YEN CLOSE | 142.01 | 250,000.00 | |
| SUBTOTAL | | 5 | | CLOSE | 142.06 | 250,000.00 | |
| 11/19/02 | 500 | | CALL MAR. '03 LIF EURIBR  97500 | EUR CLOSE | .040 | | 18,750.00 |
| SUBTOTAL | 500 | | | CLOSE | .055 | | 18,750.00 |
| LINUXOR CLOSES STMT. DATE: 1/03/03 | | 500 | CALL MAR. '03 LIF 3M EURIBR  97500 | EUR CLOSE | .40 | | |

**Exhibit J**

1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF NEW YORK

3     ------------------------------------------------------------

4     COMMODITY FUTURES TRADING              )        ORIGINAL

5     COMMISSION,                            )

6                    Plaintiff,              )

7         vs.                                )    No. 05-CV-8091

8     ABBAS A. SHAH and LINUXOR ASSET )

9     MANAGEMENT LLC,                        )

10                   Defendants.             )

11    ------------------------------------------------------------

12              Deposition Upon Oral Examination Of

13                        PHILLIP EGGER

14    ------------------------------------------------------------

15                     11:16 o'clock a.m.

16                 Tuesday, November 7, 2006

17               600 University Street, Suite 1601

18                    Seattle, Washington

19

20

21

22

23

24    REPORTED BY:  Michelle E. Diskin, RPR

25                  CSR 2657

DATE FILED:  November 13, 2006


        EDWARD A. WHITE, ESQ.
        Hartman & Craven
        488 Madison Avenue
        New York, New York   10022

        **NOTICE RE FILING OF ORIGINAL DEPOSITION**
        **SIGNATURE WAIVED**

        **Case Name:    CFTC v. SHAH**
        **Venue:         USDC/SOUTHERN DISTRICT/NEW YORK**
        **Cause No.:     05-CV-8091**
        **Witness:       PHILLIP EGGER**
        **Taken:         November 7, 2006**


        Enclosed is the original sealed transcript
        of PHILLIP EGGER.

        Signature was waived.

                        MICHELLE E. DISKIN, RPR


cc:  File
     DAVID ACEVEDO, ESQ.
     MICHAEL D. McKAY, ESQ.

DEPONENT:   PHILLIP EGGER, 11/7/06

1  Egger testified that he knew that Mr. McCarthey

2  initially did invest one and a half million dollars.

3              MR. WHITE:   Okay.   That's fine.

4       Q.   Were you aware that Mr. McCarthey put a

5  million and a half dollars into the Linuxor Fund?

6       A.   I don't know that it was a million-five,

7  but I was generally aware that an amount was put in in

8  that range, to the best of my recollection.

9       Q.   At some point were you asked to arrange for

10  or do due diligence on the Linuxor Fund in early

11  2002?

12       A.   Asked by who?

13       Q.   By Phil McCarthey or by anyone acting for

14  him.

15       A.   I don't recall.

16       Q.   Do you know who Martin Oring is?

17       A.   I do.

18       Q.   How did Mr. Oring become involved in this

19  transaction between Mr. McCarthey and the Linuxor

20  Fund?

21       A.   I asked Marty to take a quick look at Abbas

22  Shah, see if he is generally who he says he is.

23       Q.   But is that before Mr. McCarthey invested

24  the additional $10 million?

25       A.   I don't recall.

DEPONENT:   PHILLIP EGGER, 11/7/06

1    Q.   Well, did you ever discuss this email with

2    Phil McCarthey?

3    A.   I don't recall.

4    Q.   Do you recall ever discussing with Mr.

5    McCarthey in or around August 15th, 2002, the fact

6    that there were large losses in Linuxor Fund?

7    A.   I don't recall.

8    Q.   Well, as of the time you wrote this email,

9    what did you believe the status of the Linuxor Fund

10   was?

11   A.   I think it's set forth in the email for the

12   most part.  Whatever the call was, I was trying to

13   send an email that mirrored what I was told.

14   Q.   You told us the other day that Mr. Shah had

15   said that he had suffered a $3 million loss in one

16   position.  Do you recall that?

17   A.   I do.

18   Q.   Do you recall whether he mentioned any

19   percentage amount for the account?

20   A.   I don't.

21   Q.   Do you recall, did you ask him whether there

22   were any other positions that were in trouble?

23   A.   I don't recall.  Generally the flavor was

24   that things would be fine.  It was pretty much a

25   patent answer.  Things would be fine.  "You haven't

**Exhibit K**

97                                                                Index  **MSG**
**File download complete.**

| From: THalleron@milbank.com | | 4/30 14:18 |
| Subject: McCarthey | | |
| Attachment(s): 14336404.htm <2K> | 97<GO> to view. | Page 1/ 3 |

Adam:  Here is the information you requested.  The only information I do not have yet is the TIN for McCarthey Investments, L.L.C.

McCarthey Investments, L.L.C.    -- $5,000,000
 - Formed in Delaware        33-1002055

JFM Holdings, L.P.    -- $5,000,000
 - Formed in Delaware
 - TIN:  13-7260374

Marty Oring's address:

706 Cinnamon Lane
Franklin Lakes, NJ 07417

Bloomberg L.P. disclaims all responsibility and liability for the accuracy and content of this attachment and for any damages or losses arising from any inaccuracies, errors, viruses, e.g., worms, trojan horses, etc., or other items of a destructive nature, which may be contained in this attachment and shall not be liable for direct, indirect, incidental, consequential or special damages in connection with this e-mail message or its attachment.
Australia 61 2 9777 8600      Brazil 5511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 212 1000 U.S. 1 212 318 2000  Copyright 2002 Bloomberg L.P.
G366-784-2 30-Apr-02 14:21:35



**Exhibit L**

| Subj: | |
| --- | --- |
| Date: | 8/15/2002 9:08:51 AM Pacific Daylight Time |
| From: | pee914 |
| To: | ashah@isospace.com |
| CC: | pmcc@sltrib.com |

Dear Abbas:

Thank you for bringing me up to date on the hedge fund trades yesterday. I understand the following from your phone call:

1. You've incurred losses on a couple of trade strategies that were designed to return 300 - 400% if the strategies had worked.

2. "98% of the trades you've made to date have worked out."

3. You will be able to stay within the 15% downside parameters that you promised originally on an annual basis.

4. You will be able to make up the losses that you incurred in an attempt to hit the home run within the next 8 to 10 weeks.

5. The losses you incurred on the big bets were a result of the market not responding as it historically had with respect to these strategies.

I know you're disappointed that the two strategies went against us. Believe me, I am disappointed as well.

Abbas, in following up on the due diligence related to your prior hedge fund, I was informed indirectly by one of the employees at the prime broker you use that you had incurred large gains and large losses on a number of the trades you had made with respect to that hedge fund. I have not received any daily or weekly trade information from the prior hedge fund that verifies your results with respect to that hedge fund. This would be important information for me to have going forward. I would appreciate it if you could provide me with the detailed daily or weekly trading information that you have for the prior hedge fund. Obviously, if you have audited statements for the hedge fund or any other certified material that would show your results, I would appreciate that as well.

Phil McCarthey and I should be in New York September 30. Hopefully, we'll have good news by then.

Best personal regards,

Phil Egger

Thursday, August 29, 2002 America Online: pee914

01033

**Exhibit M**

# LINUXOR GLOBAL MACRO FUND, L.P.

NET ASSET VALUE STATEMENTS

PERIOD MARCH 1, 2002 THRU AUGUST 31, 2002

(In U.S. Dollars)

| STATEMENT OF ASSETS AND LIABILITIES | | | August 31, 2002 | | | July 31, 2002 | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| ** ASSETS ** | | | Unaudited | | | Unaudited | |
| *Investments, at value:* | | cost | market value | | cost | market value | |
| Equities | B-2 | 50,887 | 24,750 | B-2 | 50,887 | 40,150 | |
| Bonds | B-2 | 0 | 0 | B-2 | 0 | 0 | |
| Discount papers | B-2 | 0 | 0 | B-2 | 0 | 0 | |
| Options | B-2 | 817,500 | 665,000 | B-2 | 2,391,650 | 1,605,763 | |
| | | 868,387 | 689,750 | | 2,442,537 | 1,645,913 | |
| *Unrealized gain on financial instruments:* | | | | | | | |
| Futures contracts | | | 0 | | 626,160 | | |
| Forward contracts | B-2 | | 0 | B-2 | 0 | | |
| Contract For Differences | B-2 | | 0 | B-2 | 0 | | |
| | | | 0 | | | 626,160 | |
| *Cash and cash equivalents:* | | | | | | | |
| Cash at banks | | | 0 | | 0 | | |
| Deposits | B-1 | | 0 | B-1 | 0 | | |
| | | | 0 | | | 0 | |
| Reverse repurchase agreements | B-4 | | 0 | B-4 | | 0 | |
| *Due from brokers:* | | | | | | | |
| Balances according to statements | B-1 | 4,833,499 | | B-1 | 5,984,113 | | |
| Receivable gains on forward contracts, expiring after reporting date | B-3 | 0 | | B-3 | 24,665 | | |
| | | | 4,833,499 | | | 6,008,778 | |
| Receivable for investments sold | B-3 | | 12,500 | B-3 | | 313,500 | |
| Accrued interest on bonds | B-5 | | 0 | B-5 | | 0 | |
| Overdue coupon interest receivable | B-5 | | 0 | B-5 | | 0 | |
| Interest paid in advance on bonds purchased | B-3 | | 0 | B-3 | | 0 | |
| Accrued interest on reverse repurchase agreements | B-4 | | 0 | B-4 | | 0 | |
| Interest receivable on bank, broker and other balances | B-7 | | 0 | B-7 | | 0 | |
| Dividends receivable on shares | B-6 | | 0 | B-6 | | 0 | |
| Other receivables and prepaid expenses | B-7 | | 50,000 | B-7 | | 50,000 | |
| Due to / from Feeder Funds | B-7 | | 0 | B-7 | | 0 | |
| Organizational expenses | | 10,000 | | | 10,000 | | |
| *less:* Cumulative amortization | A-7 | (1,000) | | A-7 | (833) | | |
| Deferred organizational expenses | | | 9,000 | | | 9,167 | |
| Receivable for fund shares sold | | | 0 | | | 0 | |
| **Total Assets** | | | **5,594,749** | | | **8,653,517** | |

# LINUXOR GLOBAL MACRO FUND, L.P.
## NET ASSET VALUE STATEMENTS
PERIOD MARCH 1, 2002 THRU AUGUST 31, 2002

(In U.S. Dollars)

| STATEMENT OF ASSETS AND LIABILITIES ** LIABILITIES ** | | August 31, 2002 Unaudited | | | July 31, 2002 Unaudited | |
|---|---|---|---|---|---|---|
| *Investments sold short, at value:* | | *proceeds* | *market value* | | *proceeds* | *market value* |
| Equities | B-2 | 0 | 0 | B-2 | 0 | 0 |
| Bonds | B-2 | 0 | 0 | B-2 | 0 | 0 |
| Discount papers | B-2 | 0 | 0 | B-2 | 0 | 0 |
| Options | B-2 | 353,125 | 306,563 | B-2 | 297,791 | 514,363 |
| | | 353,125 | 306,563 | | 297,791 | 514,363 |
| *Unrealized loss on financial instruments:* | | | | | | |
| Futures contracts | B-2 | 0 | | B-2 | 0 | |
| Forward contracts | B-2 | 0 | | B-2 | 0 | |
| Contract For Differences | B-2 | 0 | | B-2 | 0 | |
| | | | 0 | | | 0 |
| *Due to brokers:* | | | | | | |
| Balances according to statements | B-1 | 0 | | B-1 | 0 | |
| Payable losses on forward contracts, expiring after reporting date | B-3 | 0 | | B-3 | 19,774 | |
| | | | 0 | | | 19,774 |
| Repurchase agreements | B-4 | | 0 | B-4 | | 0 |
| Payable for investments purchased | B-3 | | 0 | B-3 | | 51,500 |
| Accrued interest on bonds | B-5 | | 0 | B-5 | | 0 |
| Overdue coupon interest payable | B-5 | | 0 | B-5 | | 0 |
| Interest received in advance on bonds sold | B-3 | | 0 | B-3 | | 0 |
| Accrued interest on repurchase agreements | B-4 | | 0 | B-4 | | 0 |
| Interest payable on bank, broker and other balances | | | 0 | | | 0 |
| Dividends payable on shares sold short | B-6 | | 0 | B-6 | | 0 |
| *Other payables and accrued expenses:* | | | | | | |
| Management fees | | 27,425 | | | (2,075) | |
| Performance fees | | 0 | | | 0 | |
| Administrative services | A-7 | 18,000 | | A-7 | 15,000 | |
| Audit fees | A-7 | 12,500 | | A-7 | 10,417 | |
| Legal fees | A-7 | 0 | | A-7 | 0 | |
| General fees | A-7 | 6,295 | | A-7 | 4,937 | |
| Due to Investment Manager | | 10,000 | | | 10,000 | |
| Operational & Research Costs | A-7 | 36,198 | | A-7 | 30,165 | |
| | | | 110,418 | | | 68,444 |
| Due to Shareholders | B-7 | | 0 | B-7 | | 0 |
| | B-7 | | | B-7 | | |
| Payable for fund shares repurchased | B-7 | | 0 | B-7 | | 0 |
| **Total Liabilities** | | | 416,980 | | | 654,080 |
| **NET ASSETS** | | | **5,177,769** | | | **7,999,436** |

# LINUXOR GLOBAL MACRO FUND, L.P.
## NET ASSET VALUE STATEMENTS
### PERIOD MARCH 1, 2002 THRU AUGUST 31, 2002
(In U.S. Dollars)

| STATEMENT OF OPERATIONS | | March 1 thru August 31, 2002 Unaudited | | | March 1 thru July 31, 2002 Unaudited | |
|---|---|---|---|---|---|---|
| **Investment Income** | | | | | | |
| *Income:* | | | | | | |
| Interest: · Bonds | | 1,670 | | | 1,670 | |
| · Discount papers | | 0 | | | 0 | |
| · Reverse repurchase agreements | | 0 | | | 0 | |
| · Bank and broker balances | | 37,956 | | | 28,015 | |
| | | | 39,626 | | | 29,685 |
| Dividends (gross income) | | 0 | | | 0 | |
| *less :* Withholding tax | | 0 | | | 0 | |
| | | | 0 | | | 0 |
| Other income | | | 0 | | | 0 |
| Total income | | | 39,626 | | | 29,685 |
| | | | | | | |
| *Expenses:* | | | | | | |
| Interest: · Bonds | | 7,980 | | | 6,633 | |
| · Discount papers | | 0 | | | 0 | |
| · Repurchase agreements | | 0 | | | 0 | |
| · Bank and broker balances | | 1,612 | | | 1,612 | |
| Dividends on short sales | | 0 | | | 0 | |
| Management fees | | 123,625 | | | 94,125 | |
| Performance fees | | 0 | | | 0 | |
| Administrative services | 5 | 18,000 | | 5 | 15,000 | |
| Audit fees | 4.1 | 12,500 | | 4.1 | 10,417 | |
| General fees | | 7,585 | | | 4,937 | |
| Bank and broker expenses | | 1,021,377 | | | 769,899 | |
| Amortization on organizational expenses | E-1 | 1,000 | | E-1 | 833 | |
| Operational & Research Costs | | 36,198 | | | 30,165 | |
| Total expenses | | | 1,229,877 | | | 933,621 |
| Net investment income (loss) | | | (1,190,251) | | | (903,936) |
| | | | | | | |
| **Realized and unrealized gains (losses) on investments** | | | | | | |
| *Realized gains (losses) on investments in:* | | | | | | |
| Securities | | | (614,507) | | | (349,603) |
| Securities - Hot Issues | | | 0 | | | 0 |
| Options | | | (1,567,026) | | | 192,440 |
| Futures contracts | | | (3,040,058) | | | (2,252,396) |
| Forward contracts | | | 99,053 | | | 75,014 |
| Realized currency exchange differences | | | (177,390) | | | (220,521) |
| | | | (5,299,927) | | | (2,555,067) |

| | *Beginning of year* | *End of period* | | *Beginning of year* | *End of period* |
|---|---|---|---|---|---|
| *Unrealized appreciation (depreciation) on investments in:* | | | | | |
| Securities | 0 | (26,137) | | 0 | (10,737) |
| Securities - Hot Issues | 0 | 0 | | 0 | 0 |
| Options | 0 | (105,938) | | 0 | (1,002,460) |
| Futures contracts | 0 | 0 | | 0 | 626,160 |
| Forward contracts | 0 | 0 | | 0 | 0 |
| Contract for differences | 0 | 0 | | 0 | 0 |
| | 0 | (132,075) | | 0 | (387,037) |

| | | | | | |
|---|---|---|---|---|---|
| Increase (decrease) unrealized appreciation on investments | | (132,075) | | | (387,037) |

| | *Beginning of year* | *End of period* | | *Beginning of year* | *End of period* |
|---|---|---|---|---|---|
| *Unrealized gains (losses) on foreign currency exchange:* | | | | | |
| Beginning of year (1-1-1999) | 0 | | | 0 | |
| End of period | 21 | | | 45,476 | |
| | | 21 | | | 45,476 |

| | | | | | |
|---|---|---|---|---|---|
| Net realized and unrealized gains (losses) on investments | | (5,431,980) | | | (2,896,628) |
| **Net increase (decrease) in net assets resulting from operations** | | (6,622,231) | | | (3,800,564) |

