UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | 05-CV-8091 (LAK) |
| v. | ) ) | ECF CASE |
| ABBAS A. SHAH and LINUXOR ASSET MANAGEMENT LLC, | ) ) ) | |
| Defendants. | ) ) | |

[PROPOSED]
**SUR-REPLY MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants Abbas A. Shah ("Shah") and Linuxor Asset Management LLC ("LAM" and collectively with Shah, "Defendants"), by their attorneys, Shiboleth, Yisraeli, Roberts & Zisman, LLP, submit this Sur-Reply in Opposition to the Motion for Summary Judgment of the U.S. Commodity Futures Trading Commission (the "CFTC"):

**INTRODUCTION**

The CFTC's reply memorandum simply underscores the issues of fact that must be tried in this case. The CFTC seems to think that its interpretation of statements, documents and events must be adopted by the Court to the exclusion of defendants' different, but fair and reasonable analysis. This Sur-Reply Memorandum is necessary to truly set the record straight.

## POINT I

### <u>THE SHAH AFFIDAVIT DOES NOT CONTRADICT HIS DEPOSITION TESTIMONY.</u>

The CFTC in its Reply Memorandum asserts that Mr. Shah has skewed the truth in his affidavit with "newly-minted" attempts to "obfuscate the facts[1]" that supposedly contradict his deposition testimony.[2]   But this simply mischaracterizes the record and actually underscores the necessity of a trial.

The CFTC falsely asserts that Shah's affidavit on this motion "contradicts" his deposition testimony with regard to the discovery by Shah of the mistaken combined net asset value (NAV) figure in his e-mail of January 30, 2004[3] and his reporting of the error to a representative of investor McCarthey.   Shah testified at the deposition that he "thinks" he discovered the mistake a couple of months after the email, but, "I don't remember exactly."  He further said he thought he was prompted to analyze the December 30, 2003 NAV by the NFA's audit and accompanying request for information.[4]  The NFA announced the commencement of its examination on March 12, 2004, which is approximately six weeks after the January 30, 2004 email[5] and five weeks after Shah recalls reporting to McCarthey's representative, Todd Brashear, correct account balances.  There is simply no "contradiction" here, and to the extent the CFTC perceives any inconsistency, that is why cross-examination was invented.

Indeed, the reality is nearly the opposite:  the CFTC attorneys used the deposition not to discover Shah's full recollection of the facts, but to try to extract narrow, incomplete statements

---

[1] Plaintiff's Reply, p. 1.
[2] Plaintiff's Reply, p. 4.
[3] Plaintiff's Reply, p. 3.
[4] Shah Dep. at 396-98.
[5] See Shah Reply Aff., submitted herewith.

that might fit into a certain mold embedded in their minds.   Anything that Shah wanted to say that didn't fit was eschewed by the CFTC.

At Shah's deposition, the CFTC itself consciously precluded Shah's furnishing his full story, and in particular it prevented Shah from testifying regarding his oral communications, including those with Mr. Brashear.  Mr. Shah was only asked about correcting the mistake *in writing*, and when he sought to explain *verbal* notifications, he was instructed to "listen to the question" concerning *written* communications.[6]  In one highly telling exchange regarding the January 30, 2004 email, Shah testified – and was prevented from testifying – as follows:

> Q: *"Would that be a correct statement, you never corrected that number [the NAV in the January 30, 2004 email] in writing?"*
> A: *"I spoke to them very frequently."*
> Q: *"Listen to the question."*
> Mr. White (Mr. Shah's counsel): *"In writing."*
> A: *"In writing, yes, I reported to them I think in June."*

Just before this point in the deposition, in relation to other lines of questioning, Mr. Shah was specifically mandated by CFTC counsel to restrict his answers to the specific questions asked, despite relevance, stating, "That's not my question, Mr. Shah. I want you to answer my question, not your question"[7] and ordering Mr. Shah to "Focus on my question, focus,"[8] when he previously attempted to elaborate[9].  Mr. Shah was never asked about conversations with Brashear relating to correction of the mistake in the January 30, 2004 email in his deposition.  He was never allowed to explain the fact that he had notified Brashear of the mistake by telephone shortly after returning from vacation, as McCarthey was unavailable at that time.

