**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ABBAS A. SHAH and LINUXOR ASSET MANAGEMENT LLC,<br><br>Defendants. | 05 CV 8091 (LAK)<br><br>ECF Case |

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE**
**WITNESS STATEMENT OF ALAN M. NATHAN**

Plaintiff Commodity Futures Trading Commission ("CFTC") hereby moves *in limine* to exclude the witness statement of Alan M. Nathan ("Nathan Statement")[1] submitted by Defendants for trial scheduled to start on July 14, 2008 at 2:00 p.m. The Nathan Statement should be excluded because Defendants failed to timely identify Nathan as an expert witness and his testimony contains hearsay and irrelevant statements.

**I.   Nathan's Statement Contains Inadmissible Expert Witness Testimony**

Under Federal Rule of Civil Procedure 26(a)(2), a party must disclose an expert witness it may use at trial at the time and in the sequence ordered by the court. The Court ordered that all parties disclose any expert witnesses by April 28, 2006, and all rebuttal expert witnesses be disclosed by May 22, 2006.[2] Defendants failed to disclose their expert witnesses or rebuttal expert witnesses. Federal Rule of Evidence ("FRE") 702 permits expert witness testimony if scientific, technical, or other specialized knowledge by a qualified witness will assist the trier of

---

[1] The Nathan Statement is attached hereto as Exhibit 1.
[2] November 30, 2005 Scheduling Order attached hereto as Exhibit 2.

fact to understand the evidence or to determine a fact in issue. In determining whether a witness is an expert the trial, the court must determine whether the testimony offered is scientific, technical or *other specialized knowledge*. *In re Rezulin Products Liability Litigation*, 309 F.Supp.2d 531, 541 (SDNY 2004) (Kaplan, J.). Federal Rule of Civil Procedure 37(c) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified." *See also DeLuca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 2008 WL 857492 at * 12 (SDNY March 31, 2008) (expert witness testimony precluded because not disclosed in a timely manner).

On July 8, 2008, at approximately 4:30 p.m., Plaintiff received a copy of the Nathan Statement. It states that Nathan is a "financial systems architect and consultant with over 35 years of varied experience working for a variety of firms within international capital markets" and that he "developed many computer systems for both trading and risk management as well as back office accounting operations." (Nathan Statement ¶¶ 1 and 3). These statements show that Nathan has specialized knowledge in financial systems and computer systems for trading and risk management.

Nathan states that he was asked by Abbas A. Shah ("Shah") to review the financial records of Linuxor Global Macro Fund LP ("Linuxor Fund"). (Nathan Statement ¶ 12). After reviewing the unspecified records, Nathan concludes that "no funds were missing nor were any expenditures inappropriate." (Nathan Statement ¶ 12). Clearly, Nathan offers an expert opinion on whether fees and expenditures were appropriate based on his specialized knowledge of financial systems and back office accounting. Further, Nathan states he provided an affidavit in opposition to an expert witness in an arbitration before the National Futures Association

2

("NFA") brought by Philip McCarthey ("McCarthey") against Shah and states that McCarthey's expert witness was "incorrect in his consistent refusal to differentiate reports of Realized Profit & Loss and Net Asset Value." (Nathan Statement ¶ 14). Nathan offers the same expert witness testimony in this case which he used to the McCarthey expert witness in the NFA Arbitration. Nathan offers expert witness opinions without properly having been designated or identified as an expert by the Defendants in the prescribed by this Court. Therefore, the Nathan Statement should be excluded pursuant to Federal Rule of Civil Procedure 37(c). Finally, as discussed further below, the expert opinions expressed in the Nathan Statement are irrelevant to the claims and defenses because there is no issue of whether Defendants' expenditures relating to the Linuxor Fund were appropriate. (See Joint Pretrial Order). Thus, Nathan's expert opinions should also be excluded pursuant to FRE 402.

## II.     The Nathan Statement Contains Hearsay and Irrelevant Statements

Hearsay testimony is generally inadmissible under FRE 802, except as provided by exceptions to the hearsay rule. FRE 402 also makes non-relevant evidence inadmissible. The Nathan Statement is replete with hearsay and irrelevant statements. First, Nathan admits he "personally had no involvement in the operations of Linuxor, nor any financial interest in its assets..." (Nathan Statement ¶ 7). Nathan's only "knowledge" about the Linuxor Fund comes through information Shah told him and his purported analysis of the Linxuor Fund's trading results. (See Nathan Statement ¶¶ 6-7).