Page 3 of 4

Citco Financial

# LINUXOR GLOBAL MACRO FUND, L.P.
## NET ASSET VALUE STATEMENTS
PERIOD MARCH 1, 2002 THRU AUGUST 31, 2002

(In U.S. Dollars)

| STATEMENT OF CHANGES IN NET ASSETS | March 1 thru August 31, 2002 Unaudited | March 1 thru July 31, 2002 Unaudited |
|---|---|---|
| **Increase (decrease) in net assets from operations:** | | |
| Net investment income (loss) | (1,190,251) | (903,936) |
| Net realized gains (losses) on investments | (5,299,927) | (2,555,067) |
| Increase (decrease) unrealized appreciation on investments | (132,075) | (387,037) |
| Net unrealized gains (losses) on foreign currency exchange | 21 | 45,476 |
| Net increase (decrease) in net assets resulting from operations | (6,622,231) | (3,800,564) |
| | | |
| **Distribution to Stockholders** | 0 | 0 |
| | | |
| **From capital stock transactions:** | | |
| Proceeds from sales of shares | 11,800,000 | 11,800,000 |
| Cost of repurchases of shares | 0 | 0 |
| Increase (decrease) in net assets resulting from capital stock transactions | 11,800,000 | 11,800,000 |
| | | |
| Net increase (decrease) in net assets | 5,177,769 | 7,999,436 |
| | | |
| **Net Assets:** | | |
| Beginning of year (1-1-1999) | 0 | 0 |
| **End of period** | 5,177,769 | 7,999,436 |

**Exhibit N**



www.rkco.com

**Rothstein, Kass & Company, P.C.**
CERTIFIED PUBLIC ACCOUNTANTS

August 12, 2003

McCarthey Investments LLC
610 East South Temple, Suite 200
Salt Lake City, UT 84102

Dear Partner:

Enclosed please find your K-1 tax information and instructions for Linuxor Global Macro Fund L.P. for December 31, 2002. If you have any questions, please feel free to contact John Zacharella at JZacharella@rkco.com or Gary Berger at GBerger@rkco.com.

Sincerely,

Rothstein, Kass & Company, P.C.

---

1177 Avenue of the Americas
New York, NY 10036
*(212) 997-0500*
*Fax (212) 730-6892*

9171 Wilshire Boulevard
Beverly Hills, CA 90210
*(310) 273-2770*
*Fax (310) 273-6649*

500 Ygnacio Valley Road
Walnut Creek, CA 94956
*(925) 946-1300*
*Fax (925) 947-1700*

2515 McKinney Avenue
Dallas, TX 75201
*(214) 665-6000*
*Fax (214) 965-0710*

3 Becker Farm Road
Roseland, NJ 07068
*(973) 994-6666*
*Fax (973) 759-1958*

Member **AGN** *Affiliated Offices Worldwide*

## INSTRUCTIONS FOR TRADE OR BUSINESS

Attached is a copy of Schedule K-1, Form 1065 which lists your distributive share of the Partnership's taxable income (loss) for the year ended December 31, 2002.  These amounts are to be reported on your 2002 Income Tax Returns.

In connection with the information included on the attached copy of Federal Schedule K-1, please note the following:

### Trade or Business

The Partnership has taken the position that it is engaged in the active conduct of a business as a trader in securities.  The trading operation is not passive income and is not portfolio income for purposes of the passive activity loss rules (Temp. Reg. Section 1.469-1T(e)(6); Section 1.469-2T(c)(3)(ii)(D)).

Each partner must individually determine whether or not he or she materially participated during the year in the operations of the Partnership, since this affects the presentation and placement of interest expense on your tax return.  The Schedule K-1 has been prepared on the basis of a partner who **does** **not** materially participate in the operations of the Partnership.  Limited partners generally do not materially participate in the trading activities of the Partnership.  Accordingly, interest expense reported on line 14a should be reported by an "Individual" taxpayer on Form 4952 line 1 – investment interest expense.  Any deductible interest expense should be entered on Schedule E, Part II, column (i).  For purposes of determining the investment interest expense limitation, the amounts shown on lines 1 and 7 will affect the computation of investment income.

A partner that materially participates in the trading operation of the Partnership, or a partner that is a "C" corporation, should combine the net ordinary income (loss) reported on line 1 with the interest expense reported on line 14a.

### Trader Net Long-Term Capital Gain (Loss)

The supporting schedule for line 7 includes your share of net long-term capital gain (loss).  The amount of qualified 5-year gain, if any, included in the net long-term capital gain (loss) is separately stated.  Qualified 5-year gain is subject to a special reduced 8% tax rate for individuals reporting a net long-term capital gain.  The reduced tax rate of 8% is available only to the extent that the qualified 5-year gain falls within the 15% tax bracket.

_**Rothstein, Kass & Company, P.C.**_

**Dividends Eligible for Dividend – Received – Deduction (DRD)**

The qualifying dividends represent the amount of dividends from less than 20% owned <u>domestic corporations</u> eligible for the dividends received deduction under IRC Section 243(a). The balance of dividends is not eligible for the dividends received deduction.

**Unrelated Business Taxable Income (Loss)**

If you are a tax-exempt entity and you have gross income from an unrelated trade or business of $1,000 or more, you must file Form 990-T. The law is not entirely clear as to the proper way to determine income (loss) that is attributable to the use of leverage ("debt-financed income"). We have computed UBTI based on our interpretation of the law. Our computation of UBTI has been reflected on line 25 of Schedule K-1.

**Guaranteed Payments**

Guaranteed payments do not constitute passive income. Guaranteed payments that represent interest on capital constitute investment income for purposes of the investment interest expense limitation.

**State & Local Tax Information**

If you are required to file a state income tax return, your share of interest income from obligations issued by the U.S. Government or its agencies and your share of expenses to carry such obligations are reported on line 25 of Schedule K-1.

**THESE INSTRUCTIONS INVOLVE COMPLEX INCOME TAX MATTERS WHICH OFTEN AFFECT TAXPAYERS DIFFERENTLY DEPENDING UPON THEIR OWN PARTICULAR FACTS AND CIRCUMSTANCES. THEREFORE, YOU SHOULD CONSIDER CONSULTING WITH A PROFESSIONAL TAX ADVISER IF YOU ARE UNCERTAIN ABOUT THE TREATMENT OF ANY ITEM REPORTED ON SCHEDULE K-1 AND THE ACCOMPANYING ATTACHMENTS.**

*Rothstein, Kass & Company, P.C.*

| SCHEDULE K-1 (Form 1065) | **Partner's Share of Income, Credits, Deductions, etc.** | OMB No. 1545-0099 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ► See separate instructions. For calendar year 2002 or tax year beginning _____ , 2002, and ending _____ , 2002 | **2002** |

| Partner's identifying number ► 33-1002055 | Partnership's identifying number ► ;13-4198369 |
|---|---|
| Partner's name, address, and ZIP code<br>McCarthey Investments LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | Partnership's name, address, and ZIP code<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

**A** This partner is a ☐ general partner ☑ limited partner
☐ limited liability company member
**B** What type of entity is this partner? ► _____ LLC
**C** Is this partner a ☑ domestic or a ☐ foreign partner?

**F** Partner's share of liabilities (see instructions):
Nonrecourse . . . . . . . . $ _____
Qualified nonrecourse financing . $ _____
Other . . . . . . . . . . $ _____

**G** Tax shelter registration number . ► _____

|  | (i) Before change or termination | (ii) End of year |
|---|---|---|
| **D** Enter partner's percentage of: | | |
| Profit sharing . . . . . . . . % | .VAR. % | |
| Loss sharing . . . . . . . . % | .VAR. % | |
| Ownership of capital . . . . . % | 42.94 % | |

**H** Check here if this partnership is a publicly traded partnership as defined in section 469(k)(2) . . . ☐

**E** IRS Center where partnership filed return:  Cincinnati, OH

**I** Check applicable boxes:  **(1)** ☐ Final K-1  **(2)** ☐ Amended K-1

**J**  Analysis of partner's capital account:

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| 0 | 5,000,000 | (2,127,050) | ( 0 ) | 2,872,950 |

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| **Income (Loss)** | 1 | Ordinary income (loss) from trade or business activities . . . | 1 | (73,395) | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 2 | Net income (loss) from rental real estate activities . . . . . | 2 | | |
| | 3 | Net income (loss) from other rental activities . . . . . . . | 3 | | |
| | 4 | Portfolio income (loss): | | | |
| | a | Interest . . . . . . . . . . . . . . . . . . . . . | 4a | | Sch. B, Part I, line 1 |
| | b | Ordinary dividends . . . . . . . . . . . . . . . . | 4b | | Sch. B, Part II, line 5 |
| | c | Royalties . . . . . . . . . . . . . . . . . . . . | 4c | | Sch. E, Part I, line 4 |
| | d | Net short-term capital gain (loss) . . . . . . . . . . | 4d | | Sch. D, line 5, col. (f) |
| | e | (1) Net long-term capital gain (loss) . . . . . . . . | 4e(1) | | Sch. D, line 12, col. (f) |
| | | (2) 28% rate gain (loss) . . . . . . . . . . . . | 4e(2) | | Sch. D, line 12, col. (g) |
| | | (3) Qualified 5-year gain . . . . . . . . . . . . | 4e(3) | | Line 5 of worksheet for Sch. D, line 29 |
| | f | Other portfolio income (loss) (attach schedule) . . . . . | 4f | | Enter on applicable line of your return. |
| | 5 | Guaranteed payments to partner . . . . . . . . . . | 5 | | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 6 | Net section 1231 gain (loss) (other than due to casualty or theft) | 6 | | |
| | 7 | Other income (loss) (attach schedule) . . . . . . . . . | 7 | (1,792,366) | Enter on applicable line of your return. |
| **Deductions** | 8 | Charitable contributions (see instructions) (attach schedule) . | 8 | | Sch. A, line 15 or 16 |
| | 9 | Section 179 expense deduction . . . . . . . . . . . | 9 | | See pages 7 and 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 10 | Deductions related to portfolio income (attach schedule) . . | 10 | | |
| | 11 | Other deductions (attach schedule) . . . . . . . . . | 11 | | |
| **Credits** | 12a | Low-income housing credit: | | | |
| | | (1) From section 42(j)(5) partnerships . . . . . . . . | 12a(1) | | Form 8586, line 5 |
| | | (2) Other than on line 12a(1) . . . . . . . . . . . | 12a(2) | | |
| | b | Qualified rehabilitation expenditures related to rental real estate activities | 12b | | |
| | c | Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities | 12c | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | d | Credits related to other rental activities . . . . . . . . | 12d | | |
| | 13 | Other credits . . . . . . . . . . . . . . . . . | 13 | | |

For Paperwork Reduction Act Notice, see Instructions for Form 1065.      Cat. No. 11394R      Schedule K-1 (Form 1065) 2002

8/12/2003 10:09:09 AM

Schedule K-1 (Form 1065) 2002

Page **2**

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| **Investment Interest** | **14a** Interest expense on investment debts . . . . . . . | **14a** | 32,348 | Form 4952, line 1 |
| | **b** (1) Investment income included on lines 4a, 4b, 4c, and 4f . . | **14b(1)** | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | (2) Investment expenses included on line 10 . . . . . . | **14b(2)** | | |
| **Self-employment** | **15a** Net earnings (loss) from self-employment . . . . . . | **15a** | | Sch. SE, Section A or B |
| | **b** Gross farming or fishing income . . . . . . . . | **15b** | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | **c** Gross nonfarm income . . . . . . . . . . . | **15c** | | |
| **Adjustments and Tax Preference Items** | **16a** Depreciation adjustment on property placed in service after 1986 | **16a** | | |
| | **b** Adjusted gain or loss . . . . . . . . . . . | **16b** | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065) and Instructions for Form 6251. |
| | **c** Depletion (other than oil and gas) . . . . . . . . | **16c** | | |
| | **d** (1) Gross income from oil, gas, and geothermal properties . | **16d(1)** | | |
| | (2) Deductions allocable to oil, gas, and geothermal properties | **16d(2)** | | |
| | **e** Other adjustments and tax preference items (attach schedule) | **16e** | | |
| **Foreign Taxes** | **17a** Name of foreign country or U.S. possession ▶ VARIOUS | | | |
| | **b** Gross income from all sources . . . . . . . . | **17b** | | |
| | **c** Gross income sourced at partner level . . . . . . | **17c** | | |
| | **d** Foreign gross income sourced at partnership level: | | | |
| | (1) Passive . . . . . . . . . . . . . | **17d(1)** | | |
| | (2) Listed categories (attach schedule) . . . . . | **17d(2)** | | |
| | (3) General limitation . . . . . . . . . . | **17d(3)** | | |
| | **e** Deductions allocated and apportioned at partner level: | | | Form 1116, Part I |
| | (1) Interest expense . . . . . . . . . . | **17e(1)** | | |
| | (2) Other . . . . . . . . . . . . . | **17e(2)** | | |
| | **f** Deductions allocated and apportioned at partnership level to foreign source income: | | | |
| | (1) Passive . . . . . . . . . . . . . | **17f(1)** | | |
| | (2) Listed categories (attach schedule) . . . . . | **17f(2)** | | |
| | (3) General limitation . . . . . . . . . . | **17f(3)** | | |
| | **g** Total foreign taxes (check one): ▶ ☐ Paid ☐ Accrued . . | **17g** | | Form 1116, Part II |
| | **h** Reduction in taxes available for credit (attach schedule) . . . | **17h** | | Form 1116, line 12 |
| **Other** | **18** Section 59(e)(2) expenditures: a Type ▶ ......................... | | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | **b** Amount . . . . . . . . . . . . . . | **18b** | | |
| | **19** Tax-exempt interest income . . . . . . . . . | **19** | | Form 1040, line 8b |
| | **20** Other tax-exempt income . . . . . . . . . . | **20** | | |
| | **21** Nondeductible expenses . . . . . . . . . . | **21** | | See pages 9 and 10 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | **22** Distributions of money (cash and marketable securities) . . . | **22** | 0 | |
| | **23** Distributions of property other than money . . . . . | **23** | | |
| | **24** Recapture of low-income housing credit: | | | |
| | **a** From section 42(j)(5) partnerships . . . . . . . | **24a** | | Form 8611, line 8 |
| | **b** Other than on line 24a . . . . . . . . . . | **24b** | | |
| **Supplemental Information** | **25** Supplemental information required to be reported separately to each partner (attach additional schedules if more space is needed): | | | |

.............................................................................................................

......................................... See attached schedules .........................................

.............................................................................................................

.............................................................................................................

.............................................................................................................

.............................................................................................................

.............................................................................................................

⊕

13-4198369
Linuxor Global Macro Fund, L.P.

Schedule K-1 (Form 1065) 2002

33-1002055
McCarthey Investments LLC

11

**FORM 1065 - PARTNER'S SHARE OF INCOME AND DEDUCTIONS - 2002**
**SCHEDULE K-1 SUPPLEMENTAL INFORMATION**

| Partner's ID No. 33-1002055 | Partnership's ID No. 13-4198369 |
|---|---|
| Partner's name, address, and ZIP code<br>McCarthey Investments LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | Partnership's name, address, and ZIP code<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

**Line 25 - Supplemental information required to be reported separately to each partner:**

**Gain or Loss on Liquidation of Partnership Interest:**

If you made a withdrawal from the Partnership, you may have a gain or loss.
Please consult your tax advisor.