---

[6] Shah Dep. 386.
[7] Shah Dep. 314.
[8] Shah Dep. 333.
[9] Mr. Shah was repeatedly restricted from explanation by CFTC counsel - "answer my question" (Shah Dep. 355 [6]; 356 [12, 16, 18]; 368 [15-16]; 377 [5]; 381 [24]); "answer the question that I am asking" (Shah Dep. 358 [8]); "I didn't ask that question" (Shah Dep. 371 [21]).

In short, Shah's recollection of the dates is admittedly inexact, but is well within the realm of reasonable estimation by someone testifying from memory two to four years later. He was actively blocked by the CFTC lawyers from telling the complete story at his deposition. And most important: *nothing* has been proffered by the CFTC to sustain the fraud charges based on the January 30, 2004 e-mail. There is nothing to show that Shah fraudulently withheld the true facts from his clients once he knew those facts.

## POINT II

### THE CFTC CONTINUES TO TAKE
### THE AUGUST 25, 2003 E-MAIL OUT OF CONTEXT.

Having failed to establish the absence of material issues of fact regarding the August 25, 2003 email, the CFTC has now resorted to *immaterial* insults. This matter is not, as the CFTC contends, "metaphysical" or "inane," and most certainly is not a "misrepresentation on its face." The August 25, 2003 e-mail reads just prior to the CFTC's quoted portion as follows:

> Please note that the capital invested through the end of the year in some options and futures positions is shown as an unrealized loss which was completely reversed in the first week of January. As you know we are approaching our trading and investment of your capital very cautiously. Despite that we have been able to outperform most global market indices (fixed income or equities).

It is clear from a complete reading of this document that there is nothing metaphysical or inane about an interpretation that this e-mail relates to options and futures positions at issue at the time and which were carried forward at the end of 2002 into 2003[10]. Shah spoke to McCarthey in May 2003 and notified him that the value of his account had gone down further[11]. Then, in the August 25, 2003 e-mail, Shah clearly notified McCarthey's representatives that they had recovered "more than half of the capital loss" in the options and futures position since May

---

[10] Shah Dep. p. 345.
[11] Shah Aff. ¶29; DX-H – Excerpts of Telephone Records from Shah and LAM to McCarthey, Egger, and Brashear.

2003, and that, continuing at the current pace, they "will have not only recovered all of the capital loss[,] but there is a good likelihood that [they] will be positive as far as returns since inception" of the options and futures position investments[12]. The CFTC cannot simply deny the cogent explanation of this e-mail and turn their interpretation of the document into summary judgment.

## POINT III

## <u>REPORTING ISSUES</u>

The CFTC cannot transform Defendants' failure (with an explanation) to provide timely written quarterly and annual financial reports into a fraudulent scheme of deceptive acts and practices. At the NFA hearing and at CFTC depositions, the investors asserted that they expected their first quarterly account statements no later than July 2002[13]. Following the progression of calendar quarters, the investors would have also expected account statements in October 2002, January 2003, April 2003, July 2003, and so on. McCarthey later asserted at his deposition that they failed to receive a single quarterly or annual written statement from the fund[14]. The investors specifically told Shah that they did not want formal periodic reports other than year-end reports. Even setting aside these facts, the alleged failure to act in a manner consistent with a reasonable and prudent investment manager, without more, will not suffice to establish a claim for fraud.