Nathan also discusses the NFA's audit of the Linuxor Fund in 2004. (See Nathan Statement ¶¶ 11). Nathan makes numerous claims about what the NFA did or did not do and what NFA auditors said to Shah. But, Nathan does not assert that he was directly (or even

3

indirectly) involved with the NFA audit of the Linuxor Fund. Moreover, Nathan provides no statements that he was present during any conversations between NFA staff and Shah or LAM employees. Nathan's statements concerning the NFA audit are hearsay that he undoubtedly acquired from Shah, or are mere unsupported speculation as to what may have occurred. Either way, Nathan's statements about the NFA audit are inadmissible hearsay and irrelevant to the claims and defenses in the case at bar.

Additionally, Nathan discusses the NFA arbitration hearing against Shah and LAM that was brought by McCarthey. Nathan states he was asked by Shah to analyze "Linuxor's financial records." (Nathan Statement ¶ 12). Nathan purportedly determined, without referencing any exhibits or specific documents, that no funds were missing and that Shah's expenditures were appropriate. Nathan then opines on the credibility of Philip McCarthey and his allegations against Shah (Nathan Statement ¶ 13), even though Nathan admits "I have never met McCarthey nor ever talked to him." (Nathan Statement ¶ 7). Nathan attempts to substitute this Court's role in determining the facts and credibility of witnesses for his own opinions. Nathan also gives his opinion on the NFA award against Shah, the CFTC's litigation, and how defending against legal claims has purportedly driven Shah to bankruptcy, all of which are irrelevant to the claims and defenses at trial. (Nathan Statement ¶¶ 16-18). Nathan provides no basis for his opinions nor does he state how he knows why Shah filed for bankruptcy. Nathan's statements about the NFA Arbitration, McCarthey's and Shah's current financial condition constitute hearsay and irrelevant to any claim or defense.

For the foregoing reasons, Plaintiff respectfully CFTC moves to exclude the Nathan Statement in its entirety pursuant to Federal Rule of Civil Procedure 37(c) and FRE 402 and 802.

Respectfully submitted,

Dated: July 9, 2008

*W. Derek Shakabpa*
W. Derek Shakabpa
David Acevedo
Michael Berlowitz
Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005
(646) 746-9748 (Shakabpa)
(646) 746-99940
wshakabpa@cftc.gov

## CERTIFICATE OF SERVICE

I, David Spitzer, do hereby certify that I am over 18 years old and not party to this action and I caused to be sent, via Federal Express, a copy of PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE WITNESS STATEMENT OF ALAN M. NATHAN to all parties and their attorneys of record listed below:

Charles Manuel, Esq.
Shiboleth
One Penn Plaza, Ste. 2527
New York, NY 10119
Attorneys for Defendants

_____
David Spitzer

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ABBAS A. SHAH and LINUXOR ASSET MANAGEMENT LLC, | ) ) ) |
| Defendants. | ) ) ) |

05-CV-8091 (LAK)

ECF CASE

---

**ALAN M. NATHAN'S WITNESS STATEMENT**

---

SHIBOLETH LLP
Charles B. Manuel, Jr.
Shira Y. Rosenfeld
Kimberly B. Grotell
One Penn Plaza, Suite 2527
New York, New York 10119
Tel: 212-244-4111
Fax: 212-563-7108

Attorneys for Defendants
Abbas A. Shah and Linuxor Asset Management LLC

July 8, 2008

# EXHIBIT 1

## **TABLE OF CONTENTS**

My Long Experience with Abbas Shah............................................................. 1

The InterPacific Fund.................................................................................. 2

The Linuxor Fund....................................................................................... 2

Fund Fees and Expenses.............................................................................. 3

NFA's Audit of Linuxor and
Subsequent Involvement in the Fund's Liquidation............................... 3

NFA Arbitration Hearing –
McCarthey vs. Linuxor and Shah in 2005-2007..................................... 4

Conclusion................................................................................................. 7

Alan Nathan's Resume................................................................................ 8

i

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ABBAS A. SHAH and LINUXOR ASSET MANAGEMENT LLC,<br><br>Defendants. | 05-CV-8091 (LAK)<br><br>ECF CASE |

## ALAN M. NATHAN'S WITNESS STATEMENT

1.   I am a financial systems architect and consultant with over 35 years of varied experience working for a variety of firms within the international capital markets.