**Item J, Column (c):**

| | | |
|---|---|---:|
| Unrealized appreciation/depreciation and timing differences | $ | (228,941) |
| Tax-exempt interest & other tax-exempt income | | 0 |
| Nondeductible expenses | | 0 |
| Taxable income (loss) | | (1,898,109) |
| **Total** | $ | (2,127,050) |

**Line 1 - Ordinary income (loss) from trade or business activities:**

Income reported on line 1 is not passive income (loss) and is not portfolio
income (loss) for purposes of the passive activity loss rules (Temp. Reg.
Sec. 1.469-1T(e)(6); Sec. 1.469-2T(c)(3)(ii)(D)). The amount reported
on line 1 should be entered by an "Individual" taxpayer on Schedule E,
Part II as nonpassive.

**Line 7 - Other Income (loss):**

| | | |
|---|---|---:|
| Net Short-Term Capital Gain (Loss) | $ | (29,039) |
| Net Long-Term Capital Gain (Loss), includes qualified 5-year gain of $ 0 | | 0 |
| Section 1256 Net Gain (Loss) * | | (1,867,545) |
| Section 988 - Foreign Currency Transaction Gain (Loss) | | 104,218 |
| Other income (loss) | | 0 |
| **Total** | $ | (1,792,366) |

\* Taxpayers should report 1256 gain or loss on Form 6781

FORM 1065 - PARTNER'S SHARE OF INCOME AND DEDUCTIONS - 2002
SCHEDULE K-1 SUPPLEMENTAL INFORMATION

| Partner's ID No.33-1002055 | Partnership's ID No. 13-4198369 |
|---|---|
| Partner's name, address, and ZIP code<br>McCarthey Investments LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | Partnership's name, address, and ZIP code<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

**Line 25 - Supplemental information required to be reported separately to each partner:**

**Line 14a - Interest expense on investment debts:**

"Individual" partners that do not materially participate in the operations of the Partnership must report interest expense as investment interest expense on Form 4952, line 1. "Individual" partners that materially participate and "C" corporations should combine the amount on line 14a with the amount on line 1.

**Unrelated Business Taxable Income:**

If you are a tax-exempt entity, your share of Unrelated Business Taxable Income (Loss) is reported below:

| | | |
|---|---|---|
| Ordinary Income (Loss): | $ | (2,472) |
| Short-Term Capital Gain (Loss): | $ | (3,482) |
| Long-Term Capital Gain (Loss): | $ | 0 |

**Interest Income from U.S. Obligations:**

Included in line 1 is your share of interest income from U.S. Obligations:

| | | |
|---|---|---|
| | $ | 0 |

Your share of cost to carry U.S. Obligations is as follows:

| | | |
|---|---|---|
| Interest expense: | $ | 0 |
| Other expenses: | $ | 0 |

**Dividends Qualifying for 70% Dividend Received Deduction:**

Your share of dividends from domestic corporations, included in line 1, qualifying for 70% Dividend Received Deduction is as follows:

| | | |
|---|---|---|
| | $ | 0 |

11

www.rkco.com



**Rothstein, Kass & Company, P.C.**
CERTIFIED PUBLIC ACCOUNTANTS

August 12, 2003

JFM Holdings, LP
JFM Capital Management, LLC
610 East South Temple, Suite 200
Salt Lake City, UT 84102

Dear Partner:

Enclosed please find your K-1 tax information and instructions for Linuxor Global Macro
Fund L.P. for December 31, 2002.  If you have any questions, please feel free to
contact John Zacharella at JZacharella@rkco.com or Gary Berger at
GBerger@rkco.com.

Sincerely,

Rothstein, Kass & Company, P.C.

1177 Avenue of the Americas
New York, NY 10036
(212) 997-0500
Fax (212) 730-6892

9171 Wilshire Boulevard
Beverly Hills, CA 90210
(310) 273-2770
Fax (310) 273-6649

500 Ygnacio Valley Road
Walnut Creek, CA 94956
(925) 946-1300
Fax (925) 947-1700

2515 McKinney Avenue
Dallas, TX 75201
(214) 665-6000
Fax (214) 965-0710

3 Becker Farm Road
Roseland, NJ 07068
(973) 994-6666
Fax (973) 758-1956

Member **AGN** Affiliated Offices Worldwide

## INSTRUCTIONS FOR TRADE OR BUSINESS

Attached is a copy of Schedule K-1, Form 1065 which lists your distributive share of the Partnership's taxable income (loss) for the year ended December 31, 2002. These amounts are to be reported on your 2002 Income Tax Returns.

In connection with the information included on the attached copy of Federal Schedule K-1, please note the following:

### Trade or Business
The Partnership has taken the position that it is engaged in the active conduct of a business as a trader in securities. The trading operation is <u>not</u> passive income and is not portfolio income for purposes of the passive activity loss rules (Temp. Reg. Section 1.469-1T(e)(6); Section 1.469-2T(c)(3)(ii)(D)).

Each partner must individually determine whether or not he or she materially participated during the year in the operations of the Partnership, since this affects the presentation and placement of interest expense on your tax return. The Schedule K-1 has been prepared on the basis of a partner who **does** <u>**not**</u> materially participate in the operations of the Partnership. Limited partners generally do not materially participate in the trading activities of the Partnership. Accordingly, interest expense reported on line 14a should be reported by an "Individual" taxpayer on Form 4952 line 1 – investment interest expense. Any deductible interest expense should be entered on Schedule E, Part II, column (i). For purposes of determining the investment interest expense limitation, the amounts shown on lines 1 and 7 will affect the computation of investment income.

A partner that materially participates in the trading operation of the Partnership, or a partner that is a "C" corporation, should combine the net ordinary income (loss) reported on line 1 with the interest expense reported on line 14a.

### Trader Net Long-Term Capital Gain (Loss)
The supporting schedule for line 7 includes your share of net long-term capital gain (loss). The amount of qualified 5-year gain, if any, included in the net long-term capital gain (loss) is separately stated. Qualified 5-year gain is subject to a special reduced 8% tax rate for individuals reporting a net long-term capital gain. The reduced tax rate of 8% is available only to the extent that the qualified 5-year gain falls within the 15% tax bracket.

*Rothstein, Kass & Company, P.C.*

### Dividends Eligible for Dividend – Received – Deduction (DRD)

The qualifying dividends represent the amount of dividends from less than 20% owned domestic corporations eligible for the dividends received deduction under IRC Section 243(a). The balance of dividends is not eligible for the dividends received deduction.

### Unrelated Business Taxable Income (Loss)

If you are a tax-exempt entity and you have gross income from an unrelated trade or business of $1,000 or more, you must file Form 990-T. The law is not entirely clear as to the proper way to determine income (loss) that is attributable to the use of leverage ("debt-financed income"). We have computed UBTI based on our interpretation of the law. Our computation of UBTI has been reflected on line 25 of Schedule K-1.

### Guaranteed Payments

Guaranteed payments do not constitute passive income. Guaranteed payments that represent interest on capital constitute investment income for purposes of the investment interest expense limitation.

### State & Local Tax Information

If you are required to file a state income tax return, your share of interest income from obligations issued by the U.S. Government or its agencies and your share of expenses to carry such obligations are reported on line 25 of Schedule K-1.

**THESE INSTRUCTIONS INVOLVE COMPLEX INCOME TAX MATTERS WHICH OFTEN AFFECT TAXPAYERS DIFFERENTLY DEPENDING UPON THEIR OWN PARTICULAR FACTS AND CIRCUMSTANCES. THEREFORE, YOU SHOULD CONSIDER CONSULTING WITH A PROFESSIONAL TAX ADVISER IF YOU ARE UNCERTAIN ABOUT THE TREATMENT OF ANY ITEM REPORTED ON SCHEDULE K-1 AND THE ACCOMPANYING ATTACHMENTS.**

*Rothstein, Kass & Company, P.C.*

SCHEDULE K-1
(Form 1065)
Department of the Treasury
Internal Revenue Service

**Partner's Share of Income, Credits, Deductions, etc.**
▶ See separate instructions.
For calendar year 2002 or tax year beginning _____ , 2002, and ending _____ , 2002

OMB No. 1545-0099

**2002**

| Partner's identifying number ▶ 13-7260374 | Partnership's identifying number ▶ :13-4198369 |
|---|---|
| Partner's name, address, and ZIP code<br>JFM Holdings, LP<br>JFM Capital Management, LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | Partnership's name, address, and ZIP code<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

**A** This partner is a ☐ general partner  ☑ limited partner
    ☐ limited liability company member
**B** What type of entity is this partner? ▶ .......... LP .......
**C** Is this partner a ☑ domestic or a ☐ foreign partner?

**D** Enter partner's percentage of:

| | (i) Before change<br>or termination | (ii) End of<br>year |
|---|---|---|
| Profit sharing . . . . . . . . . . . | .......... % | VAR . % |
| Loss sharing . . . . . . . . . . . | .......... % | VAR . % |
| Ownership of capital . . . . . . . | .......... % | 42.94 . % |

**E** IRS Center where partnership filed return:  Cincinnati, OH

**F** Partner's share of liabilities (see instructions):

| | |
|---|---|
| Nonrecourse . . . . . . . . . | $ ................ |
| Qualified nonrecourse financing . | $ ................ |
| Other . . . . . . . . . . . | $ ................ |

**G** Tax shelter registration number . ▶ ................

**H** Check here if this partnership is a publicly traded
    partnership as defined in section 469(k)(2) . . . . . ☐

**I** Check applicable boxes:  (1) ☐ Final K-1  (2) ☐ Amended K-1

**J** Analysis of partner's capital account:

| (a) Capital account at<br>beginning of year | (b) Capital contributed<br>during year | (c) Partner's share of lines<br>3, 4, and 7, Form 1065,<br>Schedule M-2 | (d) Withdrawals and<br>distributions | (e) Capital account at end of<br>year (combine columns (a)<br>through (d)) |
|---|---|---|---|---|
| 0 | 5,000,000 | (2,127,048) | ( 0 ) | 2,872,952 |

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the<br>amount in column (b) on: |
|---|---|---|---|---|
| **Income (Loss)** | **1** Ordinary income (loss) from trade or business activities . . . | **1** | (73,393) | See page 6 of Partner's<br>Instructions for Schedule K-1<br>(Form 1065). |
| | **2** Net income (loss) from rental real estate activities . . . . . | **2** | | |
| | **3** Net income (loss) from other rental activities . . . . . . . | **3** | | |
| | **4** Portfolio income (loss): | | | |
| | **a** Interest . . . . . . . . . . | **4a** | | Sch. B, Part I, line 1 |
| | **b** Ordinary dividends . . . . . . . . . . | **4b** | | Sch. B, Part II, line 5 |
| | **c** Royalties . . . . . . . . . . | **4c** | | Sch. E, Part I, line 4 |
| | **d** Net short-term capital gain (loss) . . . . . . | **4d** | | Sch. D, line 5, col. (f) |
| | **e** (1) Net long-term capital gain (loss). . . . . . . . | **4e(1)** | | Sch. D, line 12, col. (f) |
| |     (2) 28% rate gain (loss) . . . . . . . | **4e(2)** | | Sch. D, line 12, col. (g) |
| |     (3) Qualified 5-year gain . . . . . . . | **4e(3)** | | Line 5 of worksheet for Sch. D, line 29 |
| | **f** Other portfolio income (loss) (attach schedule) . . . . | **4f** | | Enter on applicable line of your return. |
| | **5** Guaranteed payments to partner . . . . . . . . | **5** | | See page 6 of Partner's<br>Instructions for Schedule K-1<br>(Form 1065). |
| | **6** Net section 1231 gain (loss) (other than due to casualty or theft) | **6** | | |
| | **7** Other income (loss) (attach schedule) . . . . . . . . | **7** | (1,792,369) | Enter on applicable line of your return. |
| **Deduc-tions** | **8** Charitable contributions (see instructions) (attach schedule) . | **8** | | Sch. A, line 15 or 16 |
| | **9** Section 179 expense deduction . . . . . . . . | **9** | | See pages 7 and 8 of<br>Partner's Instructions for<br>Schedule K-1 (Form 1065). |
| | **10** Deductions related to portfolio income (attach schedule) . . | **10** | | |
| | **11** Other deductions (attach schedule). . . . . . . . | **11** | | |
| **Credits** | **12a** Low-income housing credit: | | | |
| |     (1) From section 42(j)(5) partnerships . . . . . . . | **12a(1)** | | Form 8586, line 5 |
| |     (2) Other than on line 12a(1) . . . . . . . . | **12a(2)** | | |
| | **b** Qualified rehabilitation expenditures related to rental real estate<br>    activities . . . . . . . . . . . . . | **12b** | | |
| | **c** Credits (other than credits shown on lines 12a and 12b) related<br>    to rental real estate activities . . . . . . . . | **12c** | | See page 8 of Partner's<br>Instructions for Schedule K-1<br>(Form 1065). |
| | **d** Credits related to other rental activities . . . . . . | **12d** | | |
| | **13** Other credits . . . . . . . . . . . | **13** | | |

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    Cat. No. 11394R    **Schedule K-1 (Form 1065) 2002**

8/12/2003 10:09:09 AM

12

Schedule K-1 (Form 1065) 2002                                                      Page **2**

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| **Investment Interest** | **14a** Interest expense on investment debts . . . . . . . . | **14a** | 32,344 | Form 4952, line 1 |
| | **b** (1) Investment income included on lines 4a, 4b, 4c, and 4f | **14b(1)** | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | (2) Investment expenses included on line 10 . . . . . . | **14b(2)** | | |
| **Self-em- ployment** | **15a** Net earnings (loss) from self-employment . . . . . . . | **15a** | | Sch. SE, Section A or B |
| | **b** Gross farming or fishing income . . . . . . . . . . . | **15b** | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | **c** Gross nonfarm income . . . . . . . . . . . . . . | **15c** | | |
| **Adjustments and Tax Preference Items** | **16a** Depreciation adjustment on property placed in service after 1986 | **16a** | | |
| | **b** Adjusted gain or loss . . . . . . . . . . . . . . | **16b** | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065) and Instructions for Form 6251. |
| | **c** Depletion (other than oil and gas) . . . . . . . . . | **16c** | | |
| | **d** (1) Gross income from oil, gas, and geothermal properties . | **16d(1)** | | |
| | (2) Deductions allocable to oil, gas, and geothermal properties | **16d(2)** | | |
| | **e** Other adjustments and tax preference items *(attach schedule)* | **16e** | | |
| **Foreign Taxes** | **17a** Name of foreign country or U.S. possession ▶ VARIOUS | | | |
| | **b** Gross income from all sources . . . . . . . . . . | **17b** | | |
| | **c** Gross income sourced at partner level . . . . . . . | **17c** | | |
| | **d** Foreign gross income sourced at partnership level: | | | |
| | (1) Passive . . . . . . . . . . . . . . . . . | **17d(1)** | | |
| | (2) Listed categories *(attach schedule)* . . . . . . . | **17d(2)** | | |
| | (3) General limitation . . . . . . . . . . . . . | **17d(3)** | | Form 1116, Part I |
| | **e** Deductions allocated and apportioned at partner level: | | | |
| | (1) Interest expense . . . . . . . . . . . . . | **17e(1)** | | |
| | (2) Other . . . . . . . . . . . . . . . . . | **17e(2)** | | |
| | **f** Deductions allocated and apportioned at partnership level to foreign source income: | | | |
| | (1) Passive . . . . . . . . . . . . . . . . . | **17f(1)** | | |
| | (2) Listed categories *(attach schedule)* . . . . . . . | **17f(2)** | | |
| | (3) General limitation . . . . . . . . . . . . . | **17f(3)** | | |
| | **g** Total foreign taxes (check one): ▶ ☐ Paid ☐ Accrued . . | **17g** | | Form 1116, Part II |
| | **h** Reduction in taxes available for credit *(attach schedule)* . . . | **17h** | | Form 1116, line 12 |
| **Other** | **18** Section 59(e)(2) expenditures: a Type ▶ ------------------------- | | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | **b** Amount . . . . . . . . . . . . . . . . . . . | **18b** | | |
| | **19** Tax-exempt interest income . . . . . . . . . . . | **19** | | Form 1040, line 8b |
| | **20** Other tax-exempt income . . . . . . . . . . . . | **20** | | |
| | **21** Nondeductible expenses . . . . . . . . . . . . | **21** | | See pages 9 and 10 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | **22** Distributions of money (cash and marketable securities) . . | **22** | 0 | |
| | **23** Distributions of property other than money . . . . . . | **23** | | |
| | **24** Recapture of low-income housing credit: | | | |
| | **a** From section 42(j)(5) partnerships . . . . . . . . . | **24a** | | Form 8611, line 8 |
| | **b** Other than on line 24a . . . . . . . . . . . . . | **24b** | | |
| **Supplemental Information** | **25** Supplemental information required to be reported separately to each partner *(attach additional schedules if more space is needed)*: | | | |

See attached schedules

⊕

13-4198369                                                      Schedule K-1 (Form 1065) 2002
Linuxor Global Macro Fund, L.P.