To establish fraud under Section 4(b)(a) of the Act, Defendants must have made a false or misleading representation or omission to their investors *with scienter*. Shah and LAM have

---

[12] PX-E - Shah email dated August 25, 2003; DX-I – LAM Futures and Options Positions December 31, 2002 to January 30, 2003.
[13] Brashear Dep. p. 16.
[14] McCarthey Dep. p. 33.

stated that the investors instructed Shah only to provide year-end annual reports[15]. Taking this as

true, in congruence with the summary judgment standard, scienter cannot exist from failure to

provide written financial reports. Beyond this, it is incomprehensible that Defendants could have

intended to defraud sophisticated investors, counting on them to simply shrug their shoulders not

knowing specifically what happened to $11,500,000.00 of their money over a year, and who did

not request their money back during that time or notify the NFA or the CFTC of Defendants'

failure to provide written statements. If this leap is to be made, it is for a jury to decide.

## CONCLUSION

Respondents Abbas A. Shah and Linuxor Asset Management LLC once more request that

the Motion for Summary Judgment be denied, together with such other and further relief as the

Court deems just and proper.


Dated: New York, New York
        November 27, 2007

**SHIBOLETH, YISRAELI, ROBERTS & ZISMAN, LLP**


By: ___*Charles B. Manuel, Jr*___
Charles B. Manuel, Jr.
Of Counsel
One Penn Plaza, Suite 2527
New York, New York 10119
Tel. 212-244-4111

Attorneys for Defendants Abbas A. Shah and
Linuxor Asset Management LLC

---

[15] Shah Aff. ¶ 9.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, Plaintiff, | ) ) ) ) ) | 05-CV-8091 (LAK) ECF CASE |
| v. | ) ) ) | **REPLY AFFIDAVIT OF ABBAS SHAH** |
| ABBAS A. SHAH and LINUXOR ASSET MANAGEMENT LLC, Defendants. | ) ) ) ) ) ) | |

STATE OF NEW YORK   )
                   ) ss:
COUNTY OF NEW YORK  )

Abbas Shah, duly sworn, states:

1. I make this affidavit to respond to the CFTC's assertion in its Reply Memorandum that there are "contradictions" in my statements. There are not. I acknowledge difficulty remembering dates of events and occurrences, but I remember who did what.

2. I called McCarthey's financial adviser, Todd Brashear, on the telephone on or about February 6, 2004, notified him of the inaccurate January 30, 2004 email, and disclosed accurate account balances. Upon notifying Mr. Brashear of the mistaken email and providing the accurate pool balances, not only did the McCarthey pool participants not withdraw their investment, but Mr. Brashear told me to keep "doing what you're doing."

3. I have checked my records with regard to the National Futures Association ("NFA") audit. On March 12, 2004, the NFA notified me of the commencement of an NFA audit. In response to the audit, I had to prepare account balances as close to exact as possible

which I believed would be satisfactory to the auditors. After the computation of these numbers, I spoke to Philip McCarthey on the telephone and informed him of these balances.

4. This is in congruence with my deposition testimony, when I was never asked about verbal communications around these times with Mr. Brashear or with any associate of Mr. McCarthey. I was only asked about written communications, or communications directly with Mr. McCarthey, and was restricted from elaborating on further communications.

5. I have attached to this affidavit deposition transcript pages referenced in the Sur-Reply Memorandum.

WHEREFORE, I respectfully request that Plaintiff's Motion for Summary Judgment be denied.

_____
Abbas Shah

Sworn to before me
November 27, 2007

_____
Notary Public

CAMERON D RUSSELL
Notary Public, State of New York
No. 02RU6170732
Qualified in New York County
Commission Expires July 16, 2011

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
COMMODITY FUTURES TRADING COMMISSION,

                    Plaintiff,

          -against-        Index No.
                           O5 CV 8091

ABBAS A. SHAH and
LINUXOR ASSET MANAGEMENT, LLC,

                    Defendants.
------------------------------------------X

                    140 Broadway
                    New York, New York

                    June 27, 2006
                    9:45 a.m.

          CONTINUED DEPOSITION of ABBAS A.

     SHAH, the Defendant herein, taken by

     Plaintiff, pursuant to Notice and

     Subpoena, held at the above-noted time

     and place before a Notary Public of the

     State of New York.