2.   This career developed after my original education in physics and mathematics and my earlier work as a physicist leading a research group at New York University.

3.   As a consultant to capital market firms, I developed many computer systems for both trading and risk management as well as back office accounting operations. Some of my fixed income software has been incorporated into the operational systems in use at the major exchanges and within some of Wall Street's major firms.

### My Long Experience with Abbas Shah

4.   More than twenty years ago I first met Mr. Abbas Shah while we were both employed at Lehman Bros. He worked for me on the analysis and design of a computerized system for Lehman's capital markets trading department. The system was built and put into operation at Lehman after which Shah became a full time trader in

1

Lehman's government bond trading group. I left Lehman to undertake independent development of additional capital market trading systems.

5. In the years since, Shah and I have stayed in touch and have occasionally had opportunities to work together on various business projects. I know him to be an honest and able individual who has had considerable success as a trader at several Wall Street firms. I have also occasionally invested some of my own money with him and have never had any reason to doubt his integrity.

### The InterPacific Fund

6. Shah had founded and managed this fund several years before Linuxor. I had personal knowledge of the performance of that fund since I had analyzed its results to verify a formal professional Certified Financial Adviser report that showed over 200% returns within eighteen months. The results were validated.

### The Linuxor Fund

7. Although I personally had no involvement in the operations of Linuxor, nor any financial interest in its assets, I regularly discussed investment risk issues with Shah. As a long-time friend and sometime professional colleague, on two occasions Shah invited me to accompany him to dinner meetings with Philip Egger early in 2002. Egger was at that time acting as McCarthey's attorney/agent and carrying out due diligence on Shah's professional background. In that regard I talked briefly with Egger during dinner about Shah's past trading experience and in particular the InterPacific fund. In a couple of those meetings, Shah was communicating with Egger regarding the status of the trading account he was handling for McCarthey but I was not directly involved in those discussions. I have never met McCarthey nor ever talked with him.

### Fund Fees and Expenses

8. From the inception of the fund in 2002 through 2004, when the fund was closed, the fund management company, LCM, took fees that were substantially lower than the fees authorized by the COM. This is shown on the following chart;

| Year | Start Up | Allowable Service Expenses | Allowable 3% Management Fees | Total Allowable Fees | Actual Payments to Linuxor | Totals Owed to Linuxor |
|---|---|---|---|---|---|---|
| 2002 | $36,323 | $123,211 | $154,606 | $277,817 | $145,429 | $132,388 |
| 2003 | $0 | $133,559 | $135,219 | $268,778 | $149,754 | $119,024 |
| 2004 | $0 | $91,409 | $50,448 | $141,857 | $196,387 | -$54,530 |
| 2005 | $0 | $10,000 | $0 | $10,000 | $0 | $10,000 |
| Totals: | $36,323 | $358,179 | $494,879 | $698,452 | $491,570 | $206,882 |

*Sources; Linuxor Bank Statements and Checks (Exhibit AAAA).

### NFA's Audit of Linuxor and Subsequent Involvement in the Fund's Liquidation

9. In early 2004, the NFA notified Linuxor that it would be conducting a routine annual audit of the Fund. They sent two junior auditors to Linuxor's premises to begin the process. These individuals raised questions about what they took to be the existence of two separate trading accounts at Linuxor's broker. When questioned, Linuxor's personnel assured them that the "prime brokerage account" and the "brokerage account" that appeared on statements were one and the same account and not two separate accounts. This fact did not seem to be accepted by the NFA, and it became a major issue for the junior auditor's supervisor, Ms. Sheryl Tulino. So much so that at one point she threatened Shah during a phone call saying she would shut down his Fund and send him back to India (he happens to be from Pakistan and is a U.S. citizen)

10. Meanwhile she contacted Linuxor's investor McCarthey and his CFO Brashear to warn them that there was a hidden account at Linuxor. Brashear immediately called Shah

3

for an explanation and Shah clarified the reason for the confusion. A conference call was arranged with Shah, Shah's attorney, Ms. Tulino and Mr. Paracci of the NFA. During this conference, Ms. Tulino finally accepted the fact that the supposed two accounts were really one and the same account. When Shah asked Ms. Tulino if she had contacted the McCarthey / Brashear, she denied ever having called them and emphasized the fact that the NFA's rules precluded contacting investors prior to the completion of an audit. Note that there are exhibits of email exchanges between Tulino and Brashear during May-June, 2004 while NFA was ordering Linuxor to liquidate. In addition, Brashear's testimony confirms the fact that he had many conversations with Tulino in May-June 2004.