13-7260374
JFM Holdings, LP

12

FORM 1065 - PARTNER'S SHARE OF INCOME AND DEDUCTIONS - 2002
SCHEDULE K-1 SUPPLEMENTAL INFORMATION

| Partner's ID No. 13-7260374 | Partnership's ID No. 13-4198369 |
|---|---|
| Partner's name, address, and ZIP code<br>JFM Holdings, LP<br>JFM Capital Management, LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | Partnership's name, address, and ZIP code<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square,  2nd Floor<br>New York, NY 10004 |

**Line 25 - Supplemental information required to be reported separately to each partner:**

**Gain or Loss on Liquidation of Partnership Interest:**

If you made a withdrawal from the Partnership, you may have a gain or loss.
Please consult your tax advisor.

**Item J, Column (c):**

| | | |
|---|---|---:|
| Unrealized appreciation/depreciation and timing differences | $ | (228,942) |
| Tax-exempt interest & other tax-exempt income | | 0 |
| Nondeductible expenses | | 0 |
| Taxable income (loss) | | (1,898,106) |
| **Total** | $ | (2,127,048) |

**Line 1 - Ordinary income (loss) from trade or business activities:**

Income reported on line 1 is not passive income (loss) and is not portfolio
income (loss) for purposes of the passive activity loss rules (Temp. Reg.
Sec. 1.469-1T(e)(6); Sec. 1.469-2T(c)(3)(ii)(D)).  The amount reported
on line 1 should be entered by an "Individual" taxpayer on Schedule E,
Part II as nonpassive.

**Line 7 - Other Income (loss):**

| | | |
|---|---|---:|
| Net Short-Term Capital Gain (Loss) | $ | (29,039) |
| Net Long-Term Capital Gain (Loss), includes qualified 5-year gain of  $  0 | | 0 |
| Section 1256 Net Gain (Loss) * | | (1,867,549) |
| Section 988 - Foreign Currency Transaction Gain (Loss) | | 104,219 |
| Other income (loss) | | 0 |
| **Total** | $ | (1,792,369) |

* Taxpayers should report 1256 gain or loss on Form 6781

**FORM 1065 - PARTNER'S SHARE OF INCOME AND DEDUCTIONS - 2002**
**SCHEDULE K-1 SUPPLEMENTAL INFORMATION**

| Partner's ID No. 13-7260374 | Partnership's ID No. 13-4198369 |
|---|---|
| **Partner's name, address, and ZIP code**<br>JFM Holdings, LP<br>JFM Capital Management, LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | **Partnership's name, address, and ZIP code**<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

**Line 25 - Supplemental information required to be reported separately to each partner:**

**Line 14a - Interest expense on investment debts:**

"Individual" partners that do not materially participate in the operations of the Partnership must report interest expense as investment interest expense on Form 4952, line 1. "Individual" partners that materially participate and "C" corporations should combine the amount on line 14a with the amount on line 1.

**Unrelated Business Taxable Income:**

If you are a tax-exempt entity, your share of Unrelated Business Taxable Income (Loss) is reported below:

| | | |
|---|---|---|
| Ordinary Income (Loss): | $ | (2,471) |
| Short-Term Capital Gain (Loss): | $ | (3,483) |
| Long-Term Capital Gain (Loss): | $ | 0 |

**Interest Income from U.S. Obligations:**

Included in line 1 is your share of interest income from U.S. Obligations:

| | | |
|---|---|---|
| | $ | 0 |

Your share of cost to carry U.S. Obligations is as follows:

| | | |
|---|---|---|
| Interest expense: | $ | 0 |
| Other expenses: | $ | 0 |

**Dividends Qualifying for 70% Dividend Received Deduction:**

Your share of dividends from domestic corporations, included in line 1, qualifying for 70% Dividend Received Deduction is as follows:

| | | |
|---|---|---|
| | $ | 0 |

12



www.rkco.com

**Rothstein, Kass & Company, P.C.**
CERTIFIED PUBLIC ACCOUNTANTS

August 12, 2003

2001, Jane F. McCarthe Grat No. 5
JFM Capital Management, LLC
610 East South Temple, Suite 200
Salt Lake City, UT 84102

Dear Partner:

Enclosed please find your K-1 tax information and instructions for Linuxor Global Macro
Fund L.P. for December 31, 2002. If you have any questions, please feel free to
contact John Zacharella at JZacharella@rkco.com or Gary Berger at
GBerger@rkco.com.

Sincerely,

Rothstein, Kass & Company, P.C.

1177 Avenue of the Americas    9171 Wilshire Boulevard    500 Ygnacio Valley Road    2515 McKinney Avenue    3 Becker Farm Road
New York, NY 10036    Beverly Hills, CA 90210    Walnut Creek, CA 94956    Dallas, TX 75201    Roseland, NJ 07068
*(212) 997-0500*    *(310) 273-2770*    *(925) 946-1300*    *(214) 665-6000*    *(973) 994-6666*
*Fax (212) 730-6892*    *Fax (310) 273-6649*    *Fax (925) 947-1700*    *Fax (214) 965-0710*    *Fax (973) 758-1958*

*Member* **AGN** *Affiliated Offices Worldwide*

## INSTRUCTIONS FOR TRADE OR BUSINESS

Attached is a copy of Schedule K-1, Form 1065 which lists your distributive share of the Partnership's taxable income (loss) for the year ended December 31, 2002.  These amounts are to be reported on your 2002 Income Tax Returns.

In connection with the information included on the attached copy of Federal Schedule K-1, please note the following:

### Trade or Business
The Partnership has taken the position that it is engaged in the active conduct of a business as a trader in securities.  The trading operation is <u>not</u> passive income and is not portfolio income for purposes of the passive activity loss rules (Temp. Reg. Section 1.469-1T(e)(6); Section 1.469-2T(c)(3)(ii)(D)).

Each partner must individually determine whether or not he or she materially participated during the year in the operations of the Partnership, since this affects the presentation and placement of interest expense on your tax return.  The Schedule K-1 has been prepared on the basis of a partner who **does** **not** materially participate in the operations of the Partnership.  Limited partners generally do not materially participate in the trading activities of the Partnership.  Accordingly, interest expense reported on line 14a should be reported by an "Individual" taxpayer on Form 4952 line 1 – investment interest expense.  Any deductible interest expense should be entered on Schedule E, Part II, column (i).  For purposes of determining the investment interest expense limitation, the amounts shown on lines 1 and 7 will affect the computation of investment income.

A partner that materially participates in the trading operation of the Partnership, or a partner that is a "C" corporation, should combine the net ordinary income (loss) reported on line 1 with the interest expense reported on line 14a.

### Trader Net Long-Term Capital Gain (Loss)
The supporting schedule for line 7 includes your share of net long-term capital gain (loss).  The amount of qualified 5-year gain, if any, included in the net long-term capital gain (loss) is separately stated.  Qualified 5-year gain is subject to a special reduced 8% tax rate for individuals reporting a net long-term capital gain.  The reduced tax rate of 8% is available only to the extent that the qualified 5-year gain falls within the 15% tax bracket.

*Rothstein, Kass & Company, P.C.*

**Dividends Eligible for Dividend – Received – Deduction (DRD)**

The qualifying dividends represent the amount of dividends from less than 20% owned domestic corporations eligible for the dividends received deduction under IRC Section 243(a). The balance of dividends is not eligible for the dividends received deduction.

**Unrelated Business Taxable Income (Loss)**

If you are a tax-exempt entity and you have gross income from an unrelated trade or business of $1,000 or more, you must file Form 990-T. The law is not entirely clear as to the proper way to determine income (loss) that is attributable to the use of leverage ("debt-financed income"). We have computed UBTI based on our interpretation of the law. Our computation of UBTI has been reflected on line 25 of Schedule K-1.

**Guaranteed Payments**

Guaranteed payments do not constitute passive income. Guaranteed payments that represent interest on capital constitute investment income for purposes of the investment interest expense limitation.

**State & Local Tax Information**

If you are required to file a state income tax return, your share of interest income from obligations issued by the U.S. Government or its agencies and your share of expenses to carry such obligations are reported on line 25 of Schedule K-1.

**THESE INSTRUCTIONS INVOLVE COMPLEX INCOME TAX MATTERS WHICH OFTEN AFFECT TAXPAYERS DIFFERENTLY DEPENDING UPON THEIR OWN PARTICULAR FACTS AND CIRCUMSTANCES. THEREFORE, YOU SHOULD CONSIDER CONSULTING WITH A PROFESSIONAL TAX ADVISER IF YOU ARE UNCERTAIN ABOUT THE TREATMENT OF ANY ITEM REPORTED ON SCHEDULE K-1 AND THE ACCOMPANYING ATTACHMENTS.**

*Rothstein, Kass & Company, P.C.*

**SCHEDULE K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

# Partner's Share of Income, Credits, Deductions, etc.
▶ See separate instructions.

OMB No. 1545-0099

For calendar year 2002 or tax year beginning _____ , 2002, and ending _____ , 2002

**2002**

Partner's identifying number ▶ 13-7314747 | Partnership's identifying number ▶ 13-4198369

| Partner's name, address, and ZIP code | Partnership's name, address, and ZIP code |
|---|---|
| 2001, Jane F. McCarthe Grat No. 5<br>JFM Capital Management, LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

A  This partner is a ☐ general partner  ☑ limited partner
    ☐ limited liability company member
B  What type of entity is this partner?  ▶ .......TRUST.......
C  Is this partner a  ☑ domestic or a  ☐ foreign partner?

F  Partner's share of liabilities (see instructions):
    Nonrecourse . . . . . . . . . $ ...................
    Qualified nonrecourse financing . $ ...................
    Other . . . . . . . . . . . $ ...................

|   | (i) Before change or termination | (ii) End of year |
|---|---|---|
| D  Enter partner's percentage of: | | |
| Profit sharing . . . . . . . % | VAR % | |
| Loss sharing . . . . . . . . % | VAR % | |
| Ownership of capital . . . . . % | 11.54 % | |

E  IRS Center where partnership filed return:  Cincinnati, OH

G  Tax shelter registration number . ▶ ...................

H  Check here if this partnership is a publicly traded
    partnership as defined in section 469(k)(2) . . . . . ☐

I  Check applicable boxes:  (1) ☐ Final K-1  (2) ☐ Amended K-1

J    Analysis of partner's capital account:

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7. Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| 0 | 1,500,000 | (728,017) | 0 | 771,983 |

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| **Income (Loss)** | 1   Ordinary income (loss) from trade or business activities . . . | 1 | (47,304) | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 2   Net income (loss) from rental real estate activities . . . . | 2 | | |
| | 3   Net income (loss) from other rental activities . . . . . . | 3 | | |
| | 4   Portfolio income (loss): | | | |
| | a   Interest . . . . . . . . . . . . . . . . . . . | 4a | | Sch. B, Part I, line 1 |
| | b   Ordinary dividends . . . . . . . . . . . . . . . | 4b | | Sch. B, Part II, line 5 |
| | c   Royalties . . . . . . . . . . . . . . . . . . | 4c | | Sch. E, Part I, line 4 |
| | d   Net short-term capital gain (loss) . . . . . . . . . | 4d | | Sch. D, line 5, col. (f) |
| | e   (1) Net long-term capital gain (loss). . . . . . . . . | 4e(1) | | Sch. D, line 12, col. (f) |
| | (2) 28% rate gain (loss) . . . . . . . . . . . . | 4e(2) | | Sch. D, line 12, col. (g) |
| | (3) Qualified 5-year gain . . . . . . . . . . . | 4e(3) | | Line of worksheet for Sch. D, line 29 |
| | f   Other portfolio income (loss) (attach schedule) . . . . | 4f | | Enter on applicable line of your return. |
| | 5   Guaranteed payments to partner . . . . . . . . . | 5 | | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 6   Net section 1231 gain (loss) (other than due to casualty or theft) | 6 | | |
| | 7   Other income (loss) (attach schedule) . . . . . . . . | 7 | (596,118) | Enter on applicable line of your return. |
| **Deductions** | 8   Charitable contributions (see instructions) (attach schedule) | 8 | | Sch. A, line 15 or 16 |
| | 9   Section 179 expense deduction . . . . . . . . . . | 9 | | See pages 7 and 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 10   Deductions related to portfolio income (attach schedule) . . | 10 | | |
| | 11   Other deductions (attach schedule). . . . . . . . . | 11 | | |
| **Credits** | 12a  Low-income housing credit: | | | |
| | (1) From section 42(j)(5) partnerships . . . . . . . . | 12a(1) | | Form 8586, line 5 |
| | (2) Other than on line 12a(1) . . . . . . . . . . | 12a(2) | | |
| | b   Qualified rehabilitation expenditures related to rental real estate activities . . . . . . . . . . . . . . . . | 12b | | |
| | c   Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities . . . . . . . . . . | 12c | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | d   Credits related to other rental activities . . . . . . . | 12d | | |
| | 13   Other credits . . . . . . . . . . . . . . . . | 13 | | |

For Paperwork Reduction Act Notice, see Instructions for Form 1065.          Cat. No. 11394R          Schedule K-1 (Form 1065) 2002

8/12/2003 10:09:09 AM

13

Schedule K-1 (Form 1065) 2002
Page **2**

| | | (a) Distributive share item | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| **Investment Interest** | **14a** | Interest expense on investment debts | 9,255 | Form 4952, line 1 |
| | **b** | **(1)** Investment income included on lines 4a, 4b, 4c, and 4f | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | | **(2)** Investment expenses included on line 10 | | |
| **Self-em- ployment** | **15a** | Net earnings (loss) from self-employment | | Sch. SE, Section A or B |
| | **b** | Gross farming or fishing income | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | **c** | Gross nonfarm income | | |
| **Adjustments and Tax Preference Items** | **16a** | Depreciation adjustment on property placed in service after 1986 | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065) and Instructions for Form 6251. |
| | **b** | Adjusted gain or loss | | |
| | **c** | Depletion (other than oil and gas) | | |
| | **d** | **(1)** Gross income from oil, gas, and geothermal properties | | |
| | | **(2)** Deductions allocable to oil, gas, and geothermal properties | | |
| | **e** | Other adjustments and tax preference items *(attach schedule)* | | |
| **Foreign Taxes** | **17a** | Name of foreign country or U.S. possession ▶  VARIOUS | | Form 1116, Part I |
| | **b** | Gross income from all sources | | |
| | **c** | Gross income sourced at partner level | | |
| | **d** | Foreign gross income sourced at partnership level: | | |
| | | **(1)** Passive | | |
| | | **(2)** Listed categories *(attach schedule)* | | |
| | | **(3)** General limitation | | |
| | **e** | Deductions allocated and apportioned at partner level: | | |
| | | **(1)** Interest expense | | |
| | | **(2)** Other | | |
| | **f** | Deductions allocated and apportioned at partnership level to foreign source income: | | |
| | | **(1)** Passive | | |
| | | **(2)** Listed categories *(attach schedule)* | | |
| | | **(3)** General limitation | | |
| | **g** | Total foreign taxes (check one): ▶ ☐ Paid  ☐ Accrued | | Form 1116, Part II |
| | **h** | Reduction in taxes available for credit *(attach schedule)* | | Form 1116, line 12 |
| **Other** | **18** | Section 59(e)(2) expenditures: a Type ▶ | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | **b** | Amount | | |
| | **19** | Tax-exempt interest income | | Form 1040, line 8b |
| | **20** | Other tax-exempt income | | See pages 9 and 10 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | **21** | Nondeductible expenses | | |
| | **22** | Distributions of money (cash and marketable securities) | 0 | |
| | **23** | Distributions of property other than money | | |
| | **24** | Recapture of low-income housing credit: | | Form 8611, line 8 |
| | **a** | From section 42(j)(5) partnerships | | |
| | **b** | Other than on line 24a | | |
| **Supplemental Information** | **25** | Supplemental information required to be reported separately to each partner *(attach additional schedules if more space is needed):* | | |

See attached schedules

⊛

13-4198369
Linuxor Global Macro Fund, L.P.