1                          Shah

2    he --

3          Q    That's not my question, Mr. Shah.  I

4    want you to answer my question, not your

5    question.

6               MR. WHITE:  What's the pending

7          question?

8               MR. ACEVEDO:  I will ask the

9          question again.

10          Q    When did you, Mr. Shah, tell Phil

11   McCarthey that you were compensating Richards for

12   bringing McCarthey into the Linuxor fund?

13          A    I didn't tell him that.

14          Q    You never told him that, correct?

15          A    No, I never did.

16          Q    You didn't tell him that at the steak

17   house?

18               MR. WHITE:  Objection.

19          A    No.

20          Q    You didn't --

21               MR. WHITE:  Objection.

22               MR. ACEVEDO:  Are you going to let

23          me ask the question?

24               MR. WHITE:  You are going to ask

25          the same thing time after time.

Page 333

1                              Shah

2    person?

3         A     No.

4         Q     All right, so let's focus on the

5    questions.  Focus on my question, focus.

6         A     Okay.

7         Q     The pool participants met with Shah,

8    at which time Shah reiterated the level of loss

9    and promised to recoup those losses.

10              MR. WHITE:  You left out a word,

11         "try to."

12        Q     The pool participants soon meet with

13   Shah, at which time Shah reiterated the level of

14   loss and promised to try to recoup those losses.

15   Thank you.  I didn't say did you recoup them.  I

16   said you would try to recoup the losses.

17        A     Yes.

18        Q     Is that an accurate statement?

19        A     I would state it differently.

20        Q     Is that accurate?

21        A     I want to hear it again.  I'm sorry.

22        Q     The pool participants soon met with

23   Shah, that's you, Abbas Shah, at which time you,

24   Abbas Shah, reiterated the level of loss and

25   promised to try to recoup those losses.

Page 345

1                          Shah

2          A    Well, an e-mail was sent, but it has

3     to be put in the proper context.

4          Q    What is the proper context?

5          A    As I recall, it was with respect to

6     the options and futures positions that were

7     carried forward in 2003 and whether the -- as I

8     had been asked in July about those positions and

9     that e-mail referred to options and futures

10    positions that were carried forward from the end

11    of '02 into '03 and whether those positions had

12    been unwound profitably or not, and that is the

13    context issue.

14         Q    I read this statement twice, so I am

15    going to ask you this question:  Is it accurate,

16    and you seem to say only in some context, so I

17    will ask you the next question, what if anything

18    is inaccurate about the statement I have read

19    twice?

20         A    It just has to be read in the proper

21    context.

22         Q    I am asking you specifically what's

23    inaccurate about it?

24         A    The statement is correct, yes.

25         Q    The next question, in fact, the pool

Page 355

```
                        Shah
 1
 2   interests was only approximately three million.
 3        A    No, I didn't.
 4        Q    What did you know the value to be?
 5        A    I only wanted to report --
 6        Q    Please answer my question.
 7        A    I don't remember the value of the
 8   account at that time.
 9        Q    Give us your best estimate as to the
10   approximate value at that time.
11             MR. WHITE:  May I ask a question,
12        just on time? I will take you outside.
13        If you want to know beforehand --
14             MR. BERLOWITZ:  Ask the question.
15             MR. WHITE:  I believe you're mixing
16        up the witness with the time sequence.
17        Is the question what he knew then or
18        what he knows now?
19             MR. BERLOWITZ:  Then.
20             MR. WHITE:  Okay.  So ask, you ask
21        the question.  I don't want to intrude.
22        Q    In fact, Shah knew, I am going to put
23   the word "then," when he sent the e-mail, it's
24   not in this, that the value of those interests
25   was only approximately $3 million, so it's then.
```

Page 356

Shah

1

2     A    Okay, I think I made a mistake with

3  the date when I sent them the e-mail, and it was

4  because I was -- it was I think 11:55 p.m., and

5  there were only five minutes left, and they were

6  closing down the business center at the hotel,

7  because I didn't have access to the Internet.  I

8  was in Florida at the time, and I only wanted to

9  record the last officially calculated numbers,

10  and instead of October 30 I put down December 30,

11  and I think that's what happened.