11. The NFA pressed for a hasty liquidation of the Fund in June 2004. NFA's rule 3-15 requires a due process with notification of the respondent and a hearing, but this was not done. When we asked the NFA witness about NFA policies he said that whatever he had told us was his own opinion as NFA had no liquidation guidelines. So an NFA witness with no experience, whatsoever, forced his opinion on Linuxor as to how to liquidate, as confirmed by an e-mail (Ex. QQQ) The hasty liquidation forced on Linuxor caused less return to McCarthey than would have been achieved if more deliberate liquidation with appropriate hedging had been implemented. Even though Linuxor's LPA specified 90 days for any account's liquidation, the process was completed within 30 days in June 2004 under pressure from the NFA.

**NFA Arbitration Hearing – McCarthey vs. Linuxor and Shah in 2005-2007**

12. Following the liquidation, Shah asked me to help him by analyzing Linuxor's financial records to help him defend himself against McCarthey's allegations. I agreed to do this and spent an appreciable amount of time reviewing all of Linuxor's records and

accounts. It became clear that no funds were missing nor were any expenditures inappropriate. The records gave factual proof that Shah had voluntarily reduced the allowable management fees from the COM's originally authorized 3% to less than 2% from the start of the fund and in fact showed that he had never withdrawn the full 2% management fees then authorized so that he was still owed money by all of the investors in Linuxor after termination of the fund.

13. As to McCarthey's allegations that he had never been made aware of the market losses that began very early in the life of the fund, his own testimony and the logs of hundreds of phone calls between Shah and McCarthey/Egger/Brashear contradict all of his claims. The investors were fully aware of the paper losses throughout the life of the fund. Furthermore, since McCarthey was a fully qualified QEP (contrary to his claims of being a naïve investor), and since he constantly reiterated to Shah that he only wanted formal annual reports, his claims that Shah hid losses, and misrepresented results are beyond credibility. The only credible story is that he hoped to recover his market losses by encouraging Shah to "keep his head down and keep trading" and finally tried to recover some or all of the market losses by claiming fraud and misrepresentation by Shah – "fraud by hindsight".

14. My affidavit for the NFA Panel showed that McCarthey's expert witness was incorrect in his consistent refusal to differentiate reports of Realized Profit & Loss and Net Asset Value. Furthermore, the McCarthey claims of misrepresentation and fraud were totally false. All money was accounted for and no money was misappropriated.

15. Other reasons for my willingly becoming involved by submitting this affidavit all have to do with the NFA treatment of Shah and Linuxor both before and during the

Arbitration Panel hearings, often in violation of their own rules. And in addition, the claims of McCarthey and his employees in regard to Linuxor and Shah clearly seem to be self-serving misrepresentations designed to allege "fraud by hindsight."

16. **No** NFA findings of fraud by Shah nor any award of legal expenses to McCarthey, yet the Arbitration Panel awarded McCarthey full restitution of all of his market losses to be paid by Shah ($ 7,000,000 plus accrued interest).

17. The legal expenses, the NFA's incredible restitution award and the resulting damage to Shah's professional reputation have prevented him from earning a living during the past four years and have caused him to declare bankruptcy.

18. I have found these actions and the background details that have led up to them to be so unfair and biased as to constitute a total miscarriage of justice that has been perpetrated against Mr. Shah. I therefore welcomed a chance to testify on Mr. Shah's behalf in the hope of rectifying some of the egregious actions of the NFA and the continued pursuit of Shah by the CFTC in support of the NFA and McCarthey.

## Conclusion

19. No fraud or deliberate misrepresentations were committed by Linuxor during its handling of McCarthey's investment, nor did Mr. Shah profit by any amount during the life of the fund. In fact it has been shown that he lost money in his efforts to benefit the investors. If any fraud was committed in the whole affair, it was committed by McCarthey and his employees who have all misrepresented their activities, conveniently forgotten their statements and actions and denied facts where necessary to paint a totally false picture of the history of McCarthey's investment in Linuxor.