13-7314747
2001, Jane F. McCarthe Grat No. 5

Schedule K-1 (Form 1065) 2002

13

**FORM 1065 - PARTNER'S SHARE OF INCOME AND DEDUCTIONS - 2002**
**SCHEDULE K-1 SUPPLEMENTAL INFORMATION**

| | |
|---|---|
| Partner's ID No. 13-7314747 | |
| **Partner's name, address, and ZIP code**<br>2001, Jane F. McCarthe Grat No. 5<br>JFM Capital Management, LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | **Partnership's ID No.** 13-4198369<br><br>**Partnership's name, address, and ZIP code**<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square,  2nd Floor<br>New York, NY 10004 |

**Line 25 - Supplemental information required to be reported separately to each partner:**

**Gain or Loss on Liquidation of Partnership Interest:**

If you made a withdrawal from the Partnership, you may have a gain or loss.
Please consult your tax advisor.

**Item J, Column (c):**

| | | |
|---|---|---:|
| Unrealized appreciation/depreciation and timing differences | $ | (75,340) |
| Tax-exempt interest & other tax-exempt income | | 0 |
| Nondeductible expenses | | 0 |
| Taxable income (loss) | | (652,677) |
| **Total** | $ | (728,017) |

**Line 1 - Ordinary income (loss) from trade or business activities:**

Income reported on line 1 is not passive income (loss) and is not portfolio
income (loss) for purposes of the passive activity loss rules (Temp. Reg.
Sec. 1.469-1T(e)(6); Sec. 1.469-2T(c)(3)(ii)(D)).  The amount reported
on line 1 should be entered by an "Individual" taxpayer on Schedule E,
Part II as nonpassive.

**Line 7 - Other Income (loss):**

| | | |
|---|---|---:|
| Net Short-Term Capital Gain (Loss) | $ | (9,556) |
| Net Long-Term Capital Gain (Loss), includes qualified 5-year gain of  $  0 | | 0 |
| Section 1256 Net Gain (Loss) * | | (614,566) |
| Section 988 - Foreign Currency Transaction Gain (Loss) | | 28,004 |
| Other income (loss) | | 0 |
| **Total** | $ | (596,118) |

* Taxpayers should report 1256 gain or loss on Form 6781

FORM 1065 - PARTNER'S SHARE OF INCOME AND DEDUCTIONS - 2002
SCHEDULE K-1 SUPPLEMENTAL INFORMATION

| Partner's ID No. 13-7314747 | Partnership's ID No. 13-4198369 |
|---|---|
| **Partner's name, address, and ZIP code**<br>2001, Jane F. McCarthe Grat No. 5<br>JFM Capital Management, LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | **Partnership's name, address, and ZIP code**<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

**Line 25 - Supplemental information required to be reported separately to each partner:**

**Line 14a - Interest expense on investment debts:**

"Individual" partners that do not materially participate in the operations of
the Partnership must report interest expense as investment interest expense
on Form 4952, line 1. "Individual" partners that materially participate and
"C" corporations should combine the amount on line 14a with the amount
on line 1.

**Unrelated Business Taxable Income:**

If you are a tax-exempt entity, your share of Unrelated Business Taxable
Income (Loss) is reported below:

| | | |
|---|---|---|
| Ordinary Income (Loss): | $ | (6,568) |
| Short-Term Capital Gain (Loss): | $ | (1,146) |
| Long-Term Capital Gain (Loss): | $ | 0 |

**Interest Income from U.S. Obligations:**

Included in line 1 is your share of interest income from U.S.
Obligations:    $    0

Your share of cost to carry U.S. Obligations is as follows:

| | | |
|---|---|---|
| Interest expense: | $ | 0 |
| Other expenses: | $ | 0 |

**Dividends Qualifying for 70% Dividend Received Deduction:**

Your share of dividends from domestic corporations, included in line 1,
qualifying for 70% Dividend Received Deduction is as follows:    $    0

13

# Exhibit E-2

www.rkco.com 

August 27, 2003

McCarthey Investments LLC
610 East South Temple, Suite 200
Salt Lake City, UT 84102

Dear Partner:

Enclosed please find your K-1 tax information and instructions for Linuxor Global Macro
Fund L.P. for December 31, 2002. If you have any questions, please feel free to
contact John Zacharella at JZacharella@rkco.com or Gary Berger at
GBerger@rkco.com.

Sincerely,

Rothstein, Kass & Company, P.C.

1177 Avenue of the Americas    9171 Wilshire Boulevard    500 Ygnacio Valley Road    2515 McKinney Avenue    3 Becker Farm Road
New York, NY 10036    Beverly Hills, CA 90210    Walnut Creek, CA 94955    Dallas, TX 75201    Roseland, NJ 07068
(212) 997-0500    (310) 273-2770    (925) 946-1300    (214) 665-6000    (973) 994-6666
Fax (212) 730-6892    Fax (310) 273-6649    Fax (925) 947-1700    Fax (214) 965-0710    Fax (973) 758-1958

Member AGN Affiliated Offices Worldwide

00296

Jun 10 05 03:55p        . .                   801 363 6583              p.6

## INSTRUCTIONS FOR TRADE OR BUSINESS

Attached is a copy of Schedule K-1, Form 1065 which lists your distributive share of the Partnership's taxable income (loss) for the year ended December 31, 2002. These amounts are to be reported on your 2002 Income Tax Returns.

In connection with the information included on the attached copy of Federal Schedule K-1, please note the following:

### Trade or Business

The Partnership has taken the position that it is engaged in the active conduct of a business as a trader in securities. The trading operation is <u>not</u> passive income and is not portfolio income for purposes of the passive activity loss rules (Temp. Reg. Section 1.469-1T(e)(6); Section 1.469-2T(c)(3)(ii)(D)).

Each partner must individually determine whether or not he or she materially participated during the year in the operations of the Partnership, since this affects the presentation and placement of interest expense on your tax return. The Schedule K-1 has been prepared on the basis of a partner who <u>does not</u> materially participate in the operations of the Partnership. Limited partners generally do not materially participate in the trading activities of the Partnership. Accordingly, interest expense reported on line 14a should be reported by an "Individual" taxpayer on Form 4952 line 1 – investment interest expense. Any deductible interest expense should be entered on Schedule E, Part II, column (i). For purposes of determining the investment interest expense limitation, the amounts shown on lines 1 and 7 will affect the computation of investment income.

A partner that materially participates in the trading operation of the Partnership, or a partner that is a "C" corporation, should combine the net ordinary income (loss) reported on line 1 with the interest expense reported on line 14a.

### Trader Net Long-Term Capital Gain (Loss)

The supporting schedule for line 7 includes your share of net long-term capital gain (loss). The amount of qualified 5-year gain, if any, included in the net long-term capital gain (loss) is separately stated. Qualified 5-year gain is subject to a special reduced 8% tax rate for individuals reporting a net long-term capital gain. The reduced tax rate of 8% is available only to the extent that the qualified 5-year gain falls within the 15% tax bracket.

*Rothstein, Kass & Company, P.C.*

**00297**

**Dividends Eligible for Dividend – Received – Deduction (DRD)**
The qualifying dividends represent the amount of dividends from less than 20% owned domestic corporations eligible for the dividends received deduction under IRC Section 243(a). The balance of dividends is not eligible for the dividends received deduction.

**Unrelated Business Taxable Income (Loss)**
If you are a tax-exempt entity and you have gross income from an unrelated trade or business of $1,000 or more, you must file Form 990-T. The law is not entirely clear as to the proper way to determine income (loss) that is attributable to the use of leverage ("debt-financed income"). We have computed UBTI based on our interpretation of the law. Our computation of UBTI has been reflected on line 25 of Schedule K-1.

**Guaranteed Payments**
Guaranteed payments do not constitute passive income. Guaranteed payments that represent interest on capital constitute investment income for purposes of the investment interest expense limitation.

**State & Local Tax Information**
If you are required to file a state income tax return, your share of interest income from obligations issued by the U.S. Government or its agencies and your share of expenses to carry such obligations are reported on line 25 of Schedule K-1.

**THESE INSTRUCTIONS INVOLVE COMPLEX INCOME TAX MATTERS WHICH OFTEN AFFECT TAXPAYERS DIFFERENTLY DEPENDING UPON THEIR OWN PARTICULAR FACTS AND CIRCUMSTANCES. THEREFORE, YOU SHOULD CONSIDER CONSULTING WITH A PROFESSIONAL TAX ADVISER IF YOU ARE UNCERTAIN ABOUT THE TREATMENT OF ANY ITEM REPORTED ON SCHEDULE K-1 AND THE ACCOMPANYING ATTACHMENTS.**

*Rothstein, Kass & Company, P.C.*

Jun 10 05 03:55p    ..    801 363 6583    p.1

| SCHEDULE K-1 (Form 1065) | Partner's Share of Income, Credits, Deductions, etc. | OMB No. 1545-0099 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ See separate instructions. | |
| | For calendar year 2002 or tax year beginning _____, 2002 and ending _____, 2002 | **2002** |

| Partner's identifying number ▶ 33-1002055 | Partnership's identifying number ▶ 13-4198369 |
|---|---|
| Partner's name, address, and ZIP code | Partnership's name, address, and ZIP code |
| McCarthey Investments LLC | Linuxor Global Macro Fund, L.P. |
| 610 East South Temple, Suite 200 | 7 Hanover Square, 2nd Floor |
| Salt Lake City, UT 84102 | New York, NY 10004 |

A  This partner is a ☐ general partner  ☑ limited partner
☐ limited liability company member
B  What type of entity is this partner?  ▶ ____ LLC
C  Is this partner a  ☑ domestic or a  ☐ foreign partner?

D  Enter partner's percentage of:
| | (i) Before change or termination | (ii) End of year |
|---|---|---|
| Profit sharing | _____ % | VAR % |
| Loss sharing | _____ % | VAR % |
| Ownership of capital | _____ % | 42.94 % |

E  IRS Center where partnership filed return:  Cincinnati, OH

F  Partner's share of liabilities (see instructions):
Nonrecourse . . . . . $ _____
Qualified nonrecourse financing $ _____
Other . . . . . . $ _____

G  Tax shelter registration number . ▶ _____

H  Check here if this partnership is a publicly traded partnership as defined in section 469(k)(2) . . . . ☐

I  Check applicable boxes:  (1) ☐ Final K-1  (2) ☐ Amended K-1

J  Analysis of partner's capital account:

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's Share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| 0 | 5,000,000 | (2,127,050) | 0 | 2,872,950 |

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| **Income (Loss)** | 1 Ordinary income (loss) from trade or business activities . . . . | 1 | (73,395) | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 2 Net income (loss) from real estate rental activities . . . . | 2 | | |
| | 3 Net income (loss) from other rental activities . . . . | 3 | | |
| | 4 Portfolio income (loss): | | | |
| | a Interest . . . . . . . . . . . . . . . . | 4a | | Sch. B, Part I, line 1 |
| | b Ordinary dividends . . . . . . . . . . . . | 4b | | Sch. B, Part II, line 5 |
| | c Royalties . . . . . . . . . . . . . . . | 4c | | Sch. E, Part I, line 4 |
| | d Net short-term capital gain (loss) . . . . . . . | 4d | | Sch. D, line 5, col. (f) |
| | e (1) Net long-term capital gain (loss) . . . . . . | 4e(1) | | Sch. D, line 12, col. (f) |
| | (2) 28% rate gain (loss) . . . . . . . . | 4e(2) | | Sch. D, line 12, col. (g) |
| | (3) Qualified 5-year gain . . . . . . . . | 4e(3) | | Line 5 of worksheet for Sch. D, line 29 |
| | f Other portfolio income (loss) (attach schedule) . . . | 4f | | Enter on applicable line of your return. |
| | 5 Guaranteed payments to partner . . . . . . . | 5 | | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 6 Net section 1231 gain (loss) (other than due to casualty or theft) | 6 | | |
| | 7 Other income (loss) (attach schedule) . . . . . | 7 | (1,792,444) | Enter on applicable line of your return. |
| **Deductions** | 8 Charitable contributions (see instructions) (attach schedule) . | 8 | | Sch. A, line 15 or 16 |
| | 9 Section 179 expense deduction . . . . . . . | 9 | | See pages 7 and 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 10 Deductions related to portfolio income (attach schedule) | 10 | | |
| | 11 Other deductions (attach schedule) . . . . . | 11 | | |
| **Credits** | 12a Low-income housing credit: | | | |
| | (1) From section 42(j)(5) partnerships . . . . | 12a(1) | | Form 8586, line 5 |
| | (2) Other than on line 12a(1) . . . . . . | 12a(2) | | |
| | b Qualified rehabilitation expenditures related to rental real estate activities . . . . . . . . . | 12b | | |
| | c Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities . . . . | 12c | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | d Credits related to other rental activities . . . . | 12d | | |
| | 13 Other credits . . . . . . . . . . . | 13 | | |

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    Cat. No. 11394R    Schedule K-1 (Form 1065) 2002

8/27/2003 9:20:55 PM    11

| **Supplemental Information** | _____ needed: |
|---|---|
| | _____ |
| | See attached schedules |
| | _____ |
| | _____ |
| | _____ |
| | _____ |
| | _____ |
| | _____ |

⊕    Schedule K-1 (Form 1065) 2002

13-4198369    33-1002055
Linuxor Global Macro Fund, L.P.    McCarthey Investments LLC
    11

**00299**

Schedule K-1 (Form 1065) 2002

Page 2

| (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|
| **Investment Interest** | 14a Interest expense on investment debts . . . . . . | 14a | 32,348 | Form 4952, line 1 |
| | b (1) Investment income included on lines 4a, 4b, 4c, and 4f | 14b(1) | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | (2) Investment expenses included on line 10 . . . . . | 14b(2) | | |
| **Self-em- ployment** | 15a Net earnings (loss) from self-employment . . . . | 15a | | Sch. SE, Section A or B |
| | b Gross farming or fishing income . . . . . . . | 15b | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | c Gross nonfarm income . . . . . . . . . . | 15c | | |
| **Adjustments and Tax Preference Items** | 16a Depreciation adjustment on property placed in service after 1986 | 16a | | |
| | b Adjusted gain or loss . . . . . . . . . . | 16b | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065) and Instructions for Form 6251. |
| | c Depletion (other than oil and gas) . . . . . . . | 16c | | |
| | d (1) Gross income from oil, gas, and geothermal properties | 16d(1) | | |
| | (2) Deductions allocable to oil, gas, and geothermal properties | 16d(2) | | |
| | e Other adjustments and tax preference items (attach schedule) | 16e | | |
| **Foreign Taxes** | 17a Name of foreign country or U.S. possession ► VARIOUS | | | |
| | b Gross income from all sources . . . . . . . . | 17b | | |
| | c Gross income sourced at partner level . . . . . . | 17c | | |
| | d Foreign gross income sourced at partnership level: | | | |
| | (1) Passive . . . . . . . . . . . . . . | 17d(1) | | |
| | (2) Listed categories (attach schedule) . . . . . . | 17d(2) | | |
| | (3) General limitation . . . . . . . . . . . | 17d(3) | | Form 1116, Part I |
| | e Deductions allocated and apportioned at partner level: | | | |
| | (1) Interest expense . . . . . . . . . . . | 17e(1) | | |
| | (2) Other . . . . . . . . . . . . . . . | 17e(2) | | |
| | f Deductions allocated and apportioned at partnership level to foreign source income: | | | |
| | (1) Passive . . . . . . . . . . . . . . | 17f(1) | | |
| | (2) Listed categories (attach schedule) . . . . . . | 17f(2) | | |
| | (3) General limitation . . . . . . . . . . . | 17f(3) | | |
| | g Total foreign taxes (check one): ► ☐ Paid  ☐ Accrued . | 17g | | Form 1116, Part II |
| | h Reduction in taxes available for credit (attach schedule) . | 17h | | Form 1116, line 12 |
| **Other** | 18 Section 59(e)(2) expenditures: a Type ► ................ | | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | b Amount . . . . . . . . . . . . . . . | 18b | | |
| | 19 Tax-exempt interest income . . . . . . . . . | 19 | | Form 1040, line 8b |
| | 20 Other tax-exempt income . . . . . . . . . . | 20 | | |
| | 21 Nondeductible expenses . . . . . . . . . . | 21 | | See pages 9 and 10 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 22 Distributions of money (cash and marketable securities) . . | 22 | 0 | |
| | 23 Distributions of property other than money . . . . . | 23 | | |
| | 24 Recapture of low-income housing credit: | | | |
| | a From section 42(j)(5) partnerships . . . . . . . | 24a | | Form 8611, line 8 |
| | b Other than on line 24a . . . . . . . . . . | 24b | | |
| **Supplemental Information** | 25 Supplemental information required to be reported separately to each partner (attach additional schedules if more space is needed): | | | |
| | ............................................................ | | | |
| | ............................................................ | | | |
| | ...................... See attached schedules ..................... | | | |
| | ............................................................ | | | |
| | ............................................................ | | | |
| | ............................................................ | | | |
| | ............................................................ | | | |
| | ............................................................ | | | |

⊛

Schedule K-1 (Form 1065) 2002

13-4198389
Linuxor Global Macro Fund, L.P.