12     Q    But you didn't answer my question.  I

13  am going to ask the question again.

14          MR. WHITE:  Listen to the

15       question.

16     Q    Just answer my question.  Your lawyer

17  and I both want you to answer the question I am

18  asking you.  Could you answer my question, focus,

19  please.

20          You are taking issue with the number

21  $3 million, correct?

22     A    Aha.

23     Q    Back then --

24          MR. ACEVEDO:  Hold on, he has to

25       answer audibly.  He can't say "aha."

1                          Shah

2     never sent me any redemption letter or anything

3     or request, and they knew exactly the value of

4     the account.

5                  MR. WHITE:  Listen to the

6          question.

7          Q    I am going to read the statement

8     again.  Both Mr. White and I ask you to answer

9     the question that I am asking.

10         A    Okay.

11         Q    The statement is by knowingly making

12    these false statements you, Abbas Shah, defrauded

13    and deceived the pool participants.  Is that

14    accurate?

15         A    No.

16         Q    And why is it not accurate?

17              MR. WHITE:  Objection as to form.

18         Q    What about it is not accurate?

19         A    Everything about this is not

20    accurate, because they were aware of the value of

21    the account at all times.

22         Q    I will move on.

23              In April of 2004 the fifth pool

24    participant who had invested $2 million received

25    back $2.1 million from the pool.

Page 368

Shah

1

2      A    I was verbally communicating with

3  them, and I did not send them the NAV's.

4      Q    November of '02?

5      A    No.

6      Q    December of '02?

7      A    No.

8      Q    Did you send the pool participants

9  the NAV's in January of '03?

10     A    No.

11     Q    February of '03, did you send the

12  NAV's to the pool participants?

13     A    I informed them, but if I sent them,

14  no.

15     Q    Just listen, focus on my question and

16  just answer my question.

17     A    Okay.

18     Q    Did you send them the NAV's in any of

19  the first three months of '03?

20     A    No.

21     Q    How about the next three months, that

22  would be April, May and June of '03, did you send

23  them NAV's of any of those months?

24     A    No.

25     Q    Citco was still the fund

Page 371

1                          Shah

2          Q    My question is you accept

3    responsibility for that, don't you?

4          A    I accept responsibility for not

5    sending them the NAV's? What is the question?

6          Q    For not being on top of the problem

7    that you had with Citco, you accept

8    responsibility for that, don't you?

9          A    Yes, I accept responsibility.

10         Q    Thank you.  I am going to get back to

11   the Citco situation in a moment, but would it be

12   correct to say that you never sent any of the

13   NAV's that you received from Citco to the pool

14   participants?

15         A    First of all, I never directly

16   received any NAV's.  The firm Linuxor received

17   NAV's.

18         Q    And none of those were sent --

19         A    They were never sent, none of them

20   were sent.  We thought we didn't have to.

21         Q    I didn't ask that question.

22         A    Okay.

23         Q    We will come back to that.

24              I have an e-mail in front of me that

25   is from you, A. S-H-A-H.

1                          Shah

2          A    At the time I thought that was the

3     case, and --

4               MR. WHITE:   The question is --

5          Q    Answer my question.

6               MR. WHITE:   -- was it.

7          Q    Was it $8,095,000?

8          A    The question is again, I'm sorry.

9          Q    Was the NAV for the McCarthey

10    interest as of December 30, 2003, $8,095,000?

11         A    No.

12         Q    It wasn't?

13         A    No.

14         Q    You misstated it?

15         A    I thought that was the case.

16         Q    I asked you if you misstated it.

17         A    I -- yes.

18         Q    And you knew that the number was not

19    $8,095,000?