_____
ALAN M. NATHAN

Alan M. Nathan
185 East 85th St., Apt.9D
New York, NY 10028
212-348-2040  home
646-942-8067  cell

**PROFESSIONAL BACKGROUND:**

| | |
|---|---|
| 1999-2007 | **IsoSpace.com**: Senior VP business strategy and technical advisor for design and development of Internet collaboration and communication system. Product now in use by U.S. Army, RBC and licensed to Japanese networking and software firm. |
| 1998-1999 | **Imagine Software**: Consultant on fixed income software and portfolio risk management techniques. |
| **1997-1998** | **UBS:** Consultant to Fixed Income and Options Trading groups on use of Kestrel Trading and portfolio management system. |
| 1994-1996 | **Kestrel Technology**: Founder and VP of software company whose principal product, a trading and portfolio management system is now in use at NY Stock Exchange, Merrill Lynch, Chase, UBS and other banks and brokerages. |
| 1992-1993 | **Lehman Bros, Eastbridge Capital**: Designed and developed Government bond trading systems and back office accounting systems for major Wall Street firms |
| 1987-1992 | **First Boston, DLJ, E.F.Hutton:**  Consultant – Securities trading, analysis and accounting systems |
| 1980-1986 | **Stuart Brothers**. VP of Trading systems and risk management. |
| 1977-1980 | **A.G. Becker**: Developed hedging systems for Fixed Income Dept. |
| 1968-1972 | **Laser Sciences**: Helped found and manage a gas Laser manufacturing and application company. |

Prior to 1968, I was for some years, the director and senior research scientist of NYU's Applied Physics Research Group of 30 scientists. Procured and managed R&D contracts in a variety of areas including electronics, optics, bio-mechanics, meteorology, oceanography and satellite mapping of the earth.

**EDUCATION**: B.A. Swarthmore College; M.S., Ph.D. Physics(abd) at New York Univ.

8

NOV 30 2005 23:03 FR CFTC                TO 12128364977      P.02

```
USDC SDNY
DOCUMENT                    KAPLAN, S.
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/1/05
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

Commodity Futures Trading Commission,

        Plaintiff          05-cv-08091 (LAK)

   v.

Abbas A. Shah, et ano.,    Defendant
----------------------------------------x

### Consent Scheduling Order

NOV 3 0 2005

Upon consent of the parties, it is hereby

ORDERED as follows:

1. No additional parties may be joined after March 31, 2006.

2. No amendments to the pleadings will be permitted after April 17, 2006.

3. The parties shall make required Rule 26(a)(2) disclosures with respect to:

   (a) expert witness on or before April 28, 2006.

   (b) rebuttal expert witnesses on or before May 22, 2006.

4. All discovery, including any depositions of experts, shall be completed on or before June 28, 2006.

5. A joint pretrial order in the form prescribed in Judge Kaplan's individual rules shall be filed on or before August 9, 2006.

6. No motion for summary judgment shall be served after the deadline fixed for submissions of the pretrial order. The filing of a motion for summary judgment does not relieve the parties of the obligation to file the pretrial order on time.

7. If any party claims a right to trial by jury, proposed voir dire questions and jury instructions shall be filed with the joint pretrial order.

8. Each party or group of parties aligned in interest shall submit not less than ten (10) days prior to trial (a) a trial brief setting forth a summary of its contentions and dealing with any legal and evidentiary problems anticipated at trial, and (b) any motions in limine.

# EXHIBIT 2

9.  This scheduling order may be altered or amended only on a showing of good cause not foreseeable at the date hereof. Counsel should not assume that extensions will be granted as a matter of routine.

Dated: November 30, 2005

_____
Lewis A. Kaplan
United States District Judge

CONSENTED TO:

*Edward White*
_____
Edward White (EW 0368)
HARTMAN & CRAVEN LLP
488 Madison Avenue
16th floor
New York, New York 10022
(212) 753-7500 tel
(212) 688-2870 fax
*Attorney for Defendants*

_____
David Acevedo (DA 0388)
U.S. COMMODITY FUTURES TRADING COMMISSION
140 Broadway
New York, New York, 10005
(646) 746-9754 tel
(646) 746-9940 fax
*Attorney for Plaintiff*

2