33-1002055
McCarthey Investments LLC
11

**00300**

FORM 1065 - PARTNER'S SHARE OF INCOME AND DEDUCTIONS - 2002
SCHEDULE K-1 SUPPLEMENTAL INFORMATION

| Partner's ID No. 33-1002055 | Partnership's ID No. 13-4198369 |
|---|---|
| Partner's name, address, and ZIP code<br>McCarthey Investments LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | Partnership's name, address, and ZIP code<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

| Line 25 - Supplemental information required to be reported separately to each partner: |
|---|

**Gain or Loss on Liquidation of Partnership Interest:**
If you made a withdrawal from the Partnership, you may have a gain or loss.
Please consult your tax advisor.

**Item J, Column (c):**

| | | |
|---|---|---:|
| Unrealized appreciation/depreciation and timing differences | $ | (228,863) |
| Tax-exempt interest & other tax-exempt income | | 0 |
| Nondeductible expenses | | 0 |
| Taxable income (loss) | | (1,898,187) |
| **Total** | $ | (2,127,050) |

**Line 1 - Ordinary income (loss) from trade or business activities:**
Income reported on line 1 is not passive income (loss) and is not portfolio
income (loss) for purposes of the passive activity loss rules (Temp. Reg.
Sec. 1.469-1T(e)(6); Sec. 1.469-2T(c)(3)(ii)(D)). The amount reported
on line 1 should be entered by an "individual" taxpayer on Schedule E,
Part II as nonpassive.

**Line 7 - Other income (loss):**

| | | |
|---|---|---:|
| Net Short-Term Capital Gain (Loss) | $ | 533,818 |
| Net Long-Term Capital Gain (Loss), includes qualified 5-year gain of $ 0 | | 0 |
| Section 1256 Net Gain (Loss) * | | (2,401,925) |
| Section 988 - Foreign Currency Transaction Gain (Loss) | | 75,663 |
| Other income (loss) | | 0 |
| **Total** | $ | (1,792,444) |

* Taxpayers should report 1256 gain or loss on Form 6781

11

**00301**

FORM 1065 - PARTNER'S SHARE OF INCOME AND DEDUCTIONS - 2002
SCHEDULE K-1 SUPPLEMENTAL INFORMATION

| Partner's ID No. 33-1002055 | Partnership's ID No. 13-4198369 |
|---|---|
| Partner's name, address, and ZIP code<br>McCarthey Investments LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | Partnership's name, address, and ZIP code<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

**Line 25 - Supplemental Information required to be reported separately to each partner:**

**Line 14a - Interest expense on investment debts:**
"Individual" partners that do not materially participate in the operations of
the Partnership must report interest expense as investment interest expense
on Form 4952, line 1. "Individual" partners that materially participate and
"C" corporations should combine the amount on line 14a with the amount
on line 1.

**Unrelated Business Taxable Income:**
If you are a tax-exempt entity, your share of Unrelated Business Taxable
Income (Loss) is reported below:

| | | |
|---|---|---|
| Ordinary Income (Loss): | $ | (7,659) |
| Short-Term Capital Gain (Loss): | $ | (3,482) |
| Long-Term Capital Gain (Loss): | $ | 0 |

**Interest Income from U.S. Obligations:**
Included in line 1 is your share of interest income from U.S.

| | | |
|---|---|---|
| Obligations: | $ | 0 |

Your share of cost to carry U.S. Obligations is as follows:

| | | |
|---|---|---|
| Interest expense: | $ | 0 |
| Other expenses: | $ | 0 |

**Dividends Qualifying for 70% Dividend Received Deduction:**
Your share of dividends from domestic corporations, included in line 1,

| | | |
|---|---|---|
| qualifying for 70% Dividend Received Deduction is as follows: | $ | 0 |

11

00302

Jun 10 05 04:06p          ··                    801 363 6583                    P.28



www.rkco.com

*Rothstein, Kass & Company, P.C.*
CERTIFIED PUBLIC ACCOUNTANTS

August 27, 2003

2001, Jane F. McCarthe Grat No. 5
JFM Capital Management, LLC
610 East South Temple, Suite 200
Salt Lake City, UT 84102

Dear Partner:

Enclosed please find your K-1 tax information and instructions for Linuxor Global Macro
Fund L.P. for December 31, 2002. If you have any questions, please feel free to
contact John Zacharella at JZacharella@rkco.com or Gary Berger at
GBerger@rkco.com.

Sincerely,

Rothstein, Kass & Company, P.C.

1177 Avenue of the Americas          9171 Wilshire Boulevard          500 Ygnacio Valley Road          2515 McKinney Avenue          3 Becker Farm Road
New York, NY 10036          Beverly Hills, CA 90210          Walnut Creek, CA 94556          Dallas, TX 75201          Roseland, NJ 07068
(212) 997-0500          (310) 273-2770          (925) 946-1300          (214) 665-6000          (973) 994-6666
Fax (212) 730-5892          Fax (310) 273-6649          Fax (925) 947-1700          Fax (214) 965-0710          Fax (973) 758-1958

Member AGN Affiliated Offices Worldwide

00303

### INSTRUCTIONS FOR TRADE OR BUSINESS

Attached is a copy of Schedule K-1, Form 1065 which lists your distributive share of the Partnership's taxable income (loss) for the year ended December 31, 2002. These amounts are to be reported on your 2002 Income Tax Returns.

In connection with the information included on the attached copy of Federal Schedule K-1, please note the following:

#### Trade or Business

The Partnership has taken the position that it is engaged in the active conduct of a business as a trader in securities. The trading operation is <u>not</u> passive income and is not portfolio income for purposes of the passive activity loss rules (Temp. Reg. Section 1.469-1T(e)(6); Section 1.469-2T(c)(3)(ii)(D)).

Each partner must individually determine whether or not he or she materially participated during the year in the operations of the Partnership, since this affects the presentation and placement of interest expense on your tax return. The Schedule K-1 has been prepared on the basis of a partner who <u>does not</u> materially participate in the operations of the Partnership. Limited partners generally do not materially participate in the trading activities of the Partnership. Accordingly, interest expense reported on line 14a should be reported by an "Individual" taxpayer on Form 4952 line 1 – investment interest expense. Any deductible interest expense should be entered on Schedule E, Part II, column (i). For purposes of determining the investment interest expense limitation, the amounts shown on lines 1 and 7 will affect the computation of investment income.

A partner that materially participates in the trading operation of the Partnership, or a partner that is a "C" corporation, should combine the net ordinary income (loss) reported on line 1 with the interest expense reported on line 14a.

#### Trader Net Long-Term Capital Gain (Loss)

The supporting schedule for line 7 includes your share of net long-term capital gain (loss). The amount of qualified 5-year gain, if any, included in the net long-term capital gain (loss) is separately stated. Qualified 5-year gain is subject to a special reduced 8% tax rate for individuals reporting a net long-term capital gain. The reduced tax rate of 8% is available only to the extent that the qualified 5-year gain falls within the 15% tax bracket.

_____ *Rothstein, Kass & Company, P.C.*

00304

### Dividends Eligible for Dividend – Received – Deduction (DRD)

The qualifying dividends represent the amount of dividends from less than 20% owned <u>domestic corporations</u> eligible for the dividends received deduction under IRC Section 243(a). The balance of dividends is not eligible for the dividends received deduction.

### Unrelated Business Taxable Income (Loss)

If you are a tax-exempt entity and you have gross income from an unrelated trade or business of $1,000 or more, you must file Form 990-T. The law is not entirely clear as to the proper way to determine income (loss) that is attributable to the use of leverage ("debt-financed income"). We have computed UBTI based on our interpretation of the law. Our computation of UBTI has been reflected on line 25 of Schedule K-1.

### Guaranteed Payments

Guaranteed payments do not constitute passive income. Guaranteed payments that represent interest on capital constitute investment income for purposes of the investment interest expense limitation.

### State & Local Tax Information

If you are required to file a state income tax return, your share of interest income from obligations issued by the U.S. Government or its agencies and your share of expenses to carry such obligations are reported on line 25 of Schedule K-1.


THESE INSTRUCTIONS INVOLVE COMPLEX INCOME TAX MATTERS WHICH OFTEN AFFECT TAXPAYERS DIFFERENTLY DEPENDING UPON THEIR OWN PARTICULAR FACTS AND CIRCUMSTANCES. THEREFORE, YOU SHOULD CONSIDER CONSULTING WITH A PROFESSIONAL TAX ADVISER IF YOU ARE UNCERTAIN ABOUT THE TREATMENT OF ANY ITEM REPORTED ON SCHEDULE K-1 AND THE ACCOMPANYING ATTACHMENTS.

*Rothstein, Kass & Company, P.C.*

00305

Jun 10 05 04:03p    ..                          801 363 6583              p.22

| SCHEDULE K-1 | Partner's Share of Income, Credits, Deductions, etc. | | OMB No. 1545-0099 |
|---|---|---|---|
| **(Form 1065)** Department of the Treasury Internal Revenue Service | ► See separate instructions. For calendar year 2002 or tax year beginning , 2002, and ending , 2002 | | **2002** |

| Partner's identifying number ►13-7314747 | Partnership's identifying number ►13-4198369 |
|---|---|
| Partner's name, address, and ZIP code 2001, Jane F. McCarthe Grat No. 5 JFM Capital Management, LLC 610 East South Temple, Suite 200 Salt Lake City, UT 84102 | Partnership's name, address, and ZIP code Linuxor Global Macro Fund, L.P. 7 Hanover Square, 2nd Floor New York, NY 10004 |

A  This partner is a ☐ general partner  ☑ limited partner
☐ limited liability company member
B  What type of entity is this partner?  ►  ___TRUST___
C  Is this partner a  ☑ domestic or a  ☐ foreign partner?

D  Enter partner's percentage of:
                             (i) Before change  (ii) End of
                            or termination  year
   Profit sharing . . . . . . . . . . _____% VAR.. %
   Loss sharing . . . . . . . . . . _____% VAR.. %
   Ownership of capital . . . . . . _____% 11.54 %
E  IRS Center where partnership filed return: Cincinnati, OH

F  Partner's share of liabilities (see instructions):
   Nonrecourse . . . . . . . . . $ ...............
   Qualified nonrecourse financing . $ ...............
   Other . . . . . . . . . . . . $ ...............

G  Tax shelter registration number .  ► ...............

H  Check here if this partnership is a publicly traded
   partnership as defined in section 469(k)(2) . . . . . ☐

I  Check applicable boxes:  (1) ☐ Final K-1  (2) ☐ Amended K-1

J      Analysis of partner's capital account:

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| 0 | 1,500,000 | (728,017) | ( 0 ) | 771,983 |

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| **Income (Loss)** | 1  Ordinary income (loss) from trade or business activities . . . | 1 | (47,304) | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 2  Net income (loss) from rental real estate activities . . . . . | 2 | | |
| | 3  Net income (loss) from other rental activities . . . . . . . | 3 | | |
| | 4  Portfolio income (loss): | | | |
| | a  Interest . . . . . . . . . . . . . . . . . . . . . | 4a | | Sch. B, Part I, line 1 |
| | b  Ordinary dividends . . . . . . . . . . . . . . . . | 4b | | Sch. B, Part II, line 5 |
| | c  Royalties . . . . . . . . . . . . . . . . . . . . | 4c | | Sch. E, Part I, line 4 |
| | d  Net short-term capital gain (loss) . . . . . . . . . . . | 4d | | Sch. D, line 5, col. (f) |
| | e  (1) Net long-term capital gain (loss) . . . . . . . . . | 4e(1) | | Sch. D, line 12, col. (f) |
| |    (2) 28% rate gain (loss) . . . . . . . . . . . . | 4e(2) | | Sch. D, line 12, col. (g) |
| |    (3) Qualified 5-year gain . . . . . . . . . . . . | 4e(3) | | Line 5 of worksheet for Sch. D, line 29 |
| | f  Other portfolio income (loss) (attach schedule) . . . . . . | 4f | | On applicable line of your return. |
| | 5  Guaranteed payments to partner . . . . . . . . . . . | 5 | | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 6  Net section 1231 gain (loss) (other than due to casualty or theft) | 6 | | |
| | 7  Other income (loss) (attach schedule) . . . . . . . . . | 7 | (595,956) | Enter on applicable line of your return. |
| **Deductions** | 8  Charitable contributions (see instructions) (attach schedule) . | 8 | | Sch. A, line 15 or 16 |
| | 9  Section 179 expense deduction . . . . . . . . . . . | 9 | | See pages 7 and 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 10  Deductions related to portfolio income (attach schedule) . . | 10 | | |
| | 11  Other deductions (attach schedule) . . . . . . . . . . | 11 | | |
| **Credits** | 12a  Low-income housing credit: | | | |
| |    (1) From section 42(j)(5) partnerships . . . . . . . . . | 12a(1) | | Form 8586, line 5 |
| |    (2) Other than on line 12a(1) . . . . . . . . . . . | 12a(2) | | |
| | b  Qualified rehabilitation expenditures related to rental real estate activities . . . . . . . . . . . . . . . . . . | 12b | | |
| | c  Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities . . . . . . . . . . . | 12c | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | d  Credits related to other rental activities . . . . . . . . | 12d | | |
| | 13  Other credits . . . . . . . . . . . . . . . . . | 13 | | |

For Paperwork Reduction Act Notice, see Instructions for Form 1065.          Cat. No. 11394R          Schedule K-1 (Form 1065) 2002

8/27/2003 6:20:55 PM                                                    13

00306

Jun 10 05 04:04p    ··            801 363 6583        p.23

Schedule K-1 (Form 1065) 2002                                                  Page **2**

| | | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|---|
| **Investment Interest** | 14a | Interest expense on investment debts | 14a | 9,255 | Form 4952, line 1 |
| | b | (1) Investment income included on lines 4a, 4b, 4c, and 4f | 14b(1) | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | | (2) Investment expenses included on line 10 | 14b(2) | | |
| **Self-employment** | 15a | Net earnings (loss) from self-employment | 15a | | Sch. SE, Section A or B |
| | b | Gross farming or fishing income | 15b | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | c | Gross nonfarm income | 15c | | |
| **Adjustments and Tax Preference Items** | 16a | Depreciation adjustment on property placed in service after 1986 | 16a | | |
| | b | Adjusted gain or loss | 16b | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065) and Instructions for Form 6251. |
| | c | Depletion (other than oil and gas) | 16c | | |
| | d | (1) Gross income from oil, gas, and geothermal properties | 16d(1) | | |
| | | (2) Deductions allocable to oil, gas, and geothermal properties | 16d(2) | | |
| | e | Other adjustments and tax preference items (attach schedule) | 16e | | |
| **Foreign Taxes** | 17a | Name of foreign country or U.S. possession ► VARIOUS | | | |
| | b | Gross income from all sources | 17b | | |
| | c | Gross income sourced at partner level | 17c | | |
| | d | Foreign gross income sourced at partnership level: | | | |
| | | (1) Passive | 17d(1) | | |
| | | (2) Listed categories (attach schedule) | 17d(2) | | |
| | | (3) General limitation | 17d(3) | | |
| | e | Deductions allocated and apportioned at partner level: | | | Form 1116, Part I |
| | | (1) Interest expense | 17e(1) | | |
| | | (2) Other | 17e(2) | | |
| | f | Deductions allocated and apportioned at partnership level to foreign source income: | | | |
| | | (1) Passive | 17f(1) | | |
| | | (2) Listed categories (attach schedule) | 17f(2) | | |
| | | (3) General limitation | 17f(3) | | |
| | g | Total foreign taxes (check one): ► ☐ Paid ☐ Accrued | 17g | | Form 1116, Part II |
| | h | Reduction in taxes available for credit (attach schedule) | 17h | | Form 1116, line 12 |
| **Other** | 18 | Section 59(e)(2) expenditures: a Type ► | | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | b | Amount | 18b | | |
| | 19 | Tax-exempt interest income | 19 | | Form 1040, line 8b |
| | 20 | Other tax-exempt income | 20 | | |
| | 21 | Nondeductible expenses | 21 | | See pages 9 and 10 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 22 | Distributions of money (cash and marketable securities) | 22 | 0 | |
| | 23 | Distributions of property other than money | 23 | | |
| | 24 | Recapture of low-income housing credit: | | | |
| | a | From section 42(j)(5) partnerships | 24a | | Form 8611, line 8 |
| | b | Other than on line 24a | 24b | | |
| **Supplemental Information** | 25 | Supplemental information required to be reported separately to each partner (attach additional schedules if more space is needed): | | | |

See attached schedules

.........................................................................................................