20         A    I know it now, not then.

21         Q    Well, as of the e-mail of December

22    30, '03, excuse me, January 30, '04, you put down

23    $8,095,000?

24         A    Yes.

25         Q    What was the basis for putting down

Page 381

```
1                        Shah
2   somewhere?
3        A    Yes.
4        Q    Did you just make up the highest
5   number you could?
6        A    No.
7        Q    Did you think that by giving them a
8   high number they would stay in the fund?
9        A    No.
10       Q    Did you want to deceive them?
11       A    No.
12       Q    Did you deceive them?
13       A    No, I didn't.
14       Q    Is that a deceptive number?
15            MR. WHITE:  Objection as to form.
16       A    It is a number that I reported to
17  them.
18       Q    And it is an inaccurate number,
19  right?
20       A    There was a mix-up.
21       Q    I didn't ask you that.  It's an
22  inaccurate number, right?
23       A    Yes.
24       Q    Answer my question.
25       A    Yes.
```

```
 1                         Shah
 2   never corrected it, this is a writing that you
 3   sent to them on or about January 30, '04, but you
 4   never corrected it in writing ever; is that
 5   correct?  Would that be a correct statement, you
 6   never corrected that number in writing?
 7         A    I spoke to them very frequently.
 8         Q    Listen to the question.
 9              MR. WHITE:  In writing.
10         A    In writing, yes, I reported to them I
11   think in June.  When you said "never," so I have
12   to -- it was June of '04 when I sent them an
13   e-mail, I remember, in which I gave them the
14   correct value of the account and -- yes.
15         Q    You corrected the e-mail that you
16   sent on January 30, '04, citing the December 30,
17   '03, NAV in June of '04; is that what you are
18   saying?
19         A    No, that's not what I am saying.
20         Q    Well, listen to my question.
21              When did you correct the erroneous
22   NAV that you sent out in January 30, '04,
23   referencing the NAV for December 30, '03?  When
24   if ever did you correct that error that you made?
25         A    In writing, I did not.
```

Page 396

1                        Shah

2          A    I just looked at some at a very high

3    level, the monthly numbers.

4          Q    You know that there was a serious

5    issue because it says in the NFA report as to

6    whether or not you misstated the NAV for the

7    McCartheys as of December 30, '03, you know that

8    was an important date, right?

9          A    Yes.

10         Q    Did you check that number, yes or no?

11         A    I checked that number.

12         Q    And what did you find by checking

13   that number for the NAV for the McCartheys for

14   December 30, '03?  What did you find?

15         A    There was a discrepancy.

16         Q    What was the discrepancy?

17         A    I think -- I don't remember exactly.

18         Q    Approximately.

19         A    I think maybe about 3 or $4 million.

20         Q    Millions of dollars off?

21         A    Yes.

22         Q    It could be as much as a 100 percent

23   difference, right, whether it was four million or

24   800 or eight million, correct?

25         A    Yes.

Page 397

1                         Shah

2        Q    Did you check to see if the NAV was

3    anywhere near $8,095,000 for December 30, '03?

4    Did you check to see that?

5             MR. WHITE:  Objection.  If there is

6             a document, a particular document that

7             you can --

8             MR. BERLOWITZ:  I will rephrase the

9             question.

10       Q    You know that the December 30, '03,

11   NAV that you sent to the McCartheys was in error,

12   correct?

13       A    Yes.

14       Q    Did you go back any time after

15   December 30, '03, actually after the e-mail of

16   January 30 of '04, to see what the NAV was for

17   the McCartheys for the date December 30, '03?

18   Did you do the math?

19       A    Yes, I did.

20       Q    What number did you come up with?

21       A    I don't remember the exact number.

22       Q    Approximately.

23       A    It was about I think four odd million

24   dollars.

25       Q    When did you do that?

Page 398

                              Shah

1

2          A     I think a couple of months after.

3          Q     After what?

4          A     After that e-mail, the January 30

5     e-mail.