.........................................................................................................

.........................................................................................................

.........................................................................................................

.........................................................................................................

✳                                           Schedule **K-1** (Form 1065) 2002

13-4198369                                             13-7314747

Linuxor Global Macro Fund, L.P.                   2001, Jane F. McCarthe Grat No. 5

                                                           13

00307

FORM 1065 - PARTNER'S SHARE OF INCOME AND DEDUCTIONS - 2002
SCHEDULE K-1 SUPPLEMENTAL INFORMATION

| Partner's ID No. 13-7314747 | Partnership's ID No. 13-4198369 |
|---|---|
| Partner's name, address, and ZIP code<br>2001, Jane F. McCarthe Grat No. 5<br>JFM Capital Management, LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | Partnership's name, address, and ZIP code<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

| Line 25 - Supplemental information required to be reported separately to each partner: |
|---|

**Gain or Loss on Liquidation of Partnership Interest:**

If you made a withdrawal from the Partnership, you may have a gain or loss.
Please consult your tax advisor.

**Item J, Column (c):**

| | |
|---|---|
| Unrealized appreciation/depreciation and timing differences | $ (75,502) |
| Tax-exempt interest & other tax-exempt income | 0 |
| Nondeductible expenses | 0 |
| Taxable income (loss) | (652,515) |
| **Total** | $ (728,017) |

**Line 1 - Ordinary income (loss) from trade or business activities:**

Income reported on line 1 is not passive income (loss) and is not portfolio
income (loss) for purposes of the passive activity loss rules (Temp. Reg.
Sec. 1.469-1T(e)(6); Sec. 1.469-2T(c)(3)(ii)(D)). The amount reported
on line 1 should be entered by an "Individual" taxpayer on Schedule E,
Part II as nonpassive.

**Line 7 - Other income (loss):**

| | |
|---|---|
| Net Short-Term Capital Gain (Loss) | $ 176,106 |
| Net Long-Term Capital Gain (Loss), includes qualified 5-year gain of $ .0 | 0 |
| Section 1256 Net Gain (Loss) * | (792,394) |
| Section 988 - Foreign Currency Transaction Gain (Loss) | 20,332 |
| Other income (loss) | 0 |
| **Total** | $ (595,956) |

\* Taxpayers should report 1256 gain or loss on Form 6781

13

00308

**FORM 1065 - PARTNER'S SHARE OF INCOME AND DEDUCTIONS - 2002**
**SCHEDULE K-1 SUPPLEMENTAL INFORMATION**

| Partner's ID No. 13-7314747 | Partnership's ID No. 13-4198369 |
|---|---|
| Partner's name, address, and ZIP code<br>2001, Jane F. McCarthe Grat No. 5<br>JFM Capital Management, LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | Partnership's name, address, and ZIP code<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

**Line 25 - Supplemental information required to be reported separately to each partner:**

**Line 14a - Interest expense on Investment debts:**

"Individual" partners that do not materially participate in the operations of
the Partnership must report interest expense as investment interest expense
on Form 4952, line 1. "Individual" partners that materially participate and
"C" corporations should combine the amount on line 14a with the amount
on line 1.

**Unrelated Business Taxable Income:**

If you are a tax-exempt entity, your share of Unrelated Business Taxable
Income (Loss) is reported below:

| | | |
|---|---|---|
| Ordinary Income (Loss): | $ | (20,351) |
| Short-Term Capital Gain (Loss): | $ | (1,148) |
| Long-Term Capital Gain (Loss): | $ | 0 |

**Interest Income from U.S. Obligations:**

Included in line 1 is your share of interest income from U.S.
Obligations:                                                                 $          0

Your share of cost to carry U.S. Obligations is as follows:

| | | |
|---|---|---|
| Interest expense: | $ | 0 |
| Other expenses: | $ | 0 |

**Dividends Qualifying for 70% Dividend Received Deduction:**

Your share of dividends from domestic corporations, included in line 1,
qualifying for 70% Dividend Received Deduction is as follows:                 $          0

13

00309

## INSTRUCTIONS FOR TRADE OR BUSINESS

Attached is a copy of Schedule K-1, Form 1065 which lists your distributive share of the Partnership's taxable income (loss) for the year ended December 31, 2002.  These amounts are to be reported on your 2002 Income Tax Returns.

In connection with the information included on the attached copy of Federal Schedule K-1, please note the following:

### Trade or Business
The Partnership has taken the position that it is engaged in the active conduct of a business as a trader in securities.  The trading operation is _not_ passive income and is not portfolio income for purposes of the passive activity loss rules (Temp. Reg. Section 1.469-1T(e)(6); Section 1.469-2T(c)(3)(ii)(D)).

Each partner must individually determine whether or not he or she materially participated during the year in the operations of the Partnership, since this affects the presentation and placement of interest expense on your tax return.  The Schedule K-1 has been prepared on the basis of a partner who **does not** materially participate in the operations of the Partnership.  Limited partners generally do not materially participate in the trading activities of the Partnership.  Accordingly, interest expense reported on line 14a should be reported by an "Individual" taxpayer on Form 4952 line 1 – Investment interest expense.  Any deductible interest expense should be entered on Schedule E, Part II, column (i).  For purposes of determining the investment interest expense limitation, the amounts shown on lines 1 and 7 will affect the computation of investment income.

A partner that materially participates in the trading operation of the Partnership, or a partner that is a "C" corporation, should combine the net ordinary income (loss) reported on line 1 with the interest expense reported on line 14a.

### Trader Net Long-Term Capital Gain (Loss)
The supporting schedule for line 7 includes your share of net long-term capital gain (loss).  The amount of qualified 5-year gain, if any, included in the net long-term capital gain (loss) is separately stated.  Qualified 5-year gain is subject to a special reduced 8% tax rate for individuals reporting a net long-term capital gain.  The reduced tax rate of 8% is available only to the extent that the qualified 5-year gain falls within the 15% tax bracket.

— *Rothstein, Kass & Company, P.C.*

Jun 10 05 04:00p          · ·              801 363 6583              P.17

**Dividends Eligible for Dividend – Received – Deduction (DRD)**

The qualifying dividends represent the amount of dividends from less than 20% owned domestic corporations eligible for the dividends received deduction under IRC Section 243(a). The balance of dividends is not eligible for the dividends received deduction.

**Unrelated Business Taxable Income (Loss)**

If you are a tax-exempt entity and you have gross income from an unrelated trade or business of $1,000 or more, you must file Form 990-T. The law is not entirely clear as to the proper way to determine income (loss) that is attributable to the use of leverage ("debt-financed income"). We have computed UBTI based on our interpretation of the law. Our computation of UBTI has been reflected on line 25 of Schedule K-1.

**Guaranteed Payments**

Guaranteed payments do not constitute passive income. Guaranteed payments that represent interest on capital constitute investment income for purposes of the investment interest expense limitation.

**State & Local Tax Information**

If you are required to file a state income tax return, your share of interest income from obligations issued by the U.S. Government or its agencies and your share of expenses to carry such obligations are reported on line 25 of Schedule K-1.

**THESE INSTRUCTIONS INVOLVE COMPLEX INCOME TAX MATTERS WHICH OFTEN AFFECT TAXPAYERS DIFFERENTLY DEPENDING UPON THEIR OWN PARTICULAR FACTS AND CIRCUMSTANCES. THEREFORE, YOU SHOULD CONSIDER CONSULTING WITH A PROFESSIONAL TAX ADVISER IF YOU ARE UNCERTAIN ABOUT THE TREATMENT OF ANY ITEM REPORTED ON SCHEDULE K-1 AND THE ACCOMPANYING ATTACHMENTS.**

———————————————————————— *Rothstein, Kass & Company, P.C.*

**00311**

Jun 10 05 03:58p            801 363 6583            P.12

| SCHEDULE K-1 (Form 1065) | **Partner's Share of Income, Credits, Deductions, etc.** | OMB No. 1545-0099 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ See separate instructions. | **2002** |
| | For calendar year 2002 or tax year beginning         , 2002, and ending         , 2002 | |

| Partner's identifying number ▶ 13-7260374 | Partnership's identifying number ▶ 13-4198369 |
|---|---|
| Partner's name, address, and ZIP code | Partnership's name, address, and ZIP code |
| JFM Holdings, LP | Linuxor Global Macro Fund, L.P. |
| JFM Capital Management, LLC | 7 Hanover Square, 2nd Floor |
| 610 East South Temple, Suite 200 | New York, NY 10004 |
| Salt Lake City, UT 84102 | |

**A** This partner is a ☐ general partner ☑ limited partner ☐ limited liability company member

**B** What type of entity is this partner? ▶ LP

**C** Is this partner a ☑ domestic or a ☐ foreign partner?

|  | (i) Before change or termination | (ii) End of year |
|---|---|---|
| **D** Enter partner's percentage of: | | |
| Profit sharing . . . . . . . . . . . . % | | VAR % |
| Loss sharing . . . . . . . . . . . . % | | VAR % |
| Ownership of capital . . . . . . . . % | | 42.94 % |

**E** IRS Center where partnership filed return: Cincinnati, OH

**F** Partner's share of liabilities (see instructions):
Nonrecourse . . . . . . . . . . . . $ _____
Qualified nonrecourse financing . . $ _____
Other . . . . . . . . . . . . . . . . $ _____

**G** Tax shelter registration number . . ▶ _____

**H** Check here if this partnership is a publicly traded partnership as defined in section 469(k)(2) . . . . . ☐

**I** Check applicable boxes: (1) ☐ Final K-1  (2) ☐ Amended K-1

**J** Analysis of partner's capital account:

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| 0 | 5,000,000 | (2,127,048) | ( 0 ) | 2,872,952 |

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| Income (Loss) | 1 Ordinary income (loss) from trade or business activities . . . . | 1 | (73,393) | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 2 Net income (loss) from rental real estate activities . . . . . | 2 | | |
| | 3 Net income (loss) from other rental activities . . . . . . . | 3 | | |
| | 4 Portfolio income (loss): | | | |
| | a Interest . . . . . . . . . . . . . . . . . . . . . . | 4a | | Sch. B, Part I, line 1 |
| | b Ordinary dividends . . . . . . . . . . . . . . . . . | 4b | | Sch. B, Part II, line 5 |
| | c Royalties . . . . . . . . . . . . . . . . . . . . . | 4c | | Sch. E, Part I, line 4 |
| | d Net short-term capital gain (loss) . . . . . . . . . . | 4d | | Sch. D, line 5, col. (f) |
| | e (1) Net long-term capital gain (loss) . . . . . . . . . | 4e(1) | | Sch. D, line 12, col. (f) |
| | (2) 28% rate gain (loss) . . . . . . . . . . . . . | 4e(2) | | Sch. D, line 12, col. (g) |
| | (3) Qualified 5-year gain . . . . . . . . . . . . . | 4e(3) | | Line 5 of worksheet for Sch. D, line 29 |
| | f Other portfolio income (loss) (attach schedule) . . . . . | 4f | | See applicable line of your return. |
| | 5 Guaranteed payments to partner . . . . . . . . . . | 5 | | See page 6 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 6 Net section 1231 gain (loss) (other than due to casualty or theft) | 6 | | |
| | 7 Other income (loss) (attach schedule) . . . . . . . . . . | 7 | (1,792,448) | Enter on applicable line of your return. |
| Deductions | 8 Charitable contributions (see instructions) (attach schedule) . | 8 | | Sch. A, line 15 or 16 |
| | 9 Section 179 expense deduction . . . . . . . . . . . | 9 | | See pages 7 and 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | 10 Deductions related to portfolio income (attach schedule) . . | 10 | | |
| | 11 Other deductions (attach schedule) . . . . . . . . . | 11 | | |
| Credits | 12a Low-income housing credit: | | | |
| | (1) From section 42(j)(5) partnerships . . . . . . . . | 12a(1) | | Form 8586, line 5 |
| | (2) Other than on line 12a(1) . . . . . . . . . . . . | 12a(2) | | |
| | b Qualified rehabilitation expenditures related to rental real estate activities . . . . . . . . . . . . . . . . . . | 12b | | See page 8 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | c Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities . . . . . . . . . . | 12c | | |
| | d Credits related to other rental activities . . . . . . . | 12d | | |
| | 13 Other credits . . . . . . . . . . . . . . . . . . | 13 | | |

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    Cat. No. 11394R    Schedule K-1 (Form 1065) 2002

8/27/2003 6:20:55 PM                    12

00312

Jun 10 05 04:01p     ..          801 383 6583          P.19

LINUXOR GLOBAL MACRO FUND, L.P.