6          Q     Three months after, four months

7     after?

8          A     I don't remember exactly.

9          Q     What triggered you to do your own

10    accounting of the December 30, '03, NAV?  What

11    caused you to do your own analysis?

12         A     I think it was also NFA had started

13    an audit, and we were providing them with all the

14    information.

15         Q     Why that date, why the December 30,

16    '03, NAV?  Why did you zero in on that date?

17         A     That was the end of the year '03.

18         Q     Did you do the end of the year '02?

19         A     No, we didn't do it.

20         Q     Did you do it?

21         A     I didn't do it.

22         Q     Did you do the end of the year '03

23    yourself?

24         A     Myself, no.

25         Q     Did you check the numbers, yes or no?

1
2   UNITED STATES DISTRICT COURT

    SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

    COMMODITY FUTURES TRADING COMMISSION,

4
                    Plaintiff,

5
            · against ·          Index No.

6                               05 CV 8091

7   ABBAS A. SHAH and

    LINUXOR ASSET MANAGEMENT, LLC,

8
                    Defendants.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

10                  140 Broadway

                    New York, New York

11
                    April 27, 2006

12                  10:50 a.m.

13
14
15
16
17          DEPOSITION of TODD BRASHEAR, the

18  Nonparty Witness herein, taken by

19  Adverse Parties, pursuant to Notice,

20  held at the above-noted time and place

21  before a Notary Public of the State of

22  New York.

23
24
25

1                    Brashear

2   think.  There was another point as we were

3   discussing in the fact that we would be a

4   minority investor in this fund.  He also

5   indicated that there would be other investors in

6   this fund.

7        Q    And he indicated that, Mr. Shah

8   indicated that to you during the June, '02

9   conversation?

10       A    June, '02 initial conversation.

11       Q    By '02 we mean 2002, correct?

12       A    Correct.

13       Q    When did you expect the first

14   quarterly report to be received by the McCarthey

15   Investments from Mr. Shah?

16       A    Some time in July of 2002, because

17   the first full quarter that we had been in the

18   fund would have ended on June 30, 2002.

19       Q    Did Mr. Shah tell you who would be

20   providing those quarterly reports?

21       A    In subsequent conversations he had

22   indicated, in subsequent conversations in 2002 he

23   indicated he was in the process of obtaining a

24   fund manager who would be doing that, but in the

25   interim until he hired a fund manager he and his

1

2   UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

3   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . X

COMMODITY FUTURES TRADING COMMISSION,

4

Plaintiff,

5

-against-        Index No.

6                    05 CV 8091

7   ABBAS A. SHAH and

LINUXOR ASSET MANAGEMENT, LLC,

8

Defendants.

9   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . X

10                 140 Broadway

New York, New York

11

April 26, 2006

12             10:25 a.m.

13

14

15

16

17             DEPOSITION of PHILIP McCARTHEY, the

18   Nonparty Witness herein, taken by

19   Adverse Parties, pursuant to Notice,

20   held at the above-noted time and place

21   before a Notary Public of the State of

22   New York.

23

24

25

33

1                          McCarthey

2    regarding the fund's performance, the Linuxor

3    fund's performance, if you recall?

4         A    I don't recall right then, no.

5         Q    Following your investment in May,

6    '02, did you receive any financial reports or

7    documents from Mr. Shah indicating how the fund

8    was performing?

9         A    Never.

10        Q    Did you receive any financial report

11   or any financial document indicating how your

12   investment in the Linuxor fund was doing?

13        A    No.

14        Q    Did you receive any financial report

15   or document regarding the net asset value of the

16   Linuxor fund?

17        A    No.

18        Q    I am talking now about after May of

19   '02 and limiting it to 2002. We will get to

20   2003 in a second, but did you receive any of

21   those types of documents or reports regarding the

22   performance of the fund, the Linuxor fund, in

23   2002 from Mr. Shah?

24        A    No.

25        Q    Did Mr. Shah indicate to you either