13-4198369

SCHEDULE K-1                    OTHER INCOME (LOSS)

| DESCRIPTION | AMOUNT | PARTNER INSTRUCTIONS |
|---|---|---|
| SECTION 988 - FOREIGN CURRENCY TRANSACTION GAIN (LOSS) | 41,014. | |
| NET GAIN (LOSS) FROM SECTION 1256 CONTRACTS | <1,002,751.> | FORM 6781, LINE 1 |
| TOTAL TO SCHEDULE K-1, LINE 7 | <961,737.> | |

SCHEDULE K-1                    COLUMN C RECONCILIATION

| DESCRIPTION | AMOUNT |
|---|---|
| ORDINARY INCOME (LOSS) | <87,212.> |
| SHORT-TERM CAPITAL GAIN (LOSS) | <715,141.> |
| OTHER INCOME (LOSS) | <961,737.> |
| UNREALIZED DEPRECIATION AND TIMING DIFFERENCES | 135,793. |
| MANAGEMENT FEE | 21,914. |
| MANAGEMENT FEE | <21,914.> |
| TOTAL TO SCHEDULE K-1, ITEM J, COLUMN C | <1,628,297.> |

SCHEDULE K-1                    FOOTNOTES

LINE 1 - ORDINARY INCOME (LOSS) FROM TRADE OR BUSINESS
         ACTIVITIES
INCOME REPORTED ON LINE 1 IS NOT PASSIVE INCOME
AND IS NOT PORTFOLIO INCOME (LOSS) FOR PURPOSES
OF THE PASSIVE ACTIVITY RULES (TEMP. REG. SEC.
1.469-1T(E)(6); SEC. 1.469-2T(C)(3)(II)(D)).
THE INCOME REPORTED ON LINE 1 SHOULD BE ENTERED
BY AN "INDIVIDUAL" TAXPAYER ON SCHEDULE E, PART
II AS NONPASSIVE

3

b512

Schedule K-1 (Form 1065) 2003                                                          Page 2

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| **Investment Interest** | 14 a Interest expense on investment debts | 14a | | Form 4952, line 1 |
| | b (1) Investment income included on lines 4a, 4b(2), 4c, and 4f | 14b(1) | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | (2) Investment expenses included on line 10 | 14b(2) | | |
| **Self-employment** | 15 a Net earnings (loss) from self-employment | 15a | 0. | Sch. SE, Section A or B |
| | b Gross farming or fishing income | 15b | | See page 9 of Partner's Instructions for Schedule K-1 (Form 1065). |
| | c Gross nonfarm income | 15c | | |
| **Adjustments and Tax Preference Items** | 16 a Depreciation adjustment on property placed in service after 1986 | 16a | | See pages 9 and 10 of Partner's Instructions for Schedule K-1 (Form 1065) and Instructions for Form 6251. |
| | b Adjusted gain or loss | 16b | | |
| | c Depletion (other than oil and gas) | 16c | | |
| | d (1) Gross income from oil, gas, and geothermal properties | 16d(1) | | |
| | (2) Deductions allocable to oil, gas, and geothermal properties | 16d(2) | | |
| | e Other adjustments and tax preference items (attach schedule) | 16e | | |
| **Foreign Taxes** | 17 a Name of foreign country or U.S. possession ▶ | | | |
| | b Gross income from all sources | 17b | | |
| | c Gross income sourced at partner level | 17c | | |
| | d Foreign gross income sourced at partnership level: | | | |
| | (1) Passive | 17d(1) | | |
| | (2) Listed categories (attach schedule) | 17d(2) | | |
| | (3) General limitation | 17d(3) | | |
| | e Deductions allocated and apportioned at partner level: | | | Form 1116, Part I |
| | (1) Interest expense | 17e(1) | | |

00313

FORM 1065 - PARTNER'S SHARE OF INCOME AND DEDUCTIONS - 2002
SCHEDULE K-1 SUPPLEMENTAL INFORMATION

| Partner's ID No. 13-7260374 | Partnership's ID No. 13-4198369 |
|---|---|
| Partner's name, address, and ZIP code<br>JFM Holdings, LP<br>JFM Capital Management, LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | Partnership's name, address, and ZIP code<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

| Line 25 - Supplemental information required to be reported separately to each partner: |
|---|

**Gain or Loss on Liquidation of Partnership Interest:**

If you made a withdrawal from the Partnership, you may have a gain or loss.
Please consult your tax advisor.

**Item J, Column (c):**

| | | |
|---|---|---|
| Unrealized appreciation/depreciation and timing differences | $ | (228,863) |
| Tax-exempt interest & other tax-exempt income | | 0 |
| Nondeductible expenses | | 0 |
| Taxable Income (loss) | | (1,898,185) |
| **Total** | $ | (2,127,048) |

**Line 1 - Ordinary income (loss) from trade or business activities:**

Income reported on line 1 is not passive income (loss) and is not portfolio
income (loss) for purposes of the passive activity loss rules (Temp. Reg.
Sec. 1.469-1T(e)(6); Sec. 1.469-2T(c)(3)(ii)(D)).  The amount reported
on line 1 should be entered by an "Individual" taxpayer on Schedule E,
Part II as nonpassive.

**Line 7 - Other Income (loss):**

| | | |
|---|---|---|
| Net Short-Term Capital Gain (Loss) | $ | 533,819 |
| Net Long-Term Capital Gain (Loss), includes qualified 5-year gain of $ 0 | | 0 |
| Section 1256 Net Gain (Loss) * | | (2,401,932) |
| Section 988 - Foreign Currency Transaction Gain (Loss) | | 75,665 |
| Other income (loss) | | 0 |
| **Total** | $ | (1,792,448) |

* Taxpayers should report 1256 gain or loss on Form 6781

00314

FORM 1065 - PARTNER'S SHARE OF INCOME AND DEDUCTIONS - 2002
SCHEDULE K-1 SUPPLEMENTAL INFORMATION

| Partner's ID No.13-7260374 | |
| --- | --- |
| Partner's name, address, and ZIP code<br>JFM Holdings, LP<br>JFM Capital Management, LLC<br>610 East South Temple, Suite 200<br>Salt Lake City, UT 84102 | Partnership's ID No. 13-4198369 |
| | Partnership's name, address, and ZIP code<br>Linuxor Global Macro Fund, L.P.<br>7 Hanover Square, 2nd Floor<br>New York, NY 10004 |

**Line 25 – Supplemental information required to be reported separately to each partner:**

**Line 14a – Interest expense on investment debts:**

"Individual" partners that do not materially participate in the operations of
the Partnership must report interest expense as investment interest expense
on Form 4952, line 1. "Individual" partners that materially participate and
"C" corporations should combine the amount on line 14a with the amount
on line 1.

**Unrelated Business Taxable Income:**

If you are a tax-exempt entity, your share of Unrelated Business Taxable
Income (Loss) is reported below:

| | | |
| --- | --- | --- |
| Ordinary Income (Loss): | $ | (7,657) |
| Short-Term Capital Gain (Loss): | $ | (3,481) |
| Long-Term Capital Gain (Loss): | $ | 0 |

**Interest Income from U.S. Obligations:**

Included in line 1 is your share of interest income from U.S.
Obligations:                                                          $          0

Your share of cost to carry U.S. Obligations is as follows:

| | | |
| --- | --- | --- |
| Interest expense: | $ | 0 |
| Other expenses: | $ | 0 |

**Dividends Qualifying for 70% Dividend Received Deduction:**

Your share of dividends from domestic corporations, included in line 1,
qualifying for 70% Dividend Received Deduction is as follows:          $          0

12

00315

**Exhibit O**

From: **Todd Brashear <toddb@mccunemansion.com>**
  To: <ashah@isospace.com>
Subject: **Re: P/L summary**
  Date: Mon, 17 May 2004 17:04:35 -0600
  CC: Phil McCarthey <pmcc42@yahoo.com>

Abbas,

Last week's profit was very good. Keep it up!

Phil and I discussed the fund situation at length today and Phil would like to know what the ramifications would be if he wanted to withdraw $500,000 from the fund immediately (i.e. you wire the money by Wednesday of this week or FedEx a cashiers check to the office here in Salt Lake). The withdrawal would come from McCarthey Investments, LLC's. How quickly can you send the money? Would you have to sell out of some positions at a loss? Do we have to wait a certain time period from the date we request the withdrawal? Please let me know ASAP.

Also, from your last email regarding the audit/tax return, you indicated I wouldn't have to wait until 9/15/04 to get the K-1 schedule and that you changed audit/tax firms at my suggestion. I did not suggest to you that you should change firms. You decided to do that on your own. At any rate, now that you have changed firms, have you given the new firm all the paperwork to get started on the audit and tax return? From your last correspondence, it appears you had not given any information to the new firm yet or that you still had to gather data to give to new firm (you were not very clear in your email as to the situation or I might have misunderstood). Also, is the new firm going to go back and review the first year's activity since it was started in the prior year? It seems to me you would have been better off leaving the work with Rothstein Kass since they had audited the first year of the fund (it's expensive and time consuming to change auditors each year). I also remember speaking with John Zacharella at Rothstein Kass a number of times last year and he always indicated that the delay was due in large part to you since you were taking so much time to get the source documentation to them to begin the audit. I sure hope you have already given the information for 2003 to the new audit/tax firm so we don't have a repeat of last years debacle. Let me know the status of the audit as well as the new auditing firm manager/partner in charge of the audit so that I can speak to him directly.

I look forward to hearing from you.

Todd

**Exhibit P**

# HASE

217-00217-B017-00217-        -023-5-03-W B -2 00-
001478

LINUXOR GLOBAL MACRO FUND LP
20 EXCHANGE PLACE 45TH FL
NEW YORK NY  10005

May 26 - June 23, 2004
**Page 1 of 2**

**Customer Service**
Call Small Business ServiceLine at 1-800-CHASE38
• Small Business Experts - 6 a.m. to midnight ET
• Updated Account Information
• Transfer Funds/Pay Bills
• Hearing impaired call 1-800-CHASETD

Access Accounts, Make Payments, Transfer Money
Chase Online[SM] for Small Business
www.chase.com/cosb

Primary Account Number:  217-5038467-65
Number of Checks Enclosed: 0

## OVERVIEW

### Deposit Accounts - JPMorgan Chase Bank ("Bank")

| Checking | Opening Balance | Total Credits | Total Debits | Ending Balance |
|---|---|---|---|---|
| BusinessCustom Checking 217-5038467-65 | 500,500.00 | 5,144.63 | 0.00 | 505,644.63 |
| Business Money Market Account 217-5038467-66 | 0.01 | 0.00 | 0.00 | 0.01 |
| **Total** | **500,500.01** | **5,144.63** | **0.00** | **505,644.64** |

### THIS ENDS YOUR STATEMENT OVERVIEW

### Important Information

Your average checking account balance(s) in May totaled $468,881.33.

### BusinessCustom Checking          Account # 217-5038467-65          LINUXOR GLOBAL MACRO FUND LP

**Summary**

| | Number | Amount |
|---|---|---|
| Opening Balance | | 500,500.00 |
| Deposits and Credits | 1 | 5,144.63 |
| Withdrawals and Debits | 0 | 0.00 |
| Checks Paid | 0 | 0.00 |
| **Ending Balance** | | **505,644.63** |

### Deposits and Credits

| Date | Description | Amount |
|---|---|---|
| 05/27 | Bank Miscellaneous Credit | 5,144.63 |
| | **Total** | **5,144.63** |

### Daily Balances

| Date | Balance | Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|---|---|
| 05/27 | 505,644.63 | | | | | | |

**THE SMALL BUSINESS TEAM AT CHASE**

# CHASE

217-00217-B017-00217-      -023-5-03-W B -2 00-
001470
LINUXOR GLOBAL MACRO FUND LP
20 EXCHANGE PLACE 45TH FL
NEW YORK NY  10005

May 26 - June 23, 2004
Page 1 of 2

**Customer Service**
Call Small Business ServiceLine at 1-800-CHASE38
• Small Business Experts - 6 a.m. to midnight ET
• Updated Account Information
• Transfer Funds/Pay Bills
• Hearing impaired call 1-800-CHASETD

Access Accounts, Make Payments, Transfer Money
Chase Online[SM] for Small Business
www.chase.com/cosb

Primary Account Number:  217-5038467-65
Number of Checks Enclosed: 0

## OVERVIEW

### Deposit Accounts - JPMorgan Chase Bank ("Bank")

| Checking | Opening Balance | Total Credits | Total Debits | Ending Balance |
|---|---|---|---|---|
| BusinessCustom Checking 217-5038467-65 | 500,500.00 | 5,144.63 | 0.00 | 505,644.63 |
| Business Money Market Account 217-5038467-66 | 0.01 | 0.00 | 0.00 | 0.01 |
| **Total** | 500,500.01 | 5,144.63 | 0.00 | 505,644.64 |

### THIS ENDS YOUR STATEMENT OVERVIEW

### Important Information

Your average checking account balance(s) in May totaled $468,881.33.

### BusinessCustom Checking          Account # 217-5038467-65          LINUXOR GLOBAL MACRO FUND LP

| Summary | Number | Amount |
|---|---|---|
| Opening Balance | | 500,500.00 |
| Deposits and Credits | 1 | 5,144.63 |
| Withdrawals and Debits | 0 | 0.00 |
| Checks Paid | 0 | 0.00 |
| Ending Balance | | 505,644.63 |

### Deposits and Credits

| Date | Description | Amount |
|---|---|---|
| 05/27 | Bank Miscellaneous Credit | 5,144.63 |
| | Total | 5,144.63 |

### Daily Balances

| Date | Balance | Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|---|---|
| 05/27 | 505,644.63 | | | | | | |

3/4

**THE SMALL BUSINESS TEAM AT CHASE**[SM]

# CHASE

May 26 - June 23, 2004
**Page 2 of 2**

217-00217-B017-00217-        -023-5-03-W B -2 00-

Primary Account Number:  217-5038467-65

---

**BusinessCustom Checking** (continued)        Account # 217-5038467-65        LINUXOR GLOBAL MACRO FUND LP

## Service Fee Explanation

All service fees were waived on your account this month.

---

**Business Money Market Account**        Account # 217-5038467-66        LINUXOR GLOBAL MACRO FUND LP

| Summary | Number | Amount |
|---|---|---|
| Opening Balance | | 0.01 |
| Deposits and Credits | 0 | 0.00 |
| Withdrawals and Debits | 0 | 0.00 |
| Checks Paid | 0 | 0.00 |
| **Ending Balance** | | **0.01** |

## THIS ENDS YOUR STATEMENT FINANCIAL DATA

Personal accounts are subject to the Deposit Accounts Agreement and Disclosures.  Business Accounts are subject to the Terms and Conditions for Business Accounts and Services.  Please note the rules regarding the time within which you must notify JPMorgan Chase Bank (the "Bank") of any error or discrepancies. Call us at the phone number printed on the front of this statement, or write to us at:  P.O. Box 5206, New Hyde Park, NY 11042. In Texas, write to us at:  JPMorgan Chase Bank, P.O. Box 1231, Houston, Texas 77251-1231.

International Financial Services customers, please write to us at CIFS, P.O. Box 79779, Houston, TX 77224-9779.

Accounts held at the Bank, including checking, savings, CD, and money market accounts are FDIC Insured. Call us for full details and limitations of FDIC coverage.

**EQUAL HOUSING LENDER**

---

**Save With Your Chase Business Banking Card**        LINUXOR GLOBAL MACRO FUND LP

As a small business owner, you're always looking for ways to get more  value for your dollar. That's why we're pleased to offer you special  merchant discounts when you use your Chase Business Banking Card. Just go to www.chase.com/smallbizsavings for a list of participating merchants. Don't have a Business Banking card? Call 1-800CHASE38 to apply.

4/4

**THE SMALL BUSINESS TEAM AT CHASE℠**

ACCOUNT NUMBER: E 885   065 65239
STATEMENT DATE: JUN 2, 2004

LINUXOR GLOBAL MACRO FUND LP(MGD)
236 PARK AVE #9          (E/S)
NEW YORK NY 10017-3112

DISCRETIONARY

PAGE   23

|  | *** JAPANESE YEN *** | * JAPAN - YEN (J2) * | * YEN - J.G.B. (J3)* | **** EURO **** |
|---|---|---|---|---|
| INITIAL MARGIN REQUIREMENT | 0 | 25,500,000 | 0 | .00 |
| MAINTENANCE MARGIN REQUIREMENT | 0 | 25,500,000 | 0 | .00 |
| EXCESS EQUITY | 0 | 42,429,000 | 0 | .00 |
| MARGIN DEFICIT/EXCESS | 8,588,043DR | 0 | 65,946,400DR | 177,804.84DR |
| CURRENCY CONVERSION RATE TO US | .00906577 | .00906577 | .00906577 | 1.22070312 |
| CONVERTED ACCOUNT VALUE AT MKT | 77,857.22DR | 615,828.69 | 597,854.89DR | 217,046.92DR |

|  | ** CONVERTED TOTAL * |
|---|---|
| BEGINNING BALANCE | 4,354,083.35 |
| COMMISSION | 18,698.54DR |
| BROKERAGE FEES | 3,340.00DR |
| NFA FEES | 243.40DR |
| TOTAL FEES | 3,583.40DR |
| GROSS PROFIT OR LOSS | 311,041.34 |
| PREMIUM / GROSS AMT | 58,187.50 |
| NET PROFIT/LOSS FROM TRADES | 346,946.90 |
| NET MEMO OPTION PREMIUM | 58,187.50 |
| ENDING BALANCE | 4,701,030.24 |
| OPEN TRADE EQUITY | 50,550.00DR |
| TOTAL EQUITY | 4,650,480.23 |
| NET MARKET VALUE OF OPTIONS | 522,500.00DR |
| SHORT OPTION PROCEEDS | 312,500.00 |
| ACCOUNT VALUE AT MARKET | 4,127,980.23 |
| INITIAL MARGIN REQUIREMENT | 2,197,427.13 |
| MAINTENANCE MARGIN REQUIREMENT | 1,798,177.13 |
| EXCESS EQUITY | 1,930,553.10 |
| CURRENCY CONVERSION RATE TO US | 1.00000000 |
| CONVERTED ACCOUNT VALUE AT MKT | 4,127,980.23